# Exhibit 1

DOCKETED
NOV 21 2003

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE DARRAH

MAGISTRATE JUDGE LEVIN

FILED
NOV 20 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
) No.
v. ) Violations: Title 18, United
) States Code, Sections 2, 201(b)(1),
SHIH-MING SHIUE and ) 371, and 542
I-HWA SHIUE )

03CR1107

COUNT ONE

The SPECIAL FEBRUARY 2002-2 GRAND JURY charges:

1. At times material to this indictment:

a. The United States Customs Service ("USCS") was responsible for administering the Tariff Act of 1930, as amended. A portion of that responsibility included the assessment and collection of duties, taxes, and fees on merchandise imported into the United States and the examination of merchandise imported into the United States to ensure admissibility of the merchandise and compliance with all laws of the United States import process.

b. Pursuant to Title 19, U.S.C. § 1484, an "Importer of Record" or the importer's authorized agent, such as a customhouse broker, was required to file entry documents with the USCS for goods imported into the United States. These entry documents, which were required to be filed when a shipment of good reached the U.S., included Customs Form 7501, Customs Form 3461, a commercial invoice, a packing list, and a bill of lading. Imported goods could not legally enter into the United States until the

shipment arrived within the port of entry and delivery was authorized by USCS.

c. The USCS relied upon the commercial invoice or bill of lading to provide an accurate description of the imported merchandise, its origin and manufacturer, the sales price, the terms of the sale and duties owed, including antidumping duties determined by law. Importers were required to declare to the USCS the true price paid or agreed to be paid for the merchandise on the commercial invoice and on other import documents. Importers were also required to identify, if applicable, the antidumping duty case number on importation documents covering merchandise included in an antidumping case and to deposit estimated antidumping duties at the time of entry.

d. The USCS used a computer system known as the Automated Commercial System ("ACS") which included information about all shipments entering the United States through the Port of Chicago. If no physical examination of the goods took place, a USCS official would review entry documents and the entered data in the ACS concerning the importation. If the USCS official determined the documents and data complete and in order, then the official signed the USCS Form 3461, approving the release of the shipment into commerce. This process was called a "general" entry.

**Antidumping Duties**

e. Antidumping duties were additional duties used to offset the effects of unfair trade practices that gave imports an unfair advantage over competing United States goods. Antidumping duties were assessed on imported merchandise that was sold, or was likely to be sold in the United States at less than its fair market value. In addition to being

sold at less than fair value, it must have been determined that the imported merchandise injured a U.S. industry. The goal of such duties was to stop importers from "dumping" merchandise at below cost in the United States to increase market share by driving out domestic manufacturers from the market.

f. The Department of Commerce, the International Trade Commission (ITC), and the USCS all played a role in enforcing antidumping laws. The Commerce Department was responsible for their general administration; it determined whether the merchandise was sold at less than a fair market value. It also determined the amount of duties that must be assessed. The ITC determined if imports were injuring a United States industry. The USCS assessed the duties once the Commerce Department and the ITC had made the necessary determinations.

**Brake Rotors from Mainland China - Antidumping Duties**

g. Based on its review of the importation of Chinese-made brake rotors, the Department of Commerce and ITC determined that antidumping duties should be assessed on many of these imports. These imports included Chinese-made brake rotors finished, semi-finished, or unfinished ranging in diameter from 8 to 16 inches and weighing from 4 to 45 pounds. A brake rotor was part of a disc brake assembly and was the circular rotational component attached to the wheel hub.

h. On April 3, 1996, antidumping case number A-570-846-000 was initiated.

i. The Department of Commerce and ITC set antidumping rates on Chinese-made brake rotors. Certain combinations of Chinese manufacturers and exporters were

specifically excluded from the antidumping duties. The antidumping duty rates for manufacturers and exporters of Chinese-made brake rotors ranged from 0 percent to 43.32 percent for non-excluded companies. If the exporter did not have a specific antidumping rate set by the Department Commerce and the ITC, then the rate was 43.32 percent.

j. Among the exporter/manufacturer combinations specifically excluded from the antidumping duties was the combination consisting of China National Automotive Industry Import and Export Corporation (CAIEC) as the exporter and Shandong Laizhou CAPCO Industry (CAPCO) as the manufacturer. These companies were excluded because the Department of Commerce and ITC determined that they employed fair trade practices and were not dumping goods in the United States. Therefore, these companies were not subject to antidumping duties.

