# Exhibit 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 03-1107 |
| | ) | |
| I-HWA SHIUE, | ) | Honorable John W. Darrah |
| Defendant. | ) | |

**DEFENDANT I-HWA SHIUE'S AMENDED POSITION PAPER AS TO SENTENCING FACTORS**

Defendant I-Hwa Shiue submits this amended memorandum in support of her request for a sentence of probation with appropriate conditions, and no fine or restitution.

This amended memorandum is intended to replace the sentencing memorandum filed by Ms. Shiue on June 20, 2007, shortly before the sentencing hearing in this matter was continued to October 9, 2007. This amended memorandum updates the relevant law and facts cited in the previously filed sentencing memorandum. Counsel for Ms. Shiue and the Government have conferred, and the Government does not oppose the filing of an amended sentencing memorandum for this purpose.

## I. INTRODUCTION.

This is an exceptional case. I-Hwa Shiue is a 50-year-old woman whose life is dedicated – and essential – to her elderly and terribly ill mother and to her three children. Her ability to care for them is jeopardized by the poor judgment that she acknowledges she exercised by being in business with her brother, which led to a violation of the U.S. Customs laws. She has made her amends and expressed remorse, tangibly, by candidly accepting responsibility and undertaking to substantially assist in government investigations. Ms. Shiue has also settled the forfeiture claim. The Government recognized this case as an exceptional one from the start. By

agreeing to a guilty plea to a count where the maximum statutory penalty is below the minimum advisory sentencing guideline, the Government has already acknowledged by its conduct that a departure from the guidelines is appropriate. Ms. Shiue requests the Court further depart and impose a sentence that adequately recognizes all of the mitigating aspects of her situation.

Ms. Shiue's offense, which involved importing Chinese-made brake rotors into the United States using falsified entry documents to avoid antidumping duties, occurred in the context of several significant mitigating factors. First, Ms. Shiue was fearful of and dominated by her violent brother, co-defendant Shih-Ming Shiue ("Ming Shiue"). Second, Ms. Shiue's judgment was significantly affected by the extraordinary pressure she was under due to the failing health of her elderly parents, for whom she was responsible. Third, the "loss" calculated according to the now-advisory United States Sentencing Guidelines (the "Guidelines") substantially overstates the actual impact of Ms. Shiue's conduct.

Not only is the seriousness of the offense mitigated by these factors, but Ms. Shiue's post-charge conduct and circumstances merit consideration. Ms. Shiue has accepted responsibility for her actions, is genuinely remorseful, and has fully satisfied her forfeiture obligations to the Government. Ms. Shiue has concurrently contributed to the public good by substantially assisting in the prosecution of others violating the law. Ms. Shiue recognizes that she should have resisted the pressures that led her to commit the offense, but presents the information herein about circumstances surrounding her misjudgment and later efforts at demonstrating her remorse for the Court's consideration at sentencing.

In light of the factors that the Court considers under 18 U.S.C. § 3553, a sentence of probation with appropriate conditions meets the deterrent goals of sentencing while also recognizing that:

(1) Ms. Shiue provided valuable assistance to investigations and produced tangible results, including allowing offenders to be identified, arrested and prosecuted and shipments of illegal imports to be intercepted and seized;

(2) Ms. Shiue has accepted responsibility for her actions and has settled her forfeiture obligations with the Government;

(3) Ms. Shiue's family circumstances make her an indispensable caregiver to her elderly and completely dependent mother;

(4) Ms. Shiue had a relatively minor role in the offense as compared to her co-defendant and made direct efforts to act lawfully by seeking out legal help while, unbeknownst to her, Ming Shiue was committing further offenses;

(5) the coercion – violent coercion – that Ms. Shiue suffered at Ming Shiue's hands contributed to her remaining a co-conspirator; and

(6) the offense is less serious than a mechanical Guideline calculation based upon a "loss" figure that does not account for the retrospective Customs duty law which eliminates payments for most of what the Guidelines call loss.

Society's interests are best served by fashioning a sentence that allows Ms. Shiue to continue to provide physical, emotional and economical support to her family, particularly her elderly mother who depends on her constant care in light of her numerous and serious medical problems. In addition, Ms. Shiue has no history of criminal behavior. Given the extremely low likelihood of recidivism, society will be better served if Ms. Shiue can put her substantial skills and personal qualities to use at work and at home, rather than in a penal institution. The sentence requested here will also permit her to continue to assist law enforcement. Under any sentencing system that takes into account the goals of deterrence, punishment, rehabilitation and restitution, in view of the overall good of society, the proposed sentence is appropriate.

## II. PROCEDURAL AND FACTUAL BACKGROUND.

### A. The Plea Agreement.

On April 19, 2006, Ms. Shiue pled guilty to Count Two of the Indictment alleging one count of Entry of Goods by Means of False Statement, in violation of 18 U.S.C. § 542. This charge carries a maximum penalty of 24 months imprisonment.[1]

### B. Factual Background.

#### 1. Ms. Shiue's Personal Background.

I-Hwa Shiue is a 50-year-old woman who is a devoted wife, daughter, sister, and mother of three children. She has always worked hard, both professionally and within the home, without complaint, even during the difficult times. Through that hard work and dedication, she has truly attained the American dream.

Ms. Shiue was born in Keelung, Taiwan, in 1956. She is one of five children. Ms. Shiue attended high school and college in Taiwan, obtaining a bachelor of science degree in 1979. That year, Ms. Shiue immigrated to the United States to attend graduate school. She studied computer science at Boston University for two years, then completed her graduate studies at the University of Massachusetts Lowell, receiving a master's degree in computer science and

[1] Count Two also carries a maximum fine of $250,000, or not more than the greater of twice the gross amount of the gain or loss, and any restitution ordered by the Court. In this case, however, neither a fine nor restitution are warranted due to Ms. Shiue's financial condition, and her agreement to settle the forfeiture claim for her share of $1.15 million. Paragraph 7 of the Plea Agreement provides that the parties agree that the base offense level for Count Two is 22 (using the 1998 Guidelines as the parties have agreed), pursuant to U.S.S.G. §§ 2T3.1(a)(1) and § 2T4.1, based on a "loss" of $5,065,000, which is more than $5,000,000 but less than $10,000,000, pursuant to § 2T4.1(Q). The Government has agreed to a 2-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), plus an additional 1-point reduction based her timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), should the Court determine the offense level to be 16 or greater prior to the operation of U.S.S.G. § 3E1.1(a). Ms. Shiue's criminal history points equal 0 and her criminal history category is I. Based upon these calculations, Ms. Shiue's adjusted offense level is 19. This results in a Guidelines range of 30-37 months imprisonment, prior to applicable downward departures.

mathematics in 1982. From the mid to late 1980's, Ms. Shiue worked in the computer software engineering industry. In 1985, Ms. Shiue became a U.S. citizen.

Ms. Shiue married her husband, Tien-Lang Chang, in 1982. Dr. Chang, age 51, is a well respected pediatrician affiliated with Massachusetts General Hospital, who recently formed his own practice. Together, they have three children: Eric Chang, age 22, a recent University of Massachusetts graduate; Daniel Chang, age 20, who attends the University of Illinois; and Tracy Chang, age 19, who attends Boston College. Eric Chang is employed and presently lives at home with Ms. Shiue and her husband. The family resides in Lexington, Massachusetts.

### 2. Ms. Shiue's Employment History And Work With Ming Shiue.

In 1988, Ms. Shiue gave up her own career in the computer industry to help her mother manage a restaurant in Cambridge, Massachusetts. Later, in 1993, Ms. Shiue went into the trading industry with her brother, Ming Shiue. Together they formed two companies: CAI Incorporated ("CAI"), which specialized in the importation and resale of brake rotors and metal parts, and TLC International ("TLC"), which imported and sold plastic injection molds and various small housewares. CAI and TLC were small family-run businesses. CAI and TLC had at most six or seven other employees.[2] Ms. Shiue did not draw a salary, but received a 40% share in the profits, as did her brother. Ms. Shiue's responsibilities varied, and she essentially worked as determined by her brother. She did the accounting and bookkeeping and assorted office tasks. Ming Shiue, a former auto mechanic, dealt directly with the Chinese brake rotor exporter/manufacturers, and negotiated CAI's business deals. Ms. Shiue was more involved with exporter/manufacturers for TLC's business of importing small plastic housewares. Because

[2] The Presentence Investigation Report ("PSR"), at line 502, incorrectly reports that the companies had a total of 607 employees.

Ming Shiue did not prepare paperwork or send e-mails, these tasks fell upon Ms. Shiue and other employees for both CAI and TLC.

Certain cultural truths and family practices from Ms. Shiue's traditional Chinese upbringing were difficult for her to overcome. Ms. Shiue's background does not excuse, but helps explain, how an educated woman became involved in the offense at issue. Ming Shiue, age 53, is the eldest male in their family. They were raised in a male-dominated society and family atmosphere. Ms. Shiue is a quiet, petite woman, and was expected to do as her older brother told her to do. Ming Shiue directed Ms. Shiue's actions within the business, and when she disagreed with his practices, her brother instructed her to do it "his way." Ming Shiue established his dominance and control with physical violence and fear early on in their work together. On one occasion, Ming Shiue threw a large book at Ms. Shiue, striking her in the head, which caused a concussion and dislocated her jaw. Ms. Shiue operated as directed by her brother. That led to the poor judgment to avoid Customs taxes that brings her before the Court.

The U.S. Department of Commerce set preliminary antidumping duties on brake rotors imported from China in 1996. The preliminary rate for most exporter/manufacturers was set at a 43.32% rate. At that time, few Chinese exporter/manufacturers were familiar with a process of Customs review which was required to obtain a lower, fixed antidumping duty rate.

In this context, beginning in 1997, Ming Shiue had Ms. Shiue prepare invoices that falsely identified the exporter/manufacturer as one with a 0% duty, rather than the true exporter/manufacturer from which they imported brake rotors that had the higher 43.32% duty. Ms. Shiue was involved with the preparation of invoices that falsely identified the exporter/manufacturer as China National Automotive Industry Import & Export Corporation ("China National") when they actually imported brake rotors manufactured by Xianghe Zichen

Casting Corporation ("Zichen"); she was not involved in preparing false invoices for brake rotors coming from other manufacturers. These invoices were part of the entry documents submitted to Customs.

Ms. Shiue was not involved in, nor even aware of, the bribery conduct alleged against Ming Shiue in Count Eight of Indictment. When Customs informed the Shiues that they had detained containers of goods the Shiues were attempting to import at the Port of Chicago, Ms. Shiue convinced Ming Shiue to seek legal advice on how to lawfully address the situation. Shortly after they met with a Boston attorney about antidumping duties, Ming Shiue – unbeknownst to Ms. Shiue – tried to solve the problem on his own by paying a bribe to a Customs Inspector. This resulted in the bribery charge against Ming Shiue.

The Shiues' companies recently ceased operations, due to the bankruptcy of their largest creditor, Universal Brake Parts. Universal Brake Parts had an approximate outstanding balance of $3,800,000 to the Shiues' companies when it declared bankruptcy. This forced the Shiues to close CAI and TLC. They are assessing whether they will file for bankruptcy or simply dissolve the businesses.

Ms. Shiue is currently employed at Ziway, Incorporated, a plastics particle outsourcing business, which is owned by another brother, Shih-Wei Shiue.

**3. Ms. Shiue's Care For Her Elderly And Infirm Parents, And Continuing Care For Her Invalid Mother.**

During the time period of the offenses described in the Indictment, Ms. Shiue was coping with her elderly parents' rapidly declining health by becoming the primary caregiver to her mother and father. By the summer of 2000, the health of her father, Jiaan Chung Shiue, had declined to the point where he required 24-hour care, and due to her age, her mother was unable to care for him. Her mother was experiencing undiagnosed early symptoms of Parkinson's

disease. Rather than hasten their decline by placing her parents in a nursing home or assisted-living facility, Ms. Shiue moved her parents into her Lexington home. She consulted doctors, and had nurses and social workers conduct home visits to help her redesign her home to be handicapped accessible. Ms. Shiue's sister, Lee-Hwa Pearl Shiue ("Pearl Shiue"), age 57, also moved into the home to assist with their parents' care because one caregiver was not enough, particularly because Pearl Shiue suffers from back, wrist and muscle ailments.

When Ms. Shiue's parents moved into her home, her father suffered from diabetes and was almost completely blind. He suffered from heart problems that required a pacemaker, and had high blood pressure. He underwent dialysis three times per week for kidney disease. Either Ms. Shiue or Pearl Shiue had to accompany their father to his medical appointments, particularly his dialysis treatments because he was prone to removing the tubes during treatment.
Ms. Shiue's father had undergone several surgeries for his ailing digestive system, necessitating both a colostomy and urine bag that required Ms. Shiue's frequent attention.

While caring for her father, Ms. Shiue's mother, Chin Fun Shiue, age 82, also fell severely ill. In 2002, Ms. Shiue's mother suffered a brain aneurysm, resulting in major brain damage. Since then, she has undergone nine surgeries, four of them brain surgeries. She spent six months in the hospital following the aneurysm, followed by in-patient rehabilitation. Even after rehabilitation, doctors told Ms. Shiue that her mother would never walk again. After her mother came home from rehabilitation therapy, Ms. Shiue helped her with daily physical therapy at home. Over time, her mother regained the ability to walk, albeit very slowly and with the help of a walker. Her doctors called this a miracle.