k. Defendants SHIH-MING and I-HWA SHIUE and Individual A controlled a series of corporations that imported Chinese-made brake rotors. These corporations included China Machinery International, LC Trading, and SK Trading. The defendants purchased and imported brake rotors through these companies to be sold to automotive part dealers in the United States.

l. China Machinery International, a United States corporation, was an importer of Chinese made brake rotors and a predecessor company to LC Trading.

m. LC Trading, a United States corporation, was an importer of Chinese-made brake rotors and the predecessor company to SK Trading.

n. SK Trading, a United States corporation, was an importer of Chinese-made

brake rotors.

o. CAI, Inc., a United States corporation, was an importer of Chinese brake rotors.

p. TLC International, Inc., a United States corporation, imported toys, brake rotors, and brake drums.

q. Defendant SHIH-MING SHIUE resided in Massachusetts and represented himself as executive officer of TLC International. SHIUE was also a registered agent of CAI, Inc. and a "representative" of SK Trading.

r. I-HWA SHIUE resided in Massachusetts and is the sister and was the business partner of SHIH-MING SHIUE and was also an executive officer of TLC International and CAI, Inc.

s. Individual A resided in the People's Republic of China and was a "representative" of SK Trading and CAI, Inc. (Beijing office).

2. From at least on or about January 31, 1997 to on or about December 5, 2001, in the Northern District of Illinois and elsewhere,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did agree and conspire with each other, Individual A, and others known and unknown to the Grand Jury, to defraud the United States and to commit an offense against the United States, to wit: entering and introducing and attempting to enter and introduce into the commerce of the United States certain brake rotors imported from the

People's Republic of China, by means of invoices and bills of lading that defendants knew to be fraudulent and false, in violation of Title 18, United States Code, Section 542;

3. It was part of the conspiracy that from on or about January 31, 1997 to on or about December 5, 2001, the defendants SHIH-MING, I-HWA SHIUE, and Individual A caused the entry and the introduction into the commerce of the United States approximately 418 shipments of Chinese-made brake rotors, valued at approximately $29,000,000, using false and fraudulent entry documents, including false and fraudulent invoices and bills of lading, thereby avoiding antidumping duties of between approximately $2,500,000 and $12,000,000.

4. It was further part of the conspiracy that Individual A, acting as an agent for SHIH-MING and I-HWA SHIUE, purchased brake rotors from manufacturers in China for export to the United States. These manufacturers were not excluded companies for purposes of the antidumping duties on Chinese-made brake rotors.

5. It was further part of the conspiracy that Individual A typically arranged for the shipment of the Chinese-made brake rotors from China to defendants SHIH-MING and I-HWA SHIUE's companies, CAI, Inc. and TLC International, in the United States. Individual A caused the production of false and fraudulent bills of lading, which were to be submitted, and were submitted, along with false and fraudulent invoices to the USCS at the time the brake rotors entered the United States.

6. It was further part of the conspiracy that in order to avoid being the "Importer of Record," defendants SHIH-MING and I-HWA SHIUE often falsely and fraudulently stated to USCS that during the transit of a particular shipment of Chinese-made brake rotors

destined for the United States, CAI, Inc. or TLC International had sold that shipment to China Machinery, LC Trading, or SK Trading.

7. It was further part of the conspiracy that defendants SHIH-MING and I-HWA SHIUE prepared and caused to be prepared false and fraudulent entry documents for incoming shipments of Chinese-made brake rotors purchased for them by Individual A. Defendants SHIH-MING and I-HWA SHIUE provided false and fraudulent invoices and packing lists for these shipments to freight forwarders and/or brokers, which invoices and packing lists identified the exporter/manufacturer as one of the excluded exporter/manufacturers not subject to an antidumping duty. The freight forwarder and/or brokers, in turn, provided these false and fraudulent entry documents to USCS.