Ms. Shiue's mother was subsequently diagnosed with Parkinson's disease. She also suffers from a blood clot in her leg, balance problems, and incontinence. The Parkinson's affects

her psychologically as well. She has a childlike mentality and experiences delusions. She will not let anyone other than Ms. Shiue bathe her, not even Pearl Shiue. Ms. Shiue is emotionally very close to her mother, and gives her constant encouragement to keep her spirits up. Because her mother refuses to wear adult protective undergarments, Ms. Shiue sleeps in her mother's bedroom so she can take her to the bathroom in the middle of the night, often up to five times a night.

Ms. Shiue has provided financial support as well as the physical and emotional support described above, particularly in purchasing medical equipment for the home. Ms. Shiue hired a Chinese-speaking housekeeper to assist with special meal preparation for her parents, and to ensure that her parents took their medications as prescribed.[3] Ms. Shiue and her sister Pearl, however, are the primary caregivers who did everything from take their parents to medical appointments to bathing their mother and changing their father's colostomy and urine bags.

Ms. Shiue's parents' health conditions worsened. At the end of November 2006, Ms. Shiue's mother suffered a fall, and her doctors placed her in a rehabilitation facility for observation. While in rehab, she fell out of her wheelchair and was again admitted to the hospital. In the hospital she developed pneumonia with complications that required a tracheotomy. She has had several gastrointestinal complications as well, and now has a feeding tube. She also requires daily oxygen therapy. She is too sick to walk and she cannot easily communicate with others. Ms. Shiue stayed with her mother in the rehabilitation hospital from 10 a.m. until 3 p.m. every day, continuing her mother's physical therapy, for the Parkinson's disease, and learning how to care for her in light of her new medical problems.

---

[3] The housekeeper is not a nurse, as stated in the PSR at line 411. In addition, while the housekeeper has a bedroom in Ms. Shiue's home, she is not on call 24-hours a day.

Ms. Shiue's father had surgery in December, 2006, due to a complication with his dialysis treatments, and was placed in the same rehabilitation hospital as her mother. While in recovery there, he suffered cardiac failure and died at age 82 on February 16, 2007. Ms. Shiue videotaped the funeral services, planning to tell her mother about her father's death when her mother has recovered enough and has her entire family around her for emotional support. The loss of her husband is likely to exacerbate Ms. Shiue's mother's condition, placing ever increasing demands on Ms. Shiue.

The physicians treating Ms. Shiue's mother believe that if Ms. Shiue were unable to stay home and care for her mother it would have a detrimental affect on her mother's physical and emotional health.[4] Ms. Shiue's mother, who is a retired nurse herself, has unequivocally refused to be moved into a nursing home and has threatened to commit suicide should she be placed in one. Ms. Shiue provides critical care that cannot easily be replaced.[5] Dr. Hung, the physician treating Ms. Shiue's mother for Parkinson's disease, believes "I-Hwa's role in Mrs. Shiue's physical and mental health is crucial." *See* Ex. A. Fortunately, Ms. Shiue's current employment situation allows her the flexibility to care for her mother as described above, and she can work from home or hospital visits over e-mail and mobile phone.

On March 22, 2007, the doctors at the rehabilitation hospital allowed Ms. Shiue's mother to return to home with her, as opposed to a nursing home, because Ms. Shiue was able to demonstrate that she is skilled enough and properly equipped to care for her mother at home.[6] For example, hospital staff conducted a home visit on March 13, 2007, to observe Ms. Shiue lift

---

[4] *See* Letter of Albert Hung, M.D., attached hereto as Exhibit A.

[5] *See* Letter of Lee-Hwa Pearl Shiue, attached hereto as Exhibit B.

[6] *See* Letters of Sharon Purcell, P.T., Lindsay Sheppard, O.T.R/L, and Arun Chaudry, M.D., attached hereto, respectively, as Exhibits C, D and E.

her mother out of bed, help her use the bathroom and shower, and to generally inspect the home. Ms. Shiue also demonstrated that she can suction her mother's tracheotomy tube, administer her medicine, monitor her oxygen levels, and feed her through the feeding tube. If it were not for Ms. Shiue, her mother certainly would be sent to a nursing home, which Ms. Shiue believes her mother would not survive.[7] Indeed, Mrs. Shiue's physical therapist from the rehabilitation hospital stated that "her continued improvement will depend on the home care I-Hwa provides." *See* Ex. C.

In addition, on March 28, 2007, Ms. Shiue's mother-in-law had surgery on her legs to treat skin cancer. During her recovery, she was unable to walk and temporarily confined to a wheelchair. Ms. Shiue moved her mother-in-law into her home to care for her for several months as she recovered from this surgery.[8]

As much as Ms. Shiue loves her parents and has never complained about caring for them, supporting them through their health conditions placed an enormous amount of stress upon her and her immediate family. *See* Ex. G. The pressure of caring for her parents and her remorse for committing the offense described herein have caused Ms. Shiue severe strain, which would be exacerbated by incarceration. Ms. Shiue is currently under the medical care of Dr. Malloy of Massachusetts General Hospital in Boston, who is treating her for depression. Ms. Shiue takes prescription antidepressants to treat the depression and stress she is experiencing. Ms. Shiue's primary worry is that incarceration will have a devastating effect on her family, in particular, her mother.

[7] *See* Letter of Chin-Fun Shiue, attached hereto as Exhibit F.

[8] *See* Letter of Tien-Lang Chang, attached hereto as Exhibit G.

#### 4. Ms. Shiue's Cooperation With Law Enforcement Has Had Tangible Results, Including Arrests, Convictions, And The Interception And Seizure Of Illegal Imports.

For the past five years, Ms. Shiue has been assisting law enforcement in a variety of government investigations, several of which utilize her Customs experience and Chinese language skills. Ms. Shiue's cooperation work assisted a Massachusetts state investigation of a storefront operation that was selling counterfeit cigarettes, which resulted in the arrest and prosecution of three individuals and two corporations. Ms. Shiue's cooperation also led to the interception and seizure of two shipping containers of counterfeit cigarettes from China. The Government used the seized contraband in other investigations, and two individuals were arrested and prosecuted as a result. Due to the confidential nature of her undercover work, Ms. Shiue has separately submitted for the Court's *in camera* review a Supplemental Position Paper as to Sentencing Factors, which describes her cooperation efforts in greater detail.

## III. ARGUMENT.

### A. The Goals Of 18 U.S.C. § 3553(a) Are Best Served By A Sentence Of Probation With Appropriate Conditions.

In order to arrive at a determination of an appropriate sentence, the court considers the factors set forth in 18 U.S.C. § 3553(a) and applies those factors to the particular case. *See United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005); *United States v. Baker*, 445 F.3d 987, 991 (7th Cir. 2006) ("Post-*Booker*, a district court has significantly more freedom than before *Booker* to fashion an appropriate sentence."); *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005).

The primary directive under Section 3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. 18 U.S.C. § 3553(a). These purposes include the need to reflect on the seriousness of the offense,

promote respect for the law, provide just punishment, create adequate deterrence, protect the public from future crimes of the defendant, and provide the defendant with necessary treatment and training. 18 U.S.C. § 3553(a); *Dean*, 414 F.3d at 728. Section 3553(a) also directs sentencing courts to consider other factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing guideline range, pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**B. Ms. Shiue Has Rendered Substantial Assistance To The Government, Warranting A Downward Departure.**

The Plea Agreement states that the Government may move for a downward departure pursuant to U.S.S.G. § 5K1.1 should it determine that Ms. Shiue has provided substantial assistance in other criminal investigations. Ms. Shiue has been assisting with various investigations for the past five years. Given the confidential nature of this information, Ms. Shiue has separately submitted to the Court for *in camera* review a Supplemental Position Paper as to Sentencing Factors describing her assistance to various government investigations. As set forth in the Supplemental Position Paper, even without a § 5K1.1 motion, Ms. Shiue's assistance would warrant a reduced sentence pursuant to Section 3553(a) and U.S.S.G. § 5K2.0 because of the nature and extent of her cooperation, the results achieved, and her assistance to various government agencies.

**C. Ms. Shiue's Full Acceptance Of Responsibility And Complete Satisfaction Of Forfeiture In This Case Warrant A Sentence Reduction.**

On March 15, 2007, Ms. Shiue, Ming Shiue, and the Government entered into a settlement agreement in principle regarding forfeiture. As stipulated in their respective plea

agreements, Ms. Shiue and Ming Shiue are jointly and severally liable for loss in the amount of $5,065,000. The Government and the Shiues agreed to compromise the forfeiture amount by paying their shares of $1,150,000 in full prior to or at the time of sentencing. This agreement reflects two realities: first, that the amount of the duty evaded is really less than the stipulated amount, and second, that the Government was not going to recover any funds at all given the Shiues' financial situation. Nonetheless, Ms. Shiue voluntarily compromised the forfeiture claim, reflecting her genuine remorse and acceptance of responsibility.

In order to pay the forfeiture amount to the Government, Ms. Shiue has liquidated her available assets, borrowed money from family members who withdrew funds from the equity of their homes, and borrowed money from her husband. She intends to repay family members using any available retirement savings and by continuing to work.

### D. The Proposed Sentence Is Warranted Under 18 U.S.C. § 3553(a)(1) And The Advisory Guidelines In Light Of Ms. Shiue's Extraordinary Family Responsibilities And The Detrimental Impact That Incarceration Would Have On Her Family.

Ms. Shiue's extraordinary family circumstances justify the requested sentence because, under Section 3553(a)(1), sentencing courts consider "the history and characteristics of the defendant" in determining "a sufficient, but not greater than necessary," sentence. In addition, under the advisory Guidelines, courts have departed pursuant to U.S.S.G. § 5H1.6 when a defendant's family ties and responsibilities are "so unusual that they may be characterized as extraordinary." *United States v. Canoy*, 38 F.3d 893, 906-07 (7th Cir. 1994) (collecting cases). As detailed below, an incarceration would have damaging repercussions throughout Ms. Shiue's household, where she cares for her elderly and seriously ill mother.

The specifics of Ms. Shiue's family situation demonstrate that her responsibilities are unusual and extraordinary. In addition to her responsibilities to her husband and three children,

she is the primary caregiver to her disabled mother. She redesigned her home to be handicapped accessible. She has purchased medical equipment necessary for her mother's care. For example, she recently purchased a special machine to help with suctioning her mother's trachea and another to regulate the speed of food administered via feeding tube. In light of her mother's recent medical problems, she will be the sole person able to care for her because she has learned how to use all of these medical devices. She personally performs physical therapy on her mother to make sure her muscles and joints do not stiffen due to her Parkinson's disease. She sleeps in her mother's bedroom to help her use the bathroom in the middle of the night. Emotionally, Ms. Shiue is the closest of her siblings to her mother, and spends a great deal of time keeping her mother's spirits up while battling her many illnesses. Her mother's doctors agree that Ms. Shiue's care is irreplaceable. *See, e.g.,* Exs. A, C.

Courts have departed based on family responsibilities akin to Ms. Shiue's. For example, the Sixth Circuit, in *United States v. Husein*, 478 F.3d 318, 329 (6th Cir. 2007) upheld a noncustodial sentence of three years supervised release, with an initial term of home confinement, and where the Guideline range was 37-46 months based on the defendant's extraordinary family responsibilities in caring for her invalid father and the overall financial condition of her household. In *Husein*, the defendant's father had suffered a stroke and was placed on dialysis to treat chronic kidney failure. *Husein*, 478 F.3d at 322. The defendant's father also suffered from coronary artery disease, diabetes, hypertension, and cardiomyopathy. *Id.* Following a second stroke, he suffered from renal failure, dementia, was paralyzed on his right side, and was unable to use the restroom by himself, walk, and was barely able to talk. *Id.* at 322-323. The defendant lived with her parents and cared for the father at their home, where she fed him via a feeding tube attached to his stomach. *Id.* at 323. The home was equipped with

a hospital bed, breathing machine, and a feeding machine. *Id.* The defendant adjusted her work schedule to care for her father, including leaving work to feed him through a feeding tube. She also alternated work shifts with her mother so each of them could earn income and care for the father, and helped raise her younger siblings, taking them to and from school. *Id.* at 323. The Sixth Circuit affirmed the sentencing court's finding that the defendant was "irreplaceable" to her family, which warranted a reduced sentence under U.S.S.G. § 5H1.6. *Id.* at 324, 329.

Additionally, in *United States v. Alba*, 933 F.2d 1117,1122 (2d Cir. 1991), the Second Circuit upheld a departure based on similar family circumstances. In *Alba*, which was cited favorably by the Seventh Circuit in *Canoy*, 38 F.3d at 908, the Court upheld a downward departure based on extraordinary family circumstances where the defendant was a married father of two children who lived with his disabled father and his paternal grandmother, and was responsible for lifting his father in and out of his wheelchair. *Id.* at 1122; *see also United States v. Owens*, 145 F.3d 923, 926 (7th Cir. 1998) (upholding downward departure based on family circumstances where defendant financially supported his common law wife and children and "spent time every day with his brother who suffers from Down Syndrome"); *United States v. Norton*, 218 F. Supp. 2d 1014,1021-22 (E.D. Wis. 2002) (granting downward departure where defendant was single mother of three children, two of whom suffered from asthma, and was responsible for transporting her elderly mother to doctor's appointments).