8. It was further part of the conspiracy that after USCS officials secured containers in Berwyn, Illinois from SK Trading for entries E94-0943708-0, E94-0944142-1, E94-0944022-5, E94-0943618-1 and E94-0944162-9 on April 18, 19, and 26, 2000, defendant SHIH-MING SHIUE promised to pay a Senior Customs Inspector $50,000 if the USCS closed its investigation into the seized containers and released the containers. Unbeknownst to the defendants, the Senior Customs Inspector agreed to pose as a corrupt inspector and was working with law enforcement throughout the time he was in contact with defendant SHIH-MING SHIUE. Defendant SHIH-MING SHIUE paid that Inspector $30,000 in cash that day. SHIUE paid the Inspector the balance of the bribe, $20,000, in cash, on June 28, 2000.

9. It was further part of the conspiracy that after the bribe payments to the Inspector on April 26, and June 28, 2000, defendants SHIH-MING and I-HWA SHIUE also directly

used CAI, Inc. and TLC, International to import Chinese-made brake rotors using false and fraudulent entry documents to avoid antidumping duties.

10. It was further part of the conspiracy that the defendants misrepresented, concealed and hid and caused to be misrepresented, concealed and hidden, the true causes and nature of the their acts done in furtherance of the conspiracy, and misrepresented, concealed, and caused to be misrepresented and concealcd the true nature of the conspiracy.

<u>Overt Acts</u>

11. The following overt acts were made in furtherance of the conspiracy in the Northern District of Illinois and elsewhere:

a. On or about June 4, 1999, defendant I-HWA SHIUE caused a false and fraudulent invoice, namely, a China National Automotive Industry Import and Export Corporation invoice, dated June 4, 1999, for entry 004-80045970, invoice number 199E/1911136, to be fabricated and provided to a freight forwarder for the purpose of providing these entry documents to the USCS in the Northern District of Illinois. This false and fraudulent invoice was, in fact, subsequently provided to the USCS by the freight forwarder.

b. On or about July 8, 1999, defendant I-HWA SHIUE sent a letter to the USCS falsely stating that 19 cases of Chinese-made brake rotors for entry 004-80094853 were sold in transit from TLC International to SK Trading, Inc., for the purpose of concealing that the true Importer of Record was TLC International.

c. On or about February 18, 2000, Individual A caused a false and fraudulent

bill of lading, namely, bill of lading number COSU270301222, dated February 18, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be fabricated and provided to SHIH-MING and I-HWA SHIUE, for the purpose of providing this entry document to the USCS in the Northern District of Illinois. This false and fraudulent bill of lading was, in fact, subsequently provided to the USCS by SHIH-MING and I-HWA SHIUE through a freight forwarder.

d. On or about March 17, 2000, defendants SHIH-MING SHIUE and I-HWA SHIUE caused a false and fraudulent invoice, namely, a China National Automotive Industry Import and Export Corporation invoice, dated February 15, 2000, for entry E94-0943618-1, invoice number I00E/0218, to be fabricated and caused the invoice and a false and fraudulent bill of lading, namely, bill of lading number COSU270301222, dated February 18, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be provided to a freight forwarder for the purpose of providing these entry documents to the USCS in the Northern District of Illinois. These false and fraudulent entry documents were, in fact, subsequently provided to the USCS by the freight forwarder.

e. On or about March 8, 2000, Individual A caused a false and fraudulent bill of lading, namely, bill of lading number COSU334316131, dated March 8, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be fabricated and provided to SHIH-MING and I-HWA SHIUE, for the purpose of providing this entry document to the USCS in the Northern District of Illinois. This false and fraudulent bill of lading was, in fact, subsequently provided to the USCS by SHIH-MING

and I-HWA SHIUE through a freight forwarder.

f. On or about March 29, 2000, defendants SHIH-MING SHIUE and I-HWA SHIUE caused a false and fraudulent invoice, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated February 25, 2000, for entry E94-0944022-5, invoice number I00E/0222, to be fabricated and caused the invoice and a false and fraudulent bill of lading, namely, bill of lading number COSU334316131, dated March 8, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be provided to a freight forwarder for the purpose of providing these entry documents to the USCS in the Northern District of Illinois. These false and fraudulent entry documents were, in fact, subsequently provided to the USCS by the freight forwarder.