The goals of sentencing will also be served in this case with a departure based on Ms. Shiue's family responsibilities under both 18 U.S.C. § 3553(a) and the advisory Guidelines, such as the need for just punishment, the need for deterrence, the protection of the public, and the rehabilitation of the defendant. *See Norton,* 218 F. Supp. 2d at 1020. Ms. Shiue's offense was non-violent and therefore she does not pose a threat to the public. She has no prior criminal

history. A sentence of probation with appropriate conditions will ensure that she is closely monitored for a substantial period of time. The proposed sentence will not undermine the seriousness of her offense, but will serve the public interest in that it will allow her to continue to care for her elderly mother and the rest of her family.

**E. The Proposed Sentence Is Justified And Reasonable <u>In Light Of Ms. Shiue's Relatively Minor Role In The Offense.</u>**

Ms. Shiue is not as culpable as her co-defendant, Ming Shiue. She was not aware of, nor had any role whatsoever in Ming Shiue's bribery of a Customs official. Ms. Shiue was not charged in Count Eight of the Indictment for bribery. When Ms. Shiue was informed that Customs was detaining their containers at the Port of Chicago, she successfully persuaded her brother to go with her to consult with an antidumping attorney in Boston about how to handle the issue. But before they could fully address the situation, Ming Shiue went off to resolve the problem on his own – without telling Ms. Shiue – which resulted in the bribery charge.

As stated above, under Section 3553(a)(1), the Court must take into consideration the nature and circumstances of the offense and the history and characteristics of the defendant. Here, as the facts demonstrate, Ming Shiue was the leader in this offense and Ms. Shiue was a follower. Ming Shiue negotiated the deals with the Chinese brake rotor exporter/manufactures, because he had the connections and the experience with automotive repair. Ming Shiue dictated that at work things were to be done "his way." Ms. Shiue lacked knowledge of the extent of her brother's activities in furtherance of the offense. The proposed sentence of probation with appropriate conditions is therefore reasonable and just in light of Ms. Shiue's minor role.

**F. The Proposed Sentence Is Warranted Under 18 U.S.C. § 3553(a) And The Advisory Sentencing Guidelines Because Ms. Shiue Committed The Offense Under Serious Coercion And Duress.**

The nature and circumstances of this case and how Ms. Shiue came to be involved in the offense weigh heavily in favor of granting the proposed sentence. Importantly, Ms. Shiue's history and characteristics include the fear of her brother and the family pressures she was under at the time of the offense conduct. Likewise, the advisory Guidelines explicitly permit the Court to decrease a sentence if there is "an objective showing that a reasonable person would have been coerced under the particular circumstances of the defendant's case." *United States v. Keller*, 376 F.3d 713, 718 (7th Cir. 2004) (citations and internal quotations omitted).

Ms. Shiue's role in the offense to which she has pled guilty arises out of a history of domination and fear caused by her brother, Ming Shiue. Despite the fact that Ms. Shiue and her brother each had ownership stakes in their two importation businesses, CAI and TLC, Ming Shiue was clearly the leader and Ms. Shiue was the follower. From the inception of their business relationship, Ming Shiue controlled the businesses and dictated that things were to be done "his way." The Shiues were raised in a Chinese culture and society in which such male domination was accepted. Coming from this cultural background, exacerbated by Ming Shiue's familial role of eldest brother, Ming Shiue controlled the Shiues' businesses, and to some degree, also controlled Ms. Shiue.

Ming Shiue also used fear and the threat of physical violence to control Ms. Shiue. On one occasion early on in business together, he physically abused Ms. Shiue in the workplace, in front of an employee, when she questioned his accounting practices. Although Ms. Shiue was responsible for accounts payable for their businesses, Ming Shiue disregarded her opinion as to how certain invoices were to be paid and recorded on the books. When Ms. Shiue objected to

Ming Shiue's practices, her brother told her to "do it my way." Ming Shiue threw a large book at Ms. Shiue, a petite woman, striking her head. She suffered a concussion and a dislocated jaw at the hands of her brother. Ms. Shiue was too frightened to report the incident. From that point forward, Ms. Shiue did her brother told her to do, up to and including forging documents to avoid antidumping duties. Moreover, as set forth in detail above, Ms. Shiue was coping with her parents' rapidly declining health during the time of the offenses, making her more vulnerable to duress.

The Court should consider Ms. Shiue's duress and her brother's coercion when imposing a sentence. Such consideration is consistent with the statutory goals of Section 3553(a), as well as the advisory Guidelines. Probation with appropriate conditions is more than sufficient punishment for Ms. Shiue's offenses in light of these circumstances.

**G. Ms. Shiue's Offense Is Less Serious Than The Loss Calculation Under The Guidelines Indicates Due To The Retrospective Nature Of The Customs Laws; Therefore, The Requested Sentence Is Justified and Reasonable.**

One of the circumstances of this offense is that the "loss" ($5,065,000) agreed to by the parties, pursuant to U.S.S.G. § 2T3.1,[9] overstates the seriousness of the offense.[10]

The purpose of the antidumping regulatory scheme is to prevent or remedy the "dumping" of foreign goods into the U.S. market, that is, the sale of goods in the U.S. at prices lower than the value at which they are sold in other markets, or at "less than fair value." The regulatory program aims to achieve this result by assessing an antidumping duty based upon the extent to which the goods are sold at less than fair value.

---

[9] The PSR reference to "§3T3.1" at lines 316-318 appears to be a typographical error. U.S.S.G. §2T3.1, Evading Import Duties or Restrictions, refers to the tax table found in U.S.S.G. § 2T1.4.

[10] The PSR refers to different amounts of loss at different places (*see* PSR at lines 246, 255, 259, 289, 299, 341, 349, 357, 359) but the amount of $5,065,000 has been stipulated.

Antidumping duties are assessed by a unique, "retrospective" method, which differs from the assessment of regular customs duties. In the antidumping system, the duty is fixed after the goods have been imported. As stated by Commerce:

> [u]nlike systems of some other countries, the United States uses a "retrospective" assessment system under which final liability for antidumping and countervailing duties to be assessed is determined after merchandise is imported. Generally, the amount of duties is determined in a review of the order covering a discrete period of time.

19 C.F.R. § 351.212(a) (2006). On an annual basis, a cash deposit rate is set, based on a provisional estimate. Any manufacturer, exporter, or importer may request a review of that rate. Commerce then reviews the conduct of the exporter during the year preceding the request. After this review – which can take between 12 and 18 months – a final rate is set, the duty is assessed, and the entry of goods is "liquidated" by Customs. The cash deposit is considered security for later payment of the assessed duty; it is not itself considered payment of the duty or revenue to the Government. The final duty may be assessed at the cash deposit rate – but only if a party defaults, that is, if it does not request a review. Alternatively, the final duty may be set below the cash deposit rate, and the difference between the two rates would be refunded. According to Commerce:

> The amount of the dumping margin does not become "fixed" within the meaning of Article 11 of the Antidumping Code, and thus antidumping duties are not assessed, until the Department has completed an administrative review. At that time, duties would be assessed at the rate established in the final results of administrative review. If an administrative review results in the "fixing" of a lower rate than had been deposited, the difference would be refunded in accordance with both U.S. law and the GATT Antidumping Code. If no review of particular entries is requested, however, the cash deposit rate becomes the "fixed" rate, and the entries will be liquidated at that rate.

54 Fed. Reg. 12742, at 12756 (March 28, 1989).

The Indictment alleges that the Shiues imported brake rotors by means of false documents from January 31, 1997 through December 5, 2001. Attached hereto as Exhibit H is a spreadsheet listing all of the entries of brake rotors by the Shiues' businesses during this time period involving false invoices. All of the files for these entries were seized during the execution of a search warrant at the Shiues' place of business in December 2001.

As set forth on Exhibit H, the chronology for this conduct breaks down into two time periods. During the first time period, January 31, 1997 through November 11, 1999, the Shiues used falsified China National invoices to import brake rotors manufactured by Zichen. China National had a zero antidumping duty rate during this time, while Zichen's antidumping rate was assessed at 8.51%. During the second time period, November 12, 1999 through the end of 2001, Zichen's antidumping duty rate was reduced to zero. *See* 64 Fed. Reg. 61581, at 61589 (Nov. 12, 1999). After Zichen's rate was reduced to zero, the Shiues' businesses imported brake rotors manufactured by both Zichen and other exporter/manufacturers. For those brake rotors obtained from other manufacturers, the Shiues' businesses used falsified Zichen invoices to avoid paying the antidumping duty.

In arriving at the $5,065,000 loss figure, the parties used an antidumping duty rate of 8.51% for those entries that took place prior to November 12, 1999, representing Zichen brake rotors imported using false China National invoices. Otherwise, the default antidumping duty rate of 43.32% was used for the false Zichen invoices from November 12, 1999 through the end of 2001. The $5,065,000 loss figure, which is intended to represent the cash deposit evaded, is not the true measure of actual loss, or harm, to the Government. During the time period from 1997 through November 11, 2001, the Shiues would have actually been entitled to petition

Commerce for a refund of the 8.51% antidumping duty imposed on all of the Zichen brake rotors imported during this period.

Accordingly, Exhibit H shows that the amount of the antidumping duty associated with these entries should have been zero. For the entries that took place during the period November 12, 1999 through the end of 2001, the spreadsheet attached as Exhibit G uses the default rate of 43.32% to calculate the antidumping duty that should have been paid. As calculated in Exhibit H, with the adjustment for the refund that was available to the Shiues as a result of Zichen attaining a zero rate, the amount of antidumping duties actually avoided was $2,566,572.68.

Thus, in determining a reasonable and just sentence under Section 3553(a)(1), the Court shall consider that the circumstances of this offense are less serious than the Guidelines loss calculation indicates. Further, under Section 3553(a)(2), the Court shall also consider the need for the sentence imposed to reflect the seriousness of the offense. Here, a reasonable sentence should take into consideration that the loss calculation in the Guidelines overstates the seriousness of the offense.

Case 1:03-cr-01107 Document 48 Filed 10/02/2007 Page 23 of 24

## IV. CONCLUSION.

For the foregoing reasons, Ms. Shiue respectfully asks the Court to impose a sentence of probation with appropriate conditions, and no fine or restitution.

Respectfully submitted,

I-HWA SHIUE

By her attorneys,

/s/ Christopher W. Carmichael
CHRISTOPHER W. CARMICHAEL
Holland & Knight, LLP
131 S. Dearborn St., 30th Fl.
Chicago, Illinois 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

JOSEPH F. SAVAGE, JR. (admitted *pro hac vice*)
LAURA STOCK CRAVEN (admitted *pro hac vice*)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 2, 2007.

/s/ Christopher W. Carmichael
Christopher W. Carmichael

# 4831592_v1

# EXHIBIT A

Albert Hung, M.D.
Massachusetts General Hospital
Movement Disorders Unit
Department Of Neurology
Wang ACC, Suite 835
Boston, MA 02114

October 5, 2006

**Re: <u>I-Hwa Shiue</u>**

To Whom It May Concern:

I-Hwa Shiue's mother, Mrs. Chin Fun Shiue, is an eighty-three year old Chinese woman with Parkinson's disease and a history of hemorrhage from a brain aneurysm. I have been involved in her care since May of 2005 in the management of her Parkinson's disease. She is currently taking Carbidopa/levodopa 2 tabs three times a day. Mrs. Shiue is largely unable to walk, and can only walk very slowly with assistance from others and a walker. She requires daily physical therapy for her condition. However, due to health insurance limitations, professional physical therapy can be offered only in a limited number of sessions. The remainder of her daily physical therapy is done at home with the help of her daughter, I-Hwa Shiue. I-Hwa also frequently brings her mother to her medical appointments and ensures that she takes her required medications.

Mrs. Shiue currently lives in her daughter I-Hwa's home in Lexington, Massachusetts with I-Hwa's family. There, I-Hwa provides not only handicap-accessible housing and regular meals, but also extensive personal care for her mother. For example, Mrs. Shiue suffers from incontinence and will not wear adult protective undergarments. Because she is unable to walk, I-Hwa sleeps with Mrs. Shiue at night so she may help her use the bathroom, commonly up to five times per night. I am also aware that Mrs. Shiue suffers from emotional problems including delusions and will not allow anyone besides I-Hwa to give her a daily bath. Mrs. Shiue has also expressed to her children that she would attempt suicide if she were placed in a nursing home.

I am impressed by the support and care provided by Mrs. Shiue's family, in particular I-Hwa Shiue. I-Hwa's role in Mrs. Shiue's physical and mental health is crucial and cannot be easily replaced by others.

Sincerely,

Albert Hung, M.D.

# EXHIBIT B

182 Grant Street
Lexington, MA 02420

March 19, 2007

Hon. John Darrah
United States District Court
Northern District of Illinois
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, Illinois 60604

Dear Judge Darrah:

I am writing this letter as a testament of my sister I-Hwa Shiue's good character.

I-Hwa is the youngest sister in my family. She is a wife of a pediatrician, mother of three children, and business woman. Despite her busy life, she decided to provide my parents room and board, and to offer intensive care-giving.

My parents and I moved in to live with I-Hwa in July, 2000. At that time I found that I could no longer take care of both my aged parents by myself because of their deteriorating health conditions. On May 12, 2002 my mother suffered a rupture of a brain aneurysm. After one month of Intensive Care Unit stay at MGH Brain Trauma Center and 2 months' rehabilitation, she was discharged from hospital and, because she refused to move into a nursing home, I-Hwa voluntarily offered her home for my mom.