g. On or about March 17, 2000, Individual A caused a false and fraudulent bill of lading, namely, bill of lading number COSU334317076, dated March 17, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be fabricated and provided to SHIH-MING and I-HWA SHIUE, for the purpose of providing this entry document to the USCS in the Northern District of Illinois. This false and fraudulent bill of lading was, in fact, subsequently provided to the USCS by SHIH-MING and I-HWA SHIUE through a freight forwarder.

h. On or about April 3, 2000, defendants SHIH-MING SHIUE and I-HWA SHIUE caused a false and fraudulent invoice, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated March 8, 2000, for Entry E94-0944142-1, to be fabricated and caused the invoice and a false and fraudulent bill of lading,

namely, bill of lading number COSU334317076, dated March 17, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be provided to a freight forwarder for the purpose of providing these entry documents to the USCS in the Northern District of Illinois. These false and fraudulent entry documents were, in fact, subsequently provided to the USCS by the freight forwarder.

i. On or about March 22, 2000, Individual A caused a false and fraudulent bill of lading, namely, bill of lading number COSU334318353, dated March 22, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be fabricated and provided to SHIH-MING and I-HWA SHIUE, for the purpose of providing this entry document to the USCS in the Northern District of Illinois. This false and fraudulent bill of lading was, in fact, subsequently provided to the USCS by SHIH-MING and I-HWA SHIUE through a freight forwarder.

j. On or about April 15, 2000, defendants SHIH-MING SHIUE and I-HWA SHIUE caused a false and fraudulent invoice, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated March 16, 2000 for entry E94-0944162-9, invoice number I99E/0321, to be fabricated and caused the invoice and a false and fraudulent bill of lading, namely, bill of lading number COSU334318353, dated March 22, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, to be provided to a freight forwarder for the purpose of providing these entry documents to the USCS in the Northern District of Illinois. These false and fraudulent entry documents were, in fact, subsequently provided to the USCS by the freight forwarder.

k. On April 26, 2000, after USCS officials secured containers in Berwyn, Illinois for entries E94-0943708-0, E94-0944142-1, E94-0944022-5, E94-0943618-1 and E94-0944162-9, defendant SHIH-MING SHIUE paid $30,000 in cash to a USCS Inspector to release the seized entries and to close the investigation into the seized entries, and gave $2,000 in cash to another individual for his introduction to the Inspector.

l. On June 28, 2000, defendant SHIH-MING SHIUE paid $20,000 in cash to the USCS Inspector in order to release the seized entries and to close the investigation into the seized entries.

m. On December 7, 2001, after law enforcement seized records from the defendants' businesses on December 4, 2001, defendant I-HWA SHIUE caused an employee to remove and discard records located in a rented storage facility, including invoices and purchase orders pertaining to the defendant's importation of Chinese-made brake rotors.

In violation of Title 18, United States Code, Sections 371 and 2.

## COUNT TWO

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about January 10, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated November 30, 1999, for Entry E94-0941673-8, invoice number 99XHZCCCL 0110, listing 36,047 brake rotors, valued at $176,871, and bill of lading, number COSU270301171, dated December 6, 1999, listing the exporter/manufacturer as CAIEC/Laizhou CAPCO Machinery Company, which invoice and bill of lading falsely stated the true exporter/manufacturer combination;

In violation of Title 18, United States Code, Sections 542 and 2.

## COUNT THREE

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about January 27, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain Brake Rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated December 15, 1999, for entry E94-0942188-6, invoice number I99E/2001, listing 19,483 brake rotors, valued at $96,105, and bill of lading, number COSU2703011201, dated December 27, 1999, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, which invoice and bill of lading falsely stated the true manufacturer/exporter combination;

In violation of Title 18, United States Code, Sections 542 and 2.

## COUNT FOUR

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about March 17, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely a China National Automotive Industry Import and Export Corporation invoice, dated February 15, 2000, for entry E94-0943618-1, invoice number I00E/0218, listing 20,800 brake rotors, valued at $49,216, and bill of lading, number COSU270301222, dated February 18, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, which invoice and bill of lading falsely stated the true manufacturer/exporter combination;

In violation of Title 18, United States Code, Sections 542 and 2.

**COUNT FIVE**

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about March 29, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated February 25, 2000, for entry E94-0944022-5, invoice number I00E/0222, listing 37,170, brake rotors, valued at $98,707, and bill of lading, number COSU334316131, dated March 8, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, which invoice and bill of lading falsely stated the true manufacturer/exporter combination;

In violation of Title 18, United States Code, Sections 542 and 2.