On Aug 22, 2002, my dad was hospitalized for renal dysfunction, heart problem, and colo-vesicular fistula. He then had to have a pace maker, colostomy bag and urinary tract catheter placement. He needed to be hemo-dialyzed three times a week. On Feb. 16, 2007, my father passed away with all family members around him. He was very happy for the most part during the past seven years because of the good care he had at home. I could see the smile and peace from his face at the end of his life.

Since Nov. 2006, my mom was hospitalized again, initially for a bleeding in the head after a fall, and later from aspiration pneumonia while in the hospital. She has been in and out of Mass. General Hospital a couple times, and is in Youville Rehabilitation Hospital now. I-Hwa has been in the hospital with my mom every day. She is helping with her daily rehab exercise and needs. My mom will be discharged from hospital on March 22, 2007, and she strongly refused to go to the nursing home. She will return to I-Hwa's home. My mom really relies on I-Hwa because of what I-Hwa can offer that no one else is willing or able to.

Owing to the long term care for my father, I have developed a wrist pain problem called tendonitis. Furthermore, three years ago I was diagnosed as a Hepatitis B carrier, and the

antigen activity was quite high. I am still under treatment, and my doctor wants me to rest as much as I can. I don't think I can share much of Mom's home care work with I-Hwa. So the heavy duty job is totally loaded on I-Hwa now. It has been over four years, and I-Hwa has taken care of my parents without a complaint.

I know my brother Shih-Ming Shiue's character very well, since I am his older sister, and I have worked with him in the past few years. Things always have to be done in his way. He is very dominant at work, and I know that I-Hwa has to follow Ming's order by all means. It generates a very difficult situation for I-Hwa to be with Ming, especially under a sibling relationship.

As the oldest of the siblings, I have to say I-Hwa is a nice sister, good daughter, devoted wife and mother. Without her consistent caring, my parents would not have been able to live happily during the past few years.

Lee- Hwa Pearl Shiue

# EXHIBIT C

Youville Hospital
& Rehabilitation Center

March 15, 2007

To Whom It May Concern:

This is a letter of reference for I-Hwa Shiue.

I am a physical therapist at Youville Hospital and I have been providing physical therapy for Mrs. Chin-Fun Shiue for over two and a half months. Mrs. Shiue is an 84-year old woman who was transferred to this hospital from Massachusetts General Hospital pulmonary intensive care unit after suffering aspiration pneumonia. When she first arrived, she was physically very weak. Over time, with adequate nutrition through a gastrostomy tube and with daily exercises, she had made a remarkable recovery.

I came to know her daughter I-Hwa Shiue over this time. She was here everyday for several hours. I-Hwa helped Mrs. Shiue perform her exercises daily, and her daily presence also provided psychological support for Mrs. Shiue. We conducted a home visit on March 13, 2007 at I-Hwa's house in Lexington, MA. At this visit we had to be sure that her house is ready, in terms of the proper medical equipment and that I-Hwa is capable of caring for her, as she will be Mrs. Shiue's personal care attendant upon release from the hospital. I-Hwa demonstrated that she was able to transfer her mother in and out of bed, her wheel chair, her portable commode, and the shower.

Mrs. Shiue is scheduled to be discharged from the hospital on March 22, 2007. After she goes home, her continued improvement will depend on the home care I-Hwa provides.

Sincerely,

Sharon Purcell, P.T.

Sharon Purcell, P.T.
3/15/07

1575 Cambridge Street, Cambridge, Massachusetts 02138-4398 617-876-4344 FAX: 617-547-5501
Member, Covenent Health Systems www.youville.org

# EXHIBIT D

Youville Hospital
& Rehabilitation Center

March 15, 2007

To Whom It May Concern:

I am delighted to write this letter of reference for I-Hwa Shiue.

I have been providing occupational therapy for Mrs. Chin-Fung Shiue at Youville Hospital in Cambridge, MA for the past month. She was transferred to this hospital from Massachusetts General Hospital with a tracheostomy after a case of pneumonia. She was unable to lift her arm or sit up by herself initially, and she had to be fed by a G-tube. Her recovery was gradual but steady.

Her daughter I-Hwa is at the bedside every morning for several hours. I trained her how to bathe her mother adequately. She helps Mrs. Shiue to do the exercises daily, and she keeps Mrs. Shiue in good spirits throughout the activities, even though they were very physically demanding. I am very impressed by the loving care that I-Hwa has provided. I am sure that when Mrs. Shiue leaves the hospital to live with I-Hwa that she will be in good hands.

Sincerely,
Lindsey Sheppard OTR/L

Lindsey Sheppard, O.T.R/L
(617)876-4344 x3548

# EXHIBIT E

Case 1:03-cr-01107 Document 48-2 Filed 10/02/2007 Page 11 of 24

Youville Hospital
& Rehabilitation Center

March 15, 2007

To Whom It May Concern:

I am write this letter of reference for I-Hwa Shiue, who is the daughter of Chin-Fun Shiue, an 84-year old Chinese woman with a history of intracerebral aneurismal hemorrhage and Parkinson disease.

I have been caring for Mrs. Chin-Fun Shiue as her attending physician at Youville Hospital for the past two and a half months. She was transferred to this rehabilitation hospital from Massachusetts General Hospital with a tracheostomy and a feeding gastrostomy following a bout of aspiration pneumonia.

Her daughter I-Hwa was at her mother's side just about every day. She was very attentive to Mrs. Shiue's needs, and she asked very pertinent questions about the care that we were providing. She served as a translator for our staff and the patient. Her calming presence and knowledge about Mrs. Shiue's past medical history were invaluable to us in delivering good care to Mrs. Shiue.

Mrs. Shiue has made a remarkable recovery and will be discharged soon to live with I-Hwa. I-Hwa has been fully trained on how to operate the feeding pump for the tube feeding, to check oxygen level with an oximeter, and to do tracheostomy suction as needed. I have no doubt that I-Hwa will provide excellent care for her mother.

Sincerely,

Arun Chaudhary, M.D.
Attending Physician

1575 Cambridge Street, Cambridge, Massachusetts 02138-4398 617-876-4344 FAX: 617-547-5501

Member, Covenent Health Systems www.youville.org

# EXHIBIT F

March 14, 2007

To Whom It May Concern:

With this letter that I will like to tell you that I have moved in and lived with my daughter I-Hwa Shiue since July 1, 2000. Since May 2002, I have suffered from brain aneurysm and been through many operations. I rely on my daughter I-Hwa's daily home care very much.

Last year Nov. 27 I was admitted in Massachusetts General Hospital at Boston, MA owing to brain hemorrhage. Later on I was developed pneumonia and heart problem. It was I-Hwa that she came to hospital to be with me every day. Since Jan. 2007, I was moved to Youville Rehabilitation Hospital at Cambridge, MA. It is I-Hwa that she comes to hospital to help me doing the rehab exercise every day.

Pretty soon I will be discharged from the hospital. I refuse to go to any nursing home. I like to return to I-Hwa's home. I need I-Hwa to continue doing the daily home care and rehab exercise with me. I feel scared leaving me alone without I-Hwa.

Regards,

Chin-Fun Shiue

Transcribed and translated
by Lee-Hwa Pearl Shiue 3/14/07

# EXHIBIT G

182 Grant Street
Lexington, MA 02420

April 5, 2007

Hon. John Darrah
United States District Court
Northern District of Illinois
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, Illinois 60604

Dear Judge Darrah:

My wife I-Hwa Shiue and I will soon be celebrating our 25th wedding anniversary, and I feel the same way for her today as the first day I met her. I consider myself the luckiest person in the world, having her to love me and marry me. She is intelligent, considerate, empathetic, and loyal. These adjectives simply are not enough to describe her.

I-Hwa has been the best friend and counselor to me. Depending on the circumstance, she knows what I am thinking either by the first few words out of my mouth, or sometimes even just by my facial expression. She knows me better than I. Her advice to me has always been balanced and well-thought. I always said that she would be an excellent psychologist if she chose. We enjoy each other's company. We share the joy of dancing. That was how we had first met -- at a New Year's dance party. She loved ballroom dancing in particular, and she excelled at it, while I really needed help. We took dancing lessons together for a while when the children were young and taking Chinese classes on weekends. Then my work schedule became busier, including the weekends, and we haven't danced in a long time. For this I am very apologetic, and I hope to make it up to her eventually.

We have three children, who are ages 19, 21, and 23. I-Hwa and I shared the same philosophy in child rearing, but our style of caring and loving them were a little different. I tended to be rather rigid in enforcing the rules of the house, and I did not provide enough words of positive encouragement as I should have. At times I felt my kids were not doing my bidding to "do their best", and I showed my disappointment a bit too much. I-Hwa was there to counsel me against setting such a high standard. Children need to have room to experience failures and learn from mistakes themselves rather than being always told what is right and what is wrong. She, however, talked to them several times a week by phone while they were in college to keep tabs on what they were doing and how they were feeling. Thankfully, our children have all turned out to be generous, to engage in appropriate recreational activities, and to act responsibly with their peers.

In 2000, when we first moved into our new house, I had thought our house was rather extravagant by the number of rooms present for our family of five. Soon enough things

changed. Her parents, who were living nearby with my sister-in-law, began to develop complications from health problems. Her father was partially blind from diabetes and developed kidney failure. He also had colon cancer that required surgery, and then his intestinal tuberculosis started to act up with fistulas and that led to more bowel surgery. They moved into our house so we could provide better care with a live-in house keeper. Her mother, a very independent-minded person, had wanted to live in her own house rather than with us. Then she had a rupture of a brain aneurysm and was incapacitated herself. She had always objected to living in a nursing home. I-Hwa had the foresight of taking their age and health into consideration when we were house-hunting. So we have been taking care of them ever since then.

I-Hwa is extremely dedicated to caring for mother, as she also was with her father until his recent death. I know that providing this care has also caused her a great deal of stress and pressure over the past several years. Even still, I-Hwa recently agreed to help care for my mother, who is temporarily confined to a wheelchair following skin cancer surgery on her foot. I-Hwa also wants to give her sister Pearl, who has her own health problems, a break from providing constant care. Pearl was very close to their father, and found it difficult to even visit their mother in the rehabilitation hospital where their father passed away.

Being the fourth child out of five, I-Hwa had to learn early to be tactful with her siblings. She, along with her mother, have been the glue that continues to keeps her siblings together as a large family business unit even as they all have established their own families. When there was a strong difference of opinion between the siblings, she sometimes would back off from her position for the sake of family unity.

At times she had lamented that she was born a woman, because of the inequalities that she experienced as a female child. The tradition of being called Mrs. Chang bothered her, as it was clearly a male-oriented convention, and so she stayed with her maiden name after marriage. While she enjoyed cooking, she did not like to be a housewife. She enjoyed much more the challenges of starting a business. When problems arose for one reason or another, she was always ready to face them. She tended to not discuss her business problems with me, because she knew that I would not be able to help her anyway, and telling me would only make two of us lose sleep instead of just her.

I have tried to describe I-Hwa, my dear wife, in her roles as a wife, a mother, a loyal daughter, a sister, and a working woman. I hope that, by reading this letter, you will have a more complete impression of my wife. While I do not know the details of the case against her, I know she is accepting the responsibility for the mistakes she made. She is, however, very much needed at home at this time, as her mother's care is principally shouldered by her.