## COUNT SIX

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about April 3, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated March 8, 2000, for Entry E94-0944142-1, invoice number I99E-0320, listing 47,012 brake rotors, valued at $106,403, and bill of lading, number COSU334317076, dated March 17, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, which invoice and bill of lading falsely stated the true exporter/manufacturer combination;

In violation of Title 18, United States Code, Sections 542 and 2.

**COUNT SEVEN**

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about April 15, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated March 16, 2000, for entry E94-0944162-9, invoice number I99E/0321, listing 30,762 brake rotors, valued at $74,423, and bill of lading, number COSU334318353, dated March 22, 2000, listing the exporter/manufacturer combination as CAIEC/Laizhou CAPCO Machinery Company, which invoice and bill of lading falsely stated the true manufacturer/exporter combination;

In violation of Title 18, United States Code, Sections 542 and 2.

**COUNT EIGHT**

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. Between on or about April 26, 2000 and on or about June 28, 2000, at Elk Grove Village, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE,

defendant herein, directly and indirectly corruptly gave, offered, and promised something of value, namely $50,000, in payments of $30,000 and $20,000, to an official of the United States Customs Service, namely a Senior United States Customs Inspector with intent: (1) to influence official acts; (2) to influence the official to commit and aid in the commission of a fraud on the United States; and (3) to induce the official to do acts in violation of his lawful duties;

In violation of Title 18, United States Code, Sections 201(b)(1) and (2).

## COUNT NINE

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about October 30, 2000, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely, a China National Automotive Industry Import and Export Corporation (CAIEC) invoice, dated September 2000, for entry EN5-0016006-8, invoice number 0000614, listing 29,414 brake rotors, valued at $164,953, and bill of lading, number LKCHI300213, dated September 8, 2000, listing the manufacturer as Xianghe Zichen Casting Company, which invoice and bill of lading falsely stated the true manufacturer/exporter combination;

In violation of Title 18, United States Code, Sections 542 and 2.

## COUNT TEN

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. Paragraph one of Count One of this indictment is hereby realleged and incorporated herein.

2. On or about January 22, 2001, in the Northern District of Illinois, Eastern Division,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, did enter and introduce and attempt to enter and introduce into commerce of the United States certain brake rotors imported from the People's Republic of China, by means of an invoice and a bill of lading defendants knew to be fraudulent and false, namely a Xianghe Zichen Casting Company invoice, dated December 2000, for Entry 274-0123379-9, invoice number 0000624, listing 12,086 brake rotors, valued at $60,014, and bill of lading, number QDCHI301153, dated December 16, 2000, listing the manufacturer as Xianghe Zichen Casting Company, which invoice and bill of lading falsely stated the true manufacturer;

In violation of Title 18, United States Code, Sections 542 and 2.

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2002-2 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates here by reference the allegations of Counts one through seven and nine and ten of this Indictment for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

2. As a result of these violations of Title 18, United States Code, Sections 371, and 542, as alleged in the foregoing indictment,

SHIH-MING SHIUE and
I-HWA SHIUE,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any and all right, title, and interest they may have in any property, real and personal:

a. that constitutes, or is derived from, or is traceable to, proceeds obtained, directly or indirectly, from the charged offenses;

b. that was used to facilitate, or was intended to be used to facilitate the charged offenses, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982.

3. The interests of the defendants are subject to forfeiture pursuant to Title 18, United States Code, Section 982, include but are not limited to:

a. Approximately $29,000,000;

4. If any of the forfeitable property described above, as a result of any act or omission

by a defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(2)(B).

A TRUE BILL:

[signature]
FOREPERSON

[signature]
UNITED STATES ATTORNEY

No.

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

UNITED STATES OF AMERICA

vs.

SHIH-MING SHIUE and
I-HWA SHIUE

---

**INDICTMENT**

In violation of: **Title 18 U.S.C. §371, §2, §201(b)(1), §542**

---

A true bill,

____________________
Foreman

Filed in open court this NOV 20 2003 day

of ________________, A.D. 19______

KATIE FRANC Clerk MICHAEL W. DOBBINS

Bail, $________________