Sincerely,

Tien-Lan Chang

Tien-Lan Chang

# EXHIBIT H

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Doc. # | Entry # | Entry Date | TEV | AD Duty Rate | Antidumping Duty Due | | | | | | | |
| 2 | 233 | J12 0022677-4 | 1/31/1997 | $32,314 | 0% | $0.00 | | | | | | | |
| 3 | 225 | 274-0082431-7 | 2/7/1997 | $180,959 | 0% | $0.00 | | | | | | | |
| 4 | 191 | AL8 4002684-6 | 2/24/1997 | $52,065 | 0% | $0.00 | | | | | | | |
| 5 | 198 | J12 0022830-9 | 2/24/1997 | $69,982 | 0% | $0.00 | | | | | | | |
| 6 | 210 | J12 0022831-7 | 2/24/1997 | $16,177 | 0% | $0.00 | | | | | | | |
| 7 | 183 | 274-0082759-1 | 3/1/1997 | $66,557 | 0% | $0.00 | | | | | | | |
| 8 | 220 | J12 00226923 | 3/3/1997 | $13,142 | 0% | $0.00 | Incomplete file. Date is input date. | | | | | | |
| 9 | 174 | 274-0083108-0 | 3/19/1997 | $50,207 | 0% | $0.00 | | | | | | | |
| 10 | 151 | J12 0023056-0 | 3/24/1997 | $34,431 | 0% | $0.00 | | | | | | | |
| 11 | 161 | J12 0023055-0 | 3/24/1997 | $66,013 | 0% | $0.00 | | | | | | | |
| 12 | 137 | AL8 4002823-0 | 3/28/1997 | $14,443 | 0% | $0.00 | | | | | | | |
| 13 | 144 | AL8 4002824-8 | 3/28/1997 | $191,519 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 14 | 127 | J12 0023082-6 | 4/1/1997 | $16,277 | 0% | $0.00 | | | | | | | |
| 15 | 114 | J12 0023197-2 | 4/4/1997 | $60,270 | 0% | $0.00 | | | | | | | |
| 16 | 100 | H13 1020695-8 | 4/7/1997 | $46,282 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 17 | 88 | JLB 0023209-5 | 4/8/1997 | $43,352 | 0% | $0.00 | | | | | | | |
| 18 | 79 | ALB 4002933-7 | 4/19/1997 | $17,559 | 0% | $0.00 | | | | | | | |
| 19 | 58 | J12 0023288-9 | 4/21/1997 | $32,725 | 0% | $0.00 | | | | | | | |
| 20 | 68 | J12 0023262-4 | 4/21/1997 | $29,225 | 0% | $0.00 | | | | | | | |
| 21 | 35 | J12 0023348-1 | 4/28/1997 | $16,258 | 0% | $0.00 | | | | | | | |
| 22 | 47 | J12 0023295-4 | 4/28/1997 | $65,695 | 0% | $0.00 | | | | | | | |
| 23 | 28 | AL8 4003005-3 | 5/1/1997 | $35,391 | 0% | $0.00 | | | | | | | |
| 24 | 14 | AL8 4003013-7 | 5/2/1997 | $17,624 | 0% | $0.00 | | | | | | | |
| 25 | 21 | AL8 4003013-7 | 5/2/1997 | $19,883 | 0% | $0.00 | | | | | | | |
| 26 | 1 | J12 0023409-1 | 5/5/1997 | $71,324 | 0% | $0.00 | | | | | | | |
| 27 | 358 | AL8 4003077-2 | 5/10/1997 | $49,220 | 0% | $0.00 | | | | | | | |
| 28 | 365 | AL8 4003073-1 | 5/10/1997 | $101,776 | 0% | $0.00 | | | | | | | |
| 29 | 372 | AL8 4003072-3 | 5/10/1997 | $48,288 | 0% | $0.00 | | | | | | | |
| 30 | 348 | 274-0084586-6 | 5/20/1997 | $19,940 | 0% | $0.00 | | | | | | | |
| 31 | 340 | 274-0084513-0 | 5/21/1997 | $54,913 | 0% | $0.00 | | | | | | | |
| 32 | 332 | 274-0084503-1 | 5/22/1997 | $34,924 | 0% | $0.00 | | | | | | | |
| 33 | 325 | AL8 4003151-5 | 5/24/1997 | $107,029 | 0% | $0.00 | | | | | | | |
| 34 | 315 | 274-0084927-2 | 6/5/1997 | $52,524 | 0% | $0.00 | | | | | | | |
| 35 | 304 | AL8 40032380 | 6/9/1997 | | 0% | $0.00 | Incomplete file. | | | | | | |
| 36 | 283 | 274-0085171-6 | 6/12/1997 | $16,105 | 0% | $0.00 | | | | | | | |
| 37 | 290 | 274-0085116-1 | 6/12/1997 | $48,680 | 0% | $0.00 | | | | | | | |
| 38 | 260 | AL8 4003351-1 | 6/16/1997 | $35,961 | 0% | $0.00 | | | | | | | |
| 39 | 252 | 274-0085369-6 | 6/21/1997 | $50,347 | 0% | $0.00 | | | | | | | |
| 40 | 244 | 274-0085392-8 | 6/22/1997 | $18,135 | 0% | $0.00 | | | | | | | |
| 41 | 541 | AL8 4003408-9 | 6/23/1997 | $55,103 | 0% | $0.00 | | | | | | | |
| 42 | 501 | 274-0085459-5 | 6/25/1997 | $49,548 | 0% | $0.00 | | | | | | | |
| 43 | 509 | 274-0085460-3 | 6/25/1997 | $36,144 | 0% | $0.00 | | | | | | | |
| 44 | 517 | J12 0023821-7 | 6/25/1997 | $31,171 | 0% | $0.00 | | | | | | | |
| 45 | 495 | 274-0085649-1 | 7/3/1997 | $116,192 | 0% | $0.00 | | | | | | | |
| 46 | 477 | 274-0085715-0 | 7/10/1997 | $102,685 | 0% | $0.00 | | | | | | | |
| 47 | 483 | 274-0085707-7 | 7/10/1997 | $137,007 | 0% | $0.00 | | | | | | | |
| 48 | 489 | 274-0085716-8 | 7/10/1997 | $129,955 | 0% | $0.00 | | | | | | | |
| 49 | 667 | J12 0024022-1 | 7/11/1997 | $17,157 | 0% | $0.00 | | | | | | | |
| 50 | 471 | 274-0085910-7 | 7/17/1997 | $34,507 | 0% | $0.00 | | | | | | | |
| 51 | 463 | AL8 4003573-0 | 7/19/1997 | $33,750 | 0% | $0.00 | | | | | | | |
| 52 | 451 | 274-0086084-0 | 7/24/1997 | $50,283 | 0% | $0.00 | | | | | | | |
| 53 | 457 | 274-0086095-6 | 7/24/1997 | $218,018 | 0% | $0.00 | | | | | | | |
| 54 | 444 | AL8 4003627-4 | 7/26/1997 | $34,861 | 0% | $0.00 | | | | | | | |
| 55 | 438 | 274-0086327-3 | 7/31/1997 | $107,015 | 0% | $0.00 | | | | | | | |
| 56 | 432 | 274-0086556-7 | 8/7/1997 | $34,427 | 0% | $0.00 | | | | | | | |
| 57 | 641 | 274-0086558-3 | 8/7/1997 | $18,924 | 0% | $0.00 | | | | | | | |
| 58 | 399 | 274-0086752-2 | 8/14/1997 | $103,706 | 0% | $0.00 | | | | | | | |
| 59 | 405 | 274-0086753-0 | 8/14/1997 | $36,729 | 0% | $0.00 | | | | | | | |
| 60 | 416 | 274-0086738-1 | 8/14/1997 | $68,520 | 0% | $0.00 | | | | | | | |
| 61 | 422 | J12 0024289-6 | 8/18/1997 | $52,872 | 0% | $0.00 | | | | | | | |
| 62 | 393 | 274-0086992-4 | 8/22/1997 | $166,301 | 0% | $0.00 | | | | | | | |
| 63 | 387 | 274-0086994-0 | 8/23/1997 | $55,447 | 0% | $0.00 | | | | | | | |
| 64 | 681 | 274-0086915-5 | 8/23/1997 | $51,312 | 0% | $0.00 | | | | | | | |
| 65 | 884 | J12 0024362-1 | 8/26/1997 | $17,602 | 0% | $0.00 | | | | | | | |
| 66 | 877 | 274-0087081-5 | 8/29/1997 | $109,626 | 0% | $0.00 | | | | | | | |
| 67 | 1112 | J12 0024483-5 | 9/4/1997 | $34,269 | 0% | $0.00 | | | | | | | |
| 68 | 871 | 274-0087264-7 | 9/5/1997 | $52,596 | 0% | $0.00 | | | | | | | |
| 69 | 966 | 274-0087373-6 | 9/8/1997 | $69,706 | 0% | $0.00 | | | | | | | |

DC: 2420398-1

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 70 | 972 | 274-0087374-4 | 9/8/1997 | $38,010 | 0% | $0.00 | | | | | | | |
| 71 | 951 | 274-0087512-9 | 9/12/1997 | $37,371 | 0% | $0.00 | | | | | | | |
| 72 | 959 | 274-0087511-1 | 9/12/1997 | $136,282 | 0% | $0.00 | | | | | | | |
| 73 | 945 | 274-0087732-3 | 9/19/1997 | $89,069 | 0% | $0.00 | | | | | | | |
| 74 | 939 | AL8 4004176-1 | 9/24/1997 | $37,895 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 75 | 910 | 274-0087753-9 | 9/25/1997 | $47,585 | 0% | $0.00 | | | | | | | |
| 76 | 927 | 274-0087754-7 | 9/25/1997 | $105,094 | 0% | $0.00 | | | | | | | |
| 77 | 920 | 274-0088012-9 | 9/29/1997 | $90,361 | 0% | $0.00 | | | | | | | |
| 78 | 933 | 274-00880111-1 | 9/29/1997 | $33,762 | 0% | $0.00 | | | | | | | |
| 79 | 1090 | AL8 4004256-1 | 10/4/1997 | $33,941 | 0% | $0.00 | | | | | | | |
| 80 | 1101 | AL8 4004255-3 | 10/4/1997 | $18,587 | 0% | $0.00 | | | | | | | |
| 81 | 1064 | 274-0088056-6 | 10/6/1997 | $74,314 | 0% | $0.00 | | | | | | | |
| 82 | 1084 | 274-0088101-0 | 10/6/1997 | $188,011 | 0% | $0.00 | | | | | | | |
| 83 | 1075 | 274-0088214-1 | 10/8/1997 | $103,938 | 0% | $0.00 | | | | | | | |
| 84 | 1055 | 274-0088437-8 | 10/14/1997 | $51,886 | 0% | $0.00 | | | | | | | |
| 85 | 1036 | 274-0088392-5 | 10/19/1997 | $17,234 | 0% | $0.00 | | | | | | | |
| 86 | 1046 | 274-0088438-6 | 10/19/1997 | $58,145 | 0% | $0.00 | | | | | | | |
| 87 | 1019 | 274-0088964-1 | 10/23/1997 | $51,997 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. Have used import date since entry date not available | | | | | | |
| 88 | 1028 | 274-0088690-2 | 10/26/1997 | $33,602 | 0% | $0.00 | | | | | | | |
| 89 | 996 | AL8 4004705-7 | 11/15/1997 | $38,043 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 90 | 1011 | AL8 4004717-2 | 11/15/1997 | $16,044 | 0% | $0.00 | | | | | | | |
| 91 | 1001 | 274-0089212-4 | 11/16/1997 | $18,342 | 0% | $0.00 | | | | | | | |
| 92 | 990 | AL8 4004817-0 | 11/26/1997 | $52,234 | 0% | $0.00 | | | | | | | |
| 93 | 980 | 274-0089592-9 | 11/28/1997 | $89,651 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 94 | 379 | 274-0089735-4 | 12/3/1997 | $55,981 | 0% | $0.00 | | | | | | | |
| 95 | 861 | 274-0089716-4 | 12/5/1997 | $34,116 | 0% | $0.00 | | | | | | | |
| 96 | 5059 | AL8 4005053-1 | 12/22/1997 | $37,591 | 0% | $0.00 | | | | | | | |
| 97 | 800 | 274-0090230-3 | 12/23/1997 | $520,481 | 0% | $0.00 | | | | | | | |
| 98 | 850 | 274-0090209-7 | 12/23/1997 | $16,365 | 0% | $0.00 | | | | | | | |
| 99 | 780 | 274-0090321-0 | 12/29/1997 | $16,801 | 0% | $0.00 | | | | | | | |
| 100 | 748 | 274-0090552-0 | 1/7/1998 | $48,142 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 101 | 696 | 274-0090606-4 | 1/9/1998 | $140,113 | 0% | $0.00 | | | | | | | |
| 102 | 593 | 274-0090626-2 | 1/11/1998 | $29,777 | 0% | $0.00 | | | | | | | |
| 103 | 621 | 274-0090634-6 | 1/11/1998 | $52,389 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 104 | 5070 | 274-0090879-7 | 1/21/1998 | $30,699 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 105 | 569 | 274-00908516 | 1/21/1998 | $159,597 | 0% | $0.00 | Incomplete file. Date is create date, not entry date. | | | | | | |
| 106 | | 274-0091030-6 | 1/26/1998 | $38,002 | 0% | $0.00 | | | | | | | |
| 107 | 5098 | 274-0090983-7 | 1/26/1998 | $103,226 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 108 | 730 | 274-00905652 | 1/26/1998 | $35,489 | 0% | $0.00 | Incomplete file. Date is input date. | | | | | | |
| 109 | 5108 | 274-00910306 | 1/28/1998 | $112,226 | 0% | $0.00 | Incomplete file | | | | | | |
| 110 | 5127 | 274-0091072-8 | 1/29/1998 | $14,404 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 111 | 5157 | 274-0091031-4 | 1/29/1998 | $219,556 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 112 | 548 | 274-00908698 | 2/3/1998 | $113,077 | 0% | $0.00 | Incomplete file. Date is input date, not entry date. | | | | | | |
| 113 | 5224 | 274-0091184-1 | 2/5/1998 | $119,369 | 0% | $0.00 | | | | | | | |
| 114 | 5277 | 274-0091182-5 | 2/5/1998 | $32,679 | 0% | $0.00 | | | | | | | |
| 115 | 5249 | 605-08011222 | 2/6/1998 | $50,056 | 0% | $0.00 | Incomplete file, and no NDC | | | | | | |
| 116 | 5297 | 274-0091248-4 | 2/6/1998 | $15,663 | 0% | $0.00 | Entry summary appears to use the rounded Invoice Value, not TEV. To calculate the AD duties, TEV used. | | | | | | |
| 117 | 5329 | 274-0091483-7 | 2/17/1998 | $124,966 | 0% | $0.00 | | | | | | | |
| 118 | 5353 | 274-0091492-8 | 2/17/1998 | $85,957 | 0% | $0.00 | | | | | | | |
| 119 | 5375 | 274-0091579-2 | 2/20/1998 | $66,806 | 0% | $0.00 | | | | | | | |
| 120 | 5413 | 274-0092177-4 | 3/18/1998 | $38,416 | 0% | $0.00 | | | | | | | |
| 121 | | AL8 4005785-8 | 3/24/1998 | $14,891 | 0% | $0.00 | | | | | | | |
| 122 | 5446 | AL8 4005827-8 | 3/28/1998 | $14,189 | 0% | $0.00 | | | | | | | |
| 123 | 17841 | AL8-4006012-6 | 4/17/1998 | $6,847 | 0% | $0.00 | | | | | | | |
| 124 | 5508 | 274-0093104-7 | 4/23/1998 | $43,325 | 0% | $0.00 | | | | | | | |
| 125 | 5537 | 274-0093125-2 | 4/30/1998 | $17,433 | 0% | $0.00 | | | | | | | |
| 126 | 5581 | 274-0093281-3 | 4/30/1998 | $78,954 | 0% | $0.00 | | | | | | | |
| 127 | 5652 | 274-0093290-4 | 5/1/1998 | $102,893 | 0% | $0.00 | | | | | | | |
| 128 | 5737 | AL8-4006138-9 | 5/2/1998 | $18,692 | 0% | $0.00 | | | | | | | |
| 129 | 5771 | 274-0093282-1 | 5/7/1998 | $110,263 | 0% | $0.00 | | | | | | | |
| 130 | 5906 | 274-0093341-5 | 5/7/1998 | $52,838 | 0% | $0.00 | | | | | | | |
| 131 | 5991 | 274-0093284-7 | 5/7/1998 | $85,155 | 0% | $0.00 | | | | | | | |
| 132 | 5870 | AL8-4006173-6 | 5/8/1998 | $17,872 | 0% | $0.00 | | | | | | | |
| 133 | 6076 | 274-0093569-1 | 5/15/1998 | $109,556 | 0% | $0.00 | | | | | | | |
| 134 | 8482 | | 5/18/1998 | $37,589 | 0% | $0.00 | Incomplete file. TEV is invoice amount. No customs forms. | | | | | | |
| 135 | 6172 | 274-0093620-2 | 5/20/1998 | $37,238 | 0% | $0.00 | | | | | | | |
| 136 | 6239 | 274-0093819-4 | 5/20/1998 | $138,849 | 0% | $0.00 | | | | | | | |
| 137 | 6339 | 274-0093723-4 | 5/20/1998 | $101,393 | 0% | $0.00 | | | | | | | |
| 138 | 8480 | | 5/23/1998 | | 0% | $0.00 | Incomplete file. Date is bill of lading date. | | | | | | |

DC: 2420398-1

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 139 | 6449 | 274-0093816-6 | 5/27/1998 | $36,380 | 0% | $0.00 | | | | | | | |
| 140 | 6537 | 274-0093722-6 | 5/29/1998 | $357,713 | 0% | $0.00 | | | | | | | |
| 141 | 6772 | 274-0093946-1 | 6/3/1998 | $94,479 | 0% | $0.00 | | | | | | | |
| 142 | 6873 | 274-0094025-3 | 6/3/1998 | $30,124 | 0% | $0.00 | | | | | | | |
| 143 | 6965 | 274-0093947-9 | 6/4/1998 | $195,604 | 0% | $0.00 | | | | | | | |
| 144 | 7108 | AL8-4006490-4 | 6/4/1998 | $34,747 | 0% | $0.00 | | | | | | | |
| 145 | 1121 | AL8 4006493-8 | 6/5/1998 | $50,846 | 0% | $0.00 | | | | | | | |
| 146 | 7150 | 274-0094190-5 | 6/9/1998 | $20,468 | 0% | $0.00 | | | | | | | |
| 147 | 7220 | 274-0094168-1 | 6/9/1998 | $147,690 | 0% | $0.00 | | | | | | | |
| 148 | 7349 | AL8-4006494-6 | 6/10/1998 | $18,066 | 0% | $0.00 | | | | | | | |
| 149 | 7371 | 274-0094240-8 | 6/10/1998 | $196,129 | 0% | $0.00 | | | | | | | |
| 150 | 7522 | AL8-4006645-3 | 6/19/1998 | $17,233 | 0% | $0.00 | | | | | | | |
| 151 | 7616 | 274-0094450-3 | 6/19/1998 | $50,446 | 0% | $0.00 | | | | | | | |
| 152 | 7686 | 274-0094545-0 | 6/19/1998 | $237,612 | 0% | $0.00 | | | | | | | |
| 153 | 7867 | 274-0094671-4 | 6/22/1998 | $71,798 | 0% | $0.00 | | | | | | | |
| 154 | 7978 | 274-0094911-4 | 6/29/1998 | $130,124 | 0% | $0.00 | | | | | | | |
| 155 | 8079 | 274-0094956-9 | 6/30/1998 | $136,898 | 0% | $0.00 | | | | | | | |
| 156 | 8197 | 274-0094944-5 | 7/1/1998 | $78,503 | 0% | $0.00 | | | | | | | |
| 157 | 8288 | 274-0094921-3 | 7/1/1998 | $75,085 | 0% | $0.00 | | | | | | | |
| 158 | 8371 | AL8-4006768-3 | 7/1/1998 | $134,977 | 0% | $0.00 | | | | | | | |
| 159 | 8465 | 274-0094920-5 | 7/1/1998 | $37,589 | 0% | $0.00 | | | | | | | |
| 160 | 8534 | AL8-4006782-4 | 7/2/1998 | $39,224 | 0% | $0.00 | | | | | | | |
| 161 | 8590 | 274-0094997-3 | 7/5/1998 | $18,249 | 0% | $0.00 | | | | | | | |
| 162 | 8647 | 274-0094999-9 | 7/7/1998 | $51,543 | 0% | $0.00 | | | | | | | |
| 163 | 8725 | 274-0095010-4 | 7/7/1998 | $67,027 | 0% | $0.00 | | | | | | | |
| 164 | 8795 | 274-0095000-5 | 7/9/1998 | $38,906 | 0% | $0.00 | | | | | | | |
| 165 | 8863 | 274-0095407-2 | 7/15/1998 | $66,394 | 0% | $0.00 | | | | | | | |
| 166 | 9092 | 274-0095456-9 | 7/16/1998 | $61,463 | 0% | $0.00 | | | | | | | |
| 167 | 9173 | AL8-4006927-5 | 7/16/1998 | $91,576 | 0% | $0.00 | | | | | | | |
| 168 | 9233 | 274-0095461-9 | 7/16/1998 | $18,938 | 0% | $0.00 | | | | | | | |
| 169 | 9129 | | 7/20/1998 | $18,696 | 0% | $0.00 | Incomplete file. Date and TEV from invoice. No customs documents. | | | | | | |
| 170 | 8938 | 274-0095737-2 | 7/24/1998 | $156,654 | 0% | $0.00 | | | | | | | |
| 171 | 9034 | 274-0095746-3 | 7/24/1998 | $67,931 | 0% | $0.00 | | | | | | | |
| 172 | 9272 | 274-0095867-7 | 7/28/1998 | $221,747 | 0% | $0.00 | | | | | | | |
| 173 | 9385 | 274-0095869-3 | 7/29/1998 | $155,862 | 0% | $0.00 | | | | | | | |
| 174 | 9522 | 274-0096034-3 | 8/3/1998 | $16,528 | 0% | $0.00 | | | | | | | |
| 175 | 9756 | 274-0095873-5 | 8/4/1998 | $86,329 | 0% | $0.00 | | | | | | | |
| 176 | 9571 | 605-0802306-0 | 8/5/1998 | $18,135 | 0% | $0.00 | | | | | | | |
| 177 | 9474 | 274-0096032-7 | 8/10/1998 | $33,804 | 0% | $0.00 | | | | | | | |
| 178 | 9681 | 274-0096033-5 | 8/10/1998 | $97,973 | 0% | $0.00 | | | | | | | |
| 179 | 9608 | 274-0096274-5 | 8/11/1998 | $52,834 | 0% | $0.00 | | | | | | | |
| 180 | 11745 | AL8-4007184-2 | 8/11/1998 | $69,892 | 0% | $0.00 | | | | | | | |
| 181 | 11677 | 274-0096269-5 | 8/18/1998 | $71,912 | 0% | $0.00 | | | | | | | |
| 182 | 11530 | 274-0096510-2 | 8/19/1998 | $67,964 | 0% | $0.00 | | | | | | | |
| 183 | 11602 | 274-0096511-0 | 8/19/1998 | $70,773 | 0% | $0.00 | | | | | | | |
| 184 | 11438 | 274-0096509-4 | 8/25/1998 | $75,941 | 0% | $0.00 | | | | | | | |
| 185 | 12039 | 274-0096512-8 | 8/25/1998 | $19,365 | 0% | $0.00 | | | | | | | |
| 186 | 12027 | AL8-4007365-7 | 8/27/1998 | $63,647 | 0% | $0.00 | | | | | | | |
| 187 | 11862 | 274-0096873-4 | 9/3/1998 | $59,553 | 0% | $0.00 | | | | | | | |
| 188 | 11930 | 274-0096874-2 | 9/3/1998 | $16,212 | 0% | $0.00 | | | | | | | |
| 189 | 11979 | 274-0096698-5 | 9/3/1998 | $17,056 | 0% | $0.00 | | | | | | | |
| 190 | 11803 | 274-0096905-4 | 9/8/1998 | $46,204 | 0% | $0.00 | | | | | | | |
| 191 | 11756 | 274-0097031-8 | 9/14/1998 | $16,415 | 0% | $0.00 | | | | | | | |
| 192 | 11426 | AL8-4007572-8 | 9/15/1998 | $57,518 | 0% | $0.00 | | | | | | | |
| 193 | 11277 | EH3-0816651-9 | 9/20/1998 | $25,389 | 0% | $0.00 | | | | | | | |
| 194 | 11376 | 274-0097661-2 | 9/29/1998 | $35,926 | 0% | $0.00 | | | | | | | |
| 195 | 11325 | 274-0097662-0 | 10/1/1998 | $17,774 | 0% | $0.00 | | | | | | | |
| 196 | 11270 | EH3-0816650-1 | 10/4/1998 | $35,711 | 0% | $0.00 | | | | | | | |
| 197 | 13245 | 274-0097948-3 | 10/13/1998 | $121,805 | 0% | $0.00 | | | | | | | |
| 198 | 13162 | 274-0098681-9 | 11/2/1998 | $36,088 | 0% | $0.00 | | | | | | | |
| 199 | 11263 | EH3-0817004-0 | 11/4/1998 | $18,255 | 0% | $0.00 | | | | | | | |
| 200 | 11290 | AL8-4008259-1 | 11/11/1998 | $18,955 | 0% | $0.00 | | | | | | | |
| 201 | 11284 | EH3-0817132-9 | 11/18/1998 | $18,498 | 0% | $0.00 | | | | | | | |
| 202 | 11227 | 274-0099615-6 | 11/30/1998 | $54,269 | 0% | $0.00 | | | | | | | |
| 203 | 12163 | 274-0099912-7 | 12/10/1998 | $78,090 | 0% | $0.00 | | | | | | | |
| 204 | 12889 | 004-7867384-1 | 12/17/1998 | $68,455 | 0% | $0.00 | | | | | | | |
| 205 | 13372 | 274-0099901-0 | 12/17/1998 | $37,527 | 0% | $0.00 | | | | | | | |
| 206 | 13004 | 004-7869538-0 | 12/22/1998 | $131,586 | 0% | $0.00 | | | | | | | |
| 207 | 12819 | 274-0100517-1 | 12/30/1998 | $35,385 | 0% | $0.00 | | | | | | | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 208 | 11118 | AL8-4009057-8 | 1/7/1999 | $74,585 | 0% | $0.00 | | | | | | | |
| 209 | 11023 | 274-0100699-7 | 1/8/1999 | $93,605 | 0% | $0.00 | | | | | | | |
| 210 | 12089 | AL8-4009222-8 | 1/17/1999 | $78,765 | 0% | $0.00 | | | | | | | |
| 211 | 12462 | 274-0100856-3 | 1/19/1999 | $54,187 | 0% | $0.00 | | | | | | | |
| 212 | 12529 | 274-0101019-7 | 1/19/1999 | $54,600 | 0% | $0.00 | | | | | | | |
| 213 | 12589 | 274-0101022-1 | 1/19/1999 | $15,932 | 0% | $0.00 | | | | | | | |
| 214 | 12642 | 274-0101020-5 | 1/19/1999 | $32,286 | 0% | $0.00 | | | | | | | |
| 215 | 12716 | 004-7885029-0 | 1/19/1999 | $91,632 | 0% | $0.00 | | | | | | | |
| 216 | 10404 | 274-0101021-3 | 1/25/1999 | $70,060 | 0% | $0.00 | | | | | | | |
| 217 | 10843 | 004-7892298-2 | 1/31/1999 | $32,506 | 0% | $0.00 | | | | | | | |
| 218 | 12307 | 274-0101281-3 | 2/3/1999 | $96,890 | 0% | $0.00 | | | | | | | |
| 219 | 12373 | 274-0101362-1 | 2/3/1999 | $65,726 | 0% | $0.00 | | | | | | | |
| 220 | 13529 | 274-0101304-3 | 2/3/1999 | $162,413 | 0% | $0.00 | | | | | | | |
| 221 | 10763 | 274-0101413-2 | 2/8/1999 | $85,534 | 0% | $0.00 | | | | | | | |
| 222 | 13645 | 274-0101634-3 | 2/9/1999 | $88,840 | 0% | $0.00 | | | | | | | |
| 223 | 10707 | 274-0101441-3 | 2/12/1999 | $34,643 | 0% | $0.00 | | | | | | | |
| 224 | 10333 | 274-0101278-9 | 2/12/1999 | $66,810 | 0% | $0.00 | | | | | | | |
| 225 | 13615 | 274-0101649-1 | 2/17/1999 | $17,913 | 0% | $0.00 | | | | | | | |
| 226 | 10674 | AL8-4009682-3 | 2/23/1999 | $72,999 | 0% | $0.00 | | | | | | | |
| 227 | 10647 | AL8-4009678-1 | 2/24/1999 | $17,623 | 0% | $0.00 | | | | | | | |
| 228 | 13709 | 274-0102004-8 | 2/24/1999 | $53,680 | 0% | $0.00 | | | | | | | |
| 229 | 13766 | 274-0101981-8 | 3/1/1999 | $90,081 | 0% | $0.00 | | | | | | | |
| 230 | 10946 | 274-0103195-3 | 3/7/1999 | $104,395 | 0% | $0.00 | | | | | | | |
| 231 | 10601 | 274-0102178-0 | 3/9/1999 | $15,626 | 0% | $0.00 | | | | | | | |
| 232 | 9829 | 274-0102319-0 | 3/16/1999 | $190,225 | 0% | $0.00 | | | | | | | |
| 233 | 10871 | 274-0102378-6 | 3/16/1999 | $126,504 | 0% | $0.00 | | | | | | | |
| 234 | 13912 | 274-0102379-4 | 3/16/1999 | $90,473 | 0% | $0.00 | | | | | | | |
| 235 | 13984 | 274-0102647-4 | 3/17/1999 | $71,841 | 0% | $0.00 | | | | | | | |
| 236 | 14056 | 274-0102648-2 | 3/17/1999 | $86,477 | 0% | $0.00 | | | | | | | |
| 237 | 10526 | 274-0103197-9 | 4/13/1999 | $38,396 | 0% | $0.00 | | | | | | | |
| 238 | 10110 | 274-0103842-0 | 5/4/1999 | $53,844 | 0% | $0.00 | | | | | | | |
| 239 | 10472 | AL8-4010440-3 | 5/6/1999 | $16,737 | 0% | $0.00 | | | | | | | |
| 240 | 10167 | 004-7962208-6 | 5/6/1999 | $72,833 | 0% | $0.00 | Incomplete file. Date is import date. | | | | | | |
| 241 | 10064 | 274-0104204-2 | 5/11/1999 | $58,320 | 0% | $0.00 | | | | | | | |
| 242 | 10263 | 274-0104120-0 | 5/11/1999 | $66,470 | 0% | $0.00 | | | | | | | |
| 243 | 9931 | 274-0104350-3 | 5/17/1999 | $91,761 | 0% | $0.00 | | | | | | | |
| 244 | 10000 | 274-0104346-1 | 5/17/1999 | $99,304 | 0% | $0.00 | | | | | | | |
| 245 | 14135 | D02-0148841-1 | 5/18/1999 | $58,442 | 0% | $0.00 | | | | | | | |
| 246 | 14540 | D02-0148843-7 | 5/18/1999 | $18,263 | 0% | $0.00 | | | | | | | |
| 247 | 16560 | D02-0148931-0 | 5/20/1999 | $18,728 | 0% | $0.00 | | | | | | | |
| 248 | | 274-0104382-6 | 5/25/1999 | $38,161 | 0% | $0.00 | | | | | | | |
| 249 | 14300 | 004-7969787-2 | 5/25/1999 | $52,608 | 0% | $0.00 | | | | | | | |
| 250 | 16637 | 004-7969792-2 | 5/25/1999 | $67,858 | 0% | $0.00 | | | | | | | |
| 251 | 14188 | 274-0104708-2 | 5/26/1999 | $102,483 | 0% | $0.00 | | | | | | | |
| 252 | 14396 | 274-0104705-8 | 5/26/1999 | $55,769 | 0% | $0.00 | | | | | | | |
| 253 | | 274-0104707-4 | 5/26/1999 | $17,672 | 0% | $0.00 | | | | | | | |
| 254 | 14481 | 274-0104706-6 | 5/26/1999 | $47,461 | 0% | $0.00 | | | | | | | |
| 255 | 16716 | 274-0105072-2 | 6/7/1999 | $77,389 | 0% | $0.00 | | | | | | | |
| 256 | 16368 | 274-0105220-7 | 6/8/1999 | $53,988 | 0% | $0.00 | | | | | | | |
| 257 | 14824 | 274-0105225-6 | 6/9/1999 | $98,909 | 0% | $0.00 | | | | | | | |
| 258 | 16819 | 274-0105813-9 | 6/25/1999 | $90,918 | 0% | $0.00 | | | | | | | |
| 259 | 16132 | 274-0105997-0 | 7/1/1999 | $104,816 | 0% | $0.00 | | | | | | | |
| 260 | 16267 | 274-0105999-6 | 7/1/1999 | $32,195 | 0% | $0.00 | | | | | | | |
| 261 | 16321 | 274-0106013-5 | 7/1/1999 | $68,198 | 0% | $0.00 | | | | | | | |
| 262 | 16430 | 274-0106000-2 | 7/1/1999 | $84,455 | 0% | $0.00 | | | | | | | |
| 263 | 16488 | 274-0105996-2 | 7/1/1999 | $79,261 | 0% | $0.00 | | | | | | | |
| 264 | 14578 | 004-7997102-0 | 7/2/1999 | $67,535 | 0% | $0.00 | | | | | | | |
| 265 | | 274-0106688-4 | 7/7/1999 | $66,268 | 0% | $0.00 | | | | | | | |
| 266 | 15933 | 274-0106559-7 | 7/9/1999 | $121,182 | 0% | $0.00 | | | | | | | |
| 267 | | 274-0106560-5 | 7/9/1999 | $81,434 | 0% | $0.00 | | | | | | | |
| 268 | 16207 | 274-0106483-0 | 7/13/1999 | $70,480 | 0% | $0.00 | | | | | | | |
| 269 | 15846 | 004-8009485-3 | 7/21/1999 | $14,413 | 0% | $0.00 | | | | | | | |
| 270 | 15551 | 274-0107138-9 | 7/29/1999 | $91,692 | 0% | $0.00 | | | | | | | |
| 271 | | 274-0107140-5 | 7/29/1999 | $86,637 | 0% | $0.00 | | | | | | | |
| 272 | 15688 | 274-0107137-1 | 7/29/1999 | $119,962 | 0% | $0.00 | Files 15688 and 15767 contained identical documents | | | | | | |
| 273 | 15767 | 274-0107137-1 | 7/29/1999 | $119,962 | 0% | $0.00 | Files 15688 and 15767 contained identical documents | | | | | | |
| 274 | 16725 | 274-0107139-7 | 7/29/1999 | $53,825 | 0% | $0.00 | | | | | | | |
| 275 | 16909 | 004-8014457-5 | 7/31/1999 | $50,134 | 0% | $0.00 | | | | | | | |
| 276 | 17726 | 004-8004597-0 | 8/3/1999 | $51,776 | 0% | $0.00 | Incomplete file. Date is arrival date. | | | | | | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 277 | 15543 | 274-0107301-3 | 8/5/1999 | $24,617 | 0% | $0.00 | | | | | | | |
| 278 | 17106 | 274-0107605-7 | 8/11/1999 | $59,776 | 0% | $0.00 | | | | | | | |
| 279 | 17004 | 274-0107619-8 | 8/12/1999 | $70,312 | 0% | $0.00 | | | | | | | |
| 280 | 15357 | 274-0107678-4 | 8/15/1999 | $65,682 | 0% | $0.00 | | | | | | | |
| 281 | 17875 | 274-0107675-0 | 8/16/1999 | $73,838 | 0% | $0.00 | | | | | | | |
| 282 | 15366 | 274-0107617-2 | 8/17/1999 | $32,827 | 0% | $0.00 | | | | | | | |
| 283 | 15375 | 274-0107833-5 | 8/19/1999 | $41,027 | 0% | $0.00 | | | | | | | |
| 284 | 15394 | 274-0107892-1 | 8/19/1999 | $65,625 | 0% | $0.00 | | | | | | | |
| 285 | 17316 | 274-0107875-6 | 8/19/1999 | $80,842 | 0% | $0.00 | | | | | | | |
| 286 | 17199 | 004-8017717-9 | 8/22/1999 | $59,701 | 0% | $0.00 | | | | | | | |
| 287 | 15384 | 274-0108163-6 | 8/29/1999 | $65,624 | 0% | $0.00 | | | | | | | |
| 288 | 15402 | 274-0107929-1 | 8/29/1999 | $41,026 | 0% | $0.00 | | | | | | | |
| 289 | 17414 | 274-0108162-8 | 8/29/1999 | $56,022 | 0% | $0.00 | | | | | | | |
| 290 | 15414 | D02-0152056-9 | 8/30/1999 | $23,989 | 0% | $0.00 | | | | | | | |
| 291 | 15424 | 274-0107945-7 | 9/2/1999 | $30,608 | 0% | $0.00 | | | | | | | |
| 292 | 15449 | 274-0108307-9 | 9/3/1999 | $57,441 | 0% | $0.00 | | | | | | | |
| 293 | 15458 | 274-0108258-4 | 9/5/1999 | $8,205 | 0% | $0.00 | | | | | | | |
| 294 | 15432 | 274-0108365-7 | 9/6/1999 | $57,393 | 0% | $0.00 | | | | | | | |
| 295 | 15442 | 274-0108363-2 | 9/6/1999 | $57,393 | 0% | $0.00 | | | | | | | |
| 296 | 15466 | D02-0152290-4 | 9/6/1999 | $63,944 | 0% | $0.00 | | | | | | | |
| 297 | 17498 | 274-0108260-0 | 9/6/1999 | $32,128 | 0% | $0.00 | | | | | | | |
| 298 | 15478 | 274-0108364-0 | 9/7/1999 | $16,418 | 0% | $0.00 | | | | | | | |
| 299 | 15488 | D02-0152629-3 | 9/13/1999 | $32,346 | 0% | $0.00 | | | | | | | |
| 300 | 15498 | 274-0108629-6 | 9/15/1999 | $65,649 | 0% | $0.00 | | | | | | | |
| 301 | 15507 | 274-0108630-4 | 9/15/1999 | $61,722 | 0% | $0.00 | | | | | | | |
| 302 | 15514 | 274-0108628-8 | 9/15/1999 | $24,615 | 0% | $0.00 | | | | | | | |
| 303 | 14698 | 274-0108998-5 | 9/22/1999 | $38,978 | 0% | $0.00 | | | | | | | |
| 304 | 15522 | 274-0108995-1 | 9/22/1999 | $90,243 | 0% | $0.00 | | | | | | | |
| 305 | 15532 | 274-0108996-9 | 9/22/1999 | $50,153 | 0% | $0.00 | | | | | | | |
| 306 | 14707 | 274-0109059-5 | 9/24/1999 | $73,855 | 0% | $0.00 | | | | | | | |
| 307 | 14718 | 274-0109058-7 | 9/24/1999 | $32,819 | 0% | $0.00 | | | | | | | |
| 308 | 14725 | 274-0108999-3 | 9/27/1999 | $10,261 | 0% | $0.00 | | | | | | | |
| 309 | 14734 | D02-0153212-7 | 9/27/1999 | $17,534 | 0% | $0.00 | | | | | | | |
| 310 | 14742 | 274-0109068-6 | 9/30/1999 | $65,822 | 0% | $0.00 | | | | | | | |
| 311 | 14750 | 274-0108997-7 | 10/5/1999 | $16,368 | 0% | $0.00 | | | | | | | |
| 312 | 17623 | D02-0153546-8 | 10/5/1999 | $30,204 | 0% | $0.00 | | | | | | | |
| 313 | 14759 | 274-0109469-6 | 10/8/1999 | $90,426 | 0% | $0.00 | | | | | | | |
| 314 | 14779 | 274-0109468-8 | 10/8/1999 | $77,293 | 0% | $0.00 | | | | | | | |
| 315 | 17559 | D02-0153583-1 | 10/11/1999 | $12,360 | 0% | $0.00 | | | | | | | |
| 316 | 17654 | D02-0153584-9 | 10/11/1999 | $60,090 | 0% | $0.00 | | | | | | | |
| 317 | 14768 | 274-0109612-1 | 10/12/1999 | $82,067 | 0% | $0.00 | | | | | | | |
| 318 | 14787 | 274-0109565-1 | 10/12/1999 | $98,584 | 0% | $0.00 | | | | | | | |
| 319 | 14798 | 274-0109880-4 | 10/29/1999 | $32,880 | 0% | $0.00 | | | | | | | |
| 320 | 1176 | E94-0940633-3 | 11/16/1999 | $32,279 | 43.32% | $13,983.26 | | | | | | | |
| 321 | 14807 | E94-0940277-9 | 11/17/1999 | $57,445 | 43.32% | $24,885.17 | | | | | | | |
| 322 | 14835 | E94-0940278-7 | 11/23/1999 | $57,430 | 43.32% | $24,878.68 | | | | | | | |
| 323 | 14948 | 323-0999307-2 | 11/24/1999 | $13,603 | 43.32% | $5,892.82 | | | | | | | |
| 324 | 1208 | E94-0940777-8 | 11/25/1999 | $18,471 | 43.32% | $8,001.64 | | | | | | | |
| 325 | 14865 | E94-0940635-8 | 11/30/1999 | $51,125 | 43.32% | $22,147.35 | | | | | | | |
| 326 | 14874 | 323-0999175-3 | 11/30/1999 | $14,389 | 43.32% | $6,233.31 | | | | | | | |
| 327 | 1238 | E94-0941131-7 | 12/1/1999 | $48,818 | 43.32% | $21,147.96 | | | | | | | |
| 328 | 1220 | E94-0941130-9 | 12/2/1999 | $50,679 | 43.32% | $21,954.14 | | | | | | | |
| 329 | 1160 | E94-0940632-5 | 12/8/1999 | $18,846 | 43.32% | $8,164.09 | | | | | | | |
| 330 | 15005 | E94-0941132-5 | 12/13/1999 | $16,323 | 43.32% | $7,071.12 | | | | | | | |
| 331 | 1191 | E94-0940779-4 | 12/14/1999 | $33,680 | 43.32% | $14,590.18 | | | | | | | |
| 332 | 15011 | 323-0999644-8 | 12/15/1999 | $27,707 | 43.32% | $12,002.67 | | | | | | | |
| 333 | 15113 | E94-0941083-0 | 12/15/1999 | $73,944 | 43.32% | $32,032.54 | | | | | | | |
| 334 | 15130 | E94-0940778-6 | 12/15/1999 | $8,203 | 43.32% | $3,553.54 | | | | | | | |
| 335 | 15137 | 323-9910574-4 | 12/22/1999 | $32,100 | 43.32% | $13,905.72 | | | | | | | |
| 336 | 15218 | 323-9910573-6 | 12/28/1999 | $27,586 | 43.32% | $11,950.26 | | | | | | | |
| 337 | 15308 | E94-0941671-2 | 12/28/1999 | $49,358 | 43.32% | $21,381.89 | | | | | | | |
| 338 | 15315 | E94-0941672-0 | 12/28/1999 | $115,627 | 43.32% | $50,089.62 | | | | | | | |
| 339 | 1254 | E94-0941673-8 | 1/10/2000 | $176,871 | 43.32% | $76,620.52 | | | | | | | |
| 340 | 15325 | E94-0940634-1 | 1/10/2000 | $41,173 | 43.32% | $17,836.14 | | | | | | | |
| 341 | 18044 | E94-0941893-2 | 1/12/2000 | $98,432 | 43.32% | $42,640.74 | | | | | | | |
| 342 | 18155 | WDZ-0708822-9 | 1/17/2000 | $15,910 | 43.32% | $6,892.21 | | | | | | | |
| 343 | 1282 | E94-0941894-0 | 1/18/2000 | $15,336 | 43.32% | $6,643.56 | | | | | | | |
| 344 | 18244 | E94-0942165-4 | 1/20/2000 | $8,199 | 43.32% | $3,551.81 | | | | | | | |
| 345 | 18265 | E94-0942187-8 | 1/20/2000 | $98,575 | 43.32% | $42,702.69 | | | | | | | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 346 | 18185 | WDZ-0708875-7 | 1/24/2000 | $7,892 | 43.32% | $3,418.81 | | | | | | | |
| 347 | 1300 | E94-0942188-6 | 1/27/2000 | $96,105 | 43.32% | $41,632.69 | | | | | | | |
| 348 | 18212 | WDZ-0708960-7 | 1/31/2000 | $31,983 | 43.32% | $13,855.04 | | | | | | | |
| 349 | 18308 | E94-0942390-8 | 1/31/2000 | $163,484 | 43.32% | $70,821.27 | | | | | | | |
| 350 | 18092 | E94-0942477-3 | 2/3/2000 | $82,293 | 43.32% | $35,649.33 | | | | | | | |
| 351 | 17997 | E94-0942760-2 | 2/15/2000 | $57,441 | 43.32% | $24,883.44 | | | | | | | |
| 352 | 17943 | WDZ-0709143-9 | 2/16/2000 | $14,151 | 43.32% | $6,130.21 | | | | | | | |
| 353 | 17971 | WDZ-0709142-1 | 2/16/2000 | $7,035 | 43.32% | $3,047.56 | | | | | | | |
| 354 | 18403 | E94-0943110-9 | 2/28/2000 | $57,605 | 43.32% | $24,954.49 | | | | | | | |
| 355 | 17898 | E94-0943165-3 | 3/1/2000 | $66,008 | 43.32% | $28,594.67 | | | | | | | |
| 356 | 18487 | E94-0943111-7 | 3/1/2000 | $7,904 | 43.32% | $3,424.01 | | | | | | | |
| 357 | 18514 | E94-0943109-1 | 3/7/2000 | $65,648 | 43.32% | $28,438.71 | | | | | | | |
| 358 | 15340 | E94-0943678-5 | 3/27/2000 | $81,550 | 43.32% | $35,327.46 | | | | | | | |
| 359 | 18449 | E94-0943679-3 | 3/27/2000 | $49,213 | 43.32% | $21,319.07 | | | | | | | |
| 360 | 2765 | 323-2004084-6 | 5/3/2000 | $15,994 | 43.32% | $6,928.60 | | | | | | | |
| 361 | 1322 | 323-2004082-0 | 5/8/2000 | $34,104 | 43.32% | $14,773.85 | | | | | | | |
| 362 | 2516 | EN5-0014498-9 | 5/8/2000 | $213,622 | 43.32% | $92,541.05 | | | | | | | |
| 363 | 1403 | D02-0162813-1 | 6/29/2000 | $36,883 | 43.32% | $15,977.72 | | | | | | | |
| 364 | 1462 | D02-0163656-3 | 7/10/2000 | $17,273 | 43.32% | $7,482.66 | | | | | | | |
| 365 | 1512 | D02-0163990-6 | 7/18/2000 | $17,100 | 43.32% | $7,407.72 | | | | | | | |
| 366 | 1562 | D02-0163997-1 | 7/27/2000 | $63,488 | 43.32% | $27,503.00 | | | | | | | |
| 367 | 1644 | D02-0164406-2 | 7/31/2000 | $17,640 | 43.32% | $7,641.65 | | | | | | | |
| 368 | 1683 | D02-0165540-7 | 8/28/2000 | $64,985 | 43.32% | $28,151.50 | | | | | | | |
| 369 | 1776 | D02-0165567-0 | 9/4/2000 | $48,849 | 43.32% | $21,161.39 | | | | | | | |
| 370 | 4805 | DO2-0165851-8 | 9/5/2000 | $88,813 | 43.32% | $38,473.79 | | | | | | | |
| 371 | 3506 | EN5-0015585-2 | 9/15/2000 | $150,025 | 43.32% | $64,990.83 | | | | | | | |
| 372 | 3461 | EN5-0015769-2 | 9/21/2000 | $149,994 | 43.32% | $64,977.40 | | | | | | | |
| 373 | 3445 | DO2-0166905-1 | 10/1/2000 | $14,803 | 43.32% | $6,412.66 | | | | | | | |
| 374 | 3392 | EN5-0015821-1 | 10/3/2000 | $120,028 | 43.32% | $51,996.13 | | | | | | | |
| 375 | 1851 | D02-0167417-6 | 10/16/2000 | $50,544 | 43.32% | $21,895.66 | | | | | | | |
| 376 | 3272 | EN5-0016005-0 | 10/30/2000 | $120,030 | 43.32% | $51,997.00 | | | | | | | |
| 377 | 3313 | EN5-0016006-8 | 10/30/2000 | $164,953 | 43.32% | $71,457.64 | | | | | | | |
| 378 | 1980 | D02-0168105-6 | 11/6/2000 | $49,646 | 43.32% | $21,506.65 | | | | | | | |
| 379 | 3222 | EN5-0016246-0 | 11/7/2000 | $120,028 | 43.32% | $51,996.13 | | | | | | | |
| 380 | 4776 | D02-0168490-2 | 11/8/2000 | $14,801 | 43.32% | $6,411.79 | | | | | | | |
| 381 | 4734 | EN5-0016330-2 | 11/14/2000 | $104,972 | 43.32% | $45,473.87 | | | | | | | |
| 382 | 3253 | EN5-0016228-8 | 11/15/2000 | $60,005 | 43.32% | $25,994.17 | Incomplete file. Input date is date. | | | | | | |
| 383 | 3184 | EN5-0016376-5 | 11/20/2000 | $120,028 | 43.32% | $51,996.13 | | | | | | | |
| 384 | 3170 | 274-0122083-8 | 12/5/2000 | $135,036 | 43.32% | $58,497.60 | | | | | | | |
| 385 | 2080 | D02-0169340-8 | 12/6/2000 | $49,773 | 43.32% | $21,561.66 | | | | | | | |
| 386 | 3653 | D02-0170364-5 | 1/2/2001 | $14,799 | 43.32% | $6,410.93 | | | | | | | |
| 387 | 3640 | 274-0123379-9 | 1/22/2001 | $60,014 | 43.32% | $25,998.06 | | | | | | | |
| 388 | 2801 | DO2-0172890-7 | 3/6/2001 | $18,466 | 43.32% | $7,999.47 | | | | | | | |
| 389 | 2122 | D02-0173316-2 | 4/2/2001 | $153,252 | 43.32% | $66,388.77 | | | | | | | |
| 390 | 2875 | D02-0173724-7 | 4/16/2001 | $60,234 | 43.32% | $26,093.37 | | | | | | | |
| 391 | 2338 | D02-0174139-7 | 4/25/2001 | $38,562 | 43.32% | $16,705.06 | | | | | | | |
| 392 | 2466 | D02-0174276-7 | 4/30/2001 | $18,949 | 43.32% | $8,208.71 | | | | | | | |
| 393 | 3006 | D02-0175134-7 | 5/21/2001 | $19,037 | 43.32% | $8,246.83 | | | | | | | |
| 394 | 3627 | 588-007823-8 | 6/14/2001 | $112,777 | 43.32% | $48,855.00 | | | | | | | |
| 395 | 3531 | 588-0007972-3 | 6/20/2001 | $109,252 | 43.32% | $47,327.97 | | | | | | | |
| 396 | 3576 | 588-0007968-1 | 6/20/2001 | $15,783 | 43.32% | $6,837.20 | | | | | | | |
| 397 | 4680 | 588-0007971-5 | 6/20/2001 | $16,070 | 43.32% | $6,961.52 | | | | | | | |
| 398 | 3946 | 605-5507342-2 | 7/23/2001 | $92,064 | 43.32% | $39,882.12 | | | | | | | |
| 399 | 3854 | 588-0008592-8 | 7/25/2001 | $37,500 | 43.32% | $16,245.00 | | | | | | | |
| 400 | 4622 | 588-0008680-1 | 7/30/2001 | $18,366 | 43.32% | $7,956.15 | | | | | | | |
| 401 | 3665 | 588-0008619-5 | 8/1/2001 | $56,160 | 43.32% | $24,328.51 | | | | | | | |
| 402 | 3672 | 588-0008729-8 | 8/1/2001 | $112,988 | 43.32% | $48,946.40 | | | | | | | |
| 403 | 4174 | 588-0008868-2 | 8/8/2001 | $18,822 | 43.32% | $8,153.69 | | | | | | | |
| 404 | 4112 | 588-0008976-3 | 8/14/2001 | $18,580 | 43.32% | $8,048.86 | | | | | | | |
| 405 | 4145 | 588-0008973-0 | 8/14/2001 | $75,860 | 43.32% | $32,862.55 | | | | | | | |
| 406 | 4512 | 588-0009219-7 | 8/29/2001 | $56,350 | 43.32% | $24,410.82 | | | | | | | |
| 407 | 4093 | 588-0009530-7 | 9/12/2001 | $37,420 | 43.32% | $16,210.34 | | | | | | | |
| 408 | 4103 | 588-0009529-9 | 9/12/2001 | $134,844 | 43.32% | $58,414.42 | | | | | | | |
| 409 | 4083 | 588-0009667-7 | 9/21/2001 | $37,749 | 43.32% | $16,352.87 | | | | | | | |
| 410 | 4418 | 588-0009802-0 | 9/26/2001 | $37,297 | 43.32% | $16,157.06 | | | | | | | |
| 411 | 4282 | 588-0010296-2 | 10/18/2001 | $75,596 | 43.32% | $32,748.19 | | | | | | | |
| 412 | 4264 | 588-0010470-3 | 10/24/2001 | $101,706 | 43.32% | $44,059.04 | | | | | | | |
| 413 | 4273 | 588-0010441-4 | 10/24/2001 | $97,478 | 43.32% | $42,227.47 | | | | | | | |
| 414 | 4972 | 588-0010426-5 | 10/24/2001 | $74,578 | 43.32% | $32,307.19 | | | | | | | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 415 | 4250 | 588-0010753-2 | 11/8/2001 | $38,347 | 43.32% | $16,611.92 | | | | | | | |
| 416 | 4202 | 588-0010827-4 | 11/14/2001 | $37,319 | 43.32% | $16,166.59 | | | | | | | |
| 417 | 3068 | 588-0011145-0 | 11/28/2001 | $75,985 | 43.32% | $32,916.70 | | | | | | | |
| 418 | 3138 | 588-0011252-4 | 12/5/2001 | $18,641 | 43.32% | $8,075.28 | | | | | | | |
| 419 | | | | | | | | | | | | | |
| 420 | | | | | | | | | | | | | |
| 421 | | | | | | | | | | | | | |
| 422 | | | | | | | | | | | | | |
| 423 | | | | | | | | | | | | | |
| 424 | Total Antidumping Duty | | | | | $2,566,572.68 | | | | | | | |