# Exhibit 12

U.S. Customs and Border Protection

## OPINION CONCERNING NUMBER OF MOIETY CASES INVOLVED IN WHITE AND CASE'S MOIETY CLAIM

This opinion is written pursuant to this Court's October 13, 2005 order in White & Case v. United States, Court of Federal Claims No. 03-2800C. This document contains U.S. Customs and Border Protection's ("the agency" or "CBP") analysis of the number of cases covered by the two moiety claims filed by White & Case in the above-referenced case. White & Case submitted one moiety claim to the agency in Long Beach, California in 2000 and a second moiety claim to the agency in New York, New York in 2001. We consider these two moiety claims to be one claim covering one case because the New York moiety claim contains each of the entries listed in the Long Beach moiety claim, and involve the same information that was provided about one on-going scheme involving the same commodity, the same type of fraud, a small number of importers, exported from the same country, during a defined time period.

Based upon the facts of this case, we find that White & Case provided original information to the agency that triggered a five-port investigation by the former United States Customs Service pertaining to a scheme by a group of eight principal importers to avoid antidumping duty on brake rotors from the People's Republic of China (PRC). This group of importers falsely claimed that their merchandise was from a producer/exporter combination – each represented by White & Case – either excluded from the antidumping order or subject to a zero percent antidumping duty rate. These importers then attempted to enter the brake rotors through various United States ports. White & Case also provided a coding system for two of the five combinations of producers/exporters that were excluded from the antidumping order. This scheme allowed the agency during its investigation to more easily detect the fraud involving the antidumping duty on the Chinese brake rotors. ICE and CBP's five-port brake rotor investigation remains pending. Due to the continuing nature of the agency's five-port investigation, we cannot at this time determine a final antidumping duty collection amount or the full percentage of any collection amount to be applied to White & Case as a moiety award based upon the value of its information and its past and potential future cooperation during the investigation.

## I. FACTS

On October 10, 1996, the Department of Commerce (DOC) made a preliminary determination of antidumping involving brake rotors from the PRC.. Following normal procedures between the DOC and the former U.S. Customs Service, on April 17, 1997, an estimated antidumping duty was imposed on brake rotor importations for all companies not exempted from the preliminary order, and the liquidation of the corresponding entries was suspended until the DOC issued final liquidation instructions.

Until final liquidation instructions are issued, thus establishing the actual duty rate on the commodity, CBP cannot liquidate the entries at issue in this case, and therefore cannot collect any additional monies owed or refund monies that were overpaid to the agency. Certain PRC producer/exporter combinations were excluded from the antidumping determination, and could enter their merchandise without paying the estimated antidumping duties.

On June 1, 1999, White & Case sent a letter to the former United States Customs Service stating that one of its clients possessed information that another producer in China was falsely declaring brake rotor shipments as products of an excluded PRC producer/exporter combination to avoid the antidumping duty. White & Case also provided a coding system that two of its clients -- who were also PRC exporters/producers not subject to the antidumping determination -- would use to indicate that their entries and bills of lading were legitimate. This coding system consisted of the letters VB followed by a seven-digit number that added up to 38. The former United States Customs Service posted this coding scheme for all of its field personnel via an electronic bulletin board to which both officers and special agents had access. This telefax message eventually triggered a five-port investigation by the former U.S. Customs Service Office of Investigations (OI), now Immigration and Customs Enforcement (ICE).[1]

On October 14, 1999, the Los Angeles Strategic Trade Center (LA STC), which was conducting an intervention to detect fraudulent brake rotor entries, had a telephone conference with Vincent Bowen of White & Case concerning different ways to identify false invoices involved in the scheme to avoid antidumping duty on brake rotors from the PRC. Based on this conversation, the proposed VB coding system was incorporated into the LA STC's intervention beginning on October 18, 1999. Beginning on November 11, 1999, White & Case also assisted the former United States Customs Service by reviewing certain invoices to determine whether they were genuine.

On January 3, 2000, White & Case informed the LA STC that it would be filing a moiety claim. On January 4, 2000, White & Case submitted a moiety claim with the former United States Customs Service Office of Investigations (OI), now Immigration and Customs Enforcement (ICE), in Long Beach, California (LA moiety claim), in which it based its moiety claim upon specific, listed entries. On May 30, 2001, White & Case submitted a second moiety claim to OI, now ICE, in New York (NY moiety claim). The NY moiety claim contained each of the entries listed in the LA moiety claim, and requested a moiety on any other collections the agency obtained as a result of White and Case's claimed provision of original information. Entries covered by White & Case's moiety claims were also made at the Ports of Newark, New Jersey, St. Louis, Missouri, Chicago, Illinois, and Boston, Massachusetts. Due to the pending nature of

---

[1] Pursuant to the Homeland Security Act, P.L. 107-26, and the Department of Homeland Security (DHS) Reorganization Plan, the former U.S. Customs Service was transferred into DHS on March 1, 2003 and renamed U.S. Customs and Border Protection. Also on March 1, 2003, the former U.S. Customs Service special agents were transferred to Immigration and Customs Enforcement (ICE).

the investigation and outstanding collection activities, the agency did not adjudicate White & Case's moiety claim because a final collection amount could not be ascertained. Awaiting a final collection amount is the agency's normal administrative practice when processing a moiety claim to ensure that informants are not short-changed by receiving a determined percentage of a collection amount that has not been fully realized.

In December 2002, before the agency was able to determine the final collection amount, White & Case filed the complaint in this case, which requested a moiety award based on the same facts as contained in the moiety claims submitted to the agency.

## II. THIS IS ONE MOIETY CLAIM INVOLVING ONE CASE

Based upon the facts of this case, the nature of the agency's investigation, and the content of White & Case's moiety claim, White & Case has submitted one moiety claim that involves one case. White & Case submitted its two requests for a moiety based on information it provided that led to recoveries in 93 entries[2] and to a five-port investigation. White & Case provided the former U.S. Customs Service with information about a single scheme to avoid antidumping duties on brake rotors from the PRC. This information involved the same violation, wherein the eight principal violators would place false entry number combinations of Chinese exporters and manufacturers -- who were either not subject to the antidumping duty or who had a zero percent antidumping duty rate -- on their own entries. White & Case possessed knowledge of the scheme through its clients who were all the Chinese exporters and manufactures of brake rotors who were either excluded from the anti-dumping order or subject to a zero percent antidumping rate. This scheme involved the same commodity, brake rotors, exported from the same country, PRC, within the same time period. White & Case provided the information concerning this illegal scheme in June 1999, which led to the United States Customs Service's enforcement activities in October 1999. Information concerning this fraudulent scheme identified by White & Case was published by a single telefax within the United States Customs Service, from which the five-port investigation was triggered. Thus, White & Case's original information led to the triggering of the five-port investigation.

My determination that White & Case's original information concerning the fraudulent importation of brake rotors involves one case is in harmony with CBP and ICE's policy of promoting the free flow of information from informants by encouraging informants to be forthright and to provide complete details regarding potential violations of the customs laws. If the agency is provided with frank and complete information, the agency is much better able to detect and interdict customs violations. To parse this one case into several different "moiety cases" would not only run afoul of the nature of the agency's investigation and receipt of information, but would encourage informants to

[2] Three of the entries listed in the moiety claims, and the complaint before this court, were duplicative, another claim involved a letter to which no recoveries or other action can be attributed, and one entry was unknown, and therefore no recoveries can be attributed to it.

dole out information in piecemeal fashion in order circumvent the statutory limitation on the maximum amount that can be awarded in any one moiety claim. This would directly negate the agency's long-standing interpretation of the Congressional intent underlying 19 U.S.C. 1619 that the moiety laws be administered in a way that promotes effective law enforcement and full and forthright cooperation from informants.

Finally, White & Case asserts that the scope of its moiety claim encompasses all the agency's "recoveries (past, present and future) from shipments associated with the false invoices and entries identified in Exhibit 11" and "recoveries (past, present and future) on any other shipments not known to us in which Customs (sic) was assisted by information provided to us." OR&R, of course, cannot process a moiety claim for amorphous collections in the future because such collection actions are both speculative and unquantifiable. However, at this time, the agency is able to ascertain the scope and current status of the investigation that resulted from the information provided by White and Case, which we address below.

## III. CURRENT STATUS OF THE AGENCY'S FIVE-PORT INVESTIGATION

In this case, White & Case submitted one moiety claim to Los Angeles (2000) and another to New York (2001) concerning information provided about the brake rotor false invoicing scheme. As discussed above, the agency did not fully adjudicate White & Case's moiety claim once it was determined that there were outstanding collection actions stemming from the investigation, per the agency's routine administrative process. Thus, prior to White & Case filing its complaint, the CF-4623s, Claim For and Award of Compensation forms were not completed by the relevant agency personnel. Normally, when all collections actions related to the claim are concluded, Robin Rangel, International Trade Specialist, in the Los Angeles Strategic Trade Center, who is White & Case's primary agency contact, would be responsible for certifying whether the information provided was original. Ms. Rangal would also be responsible for coordinating the completion of the CF-4623s, drafting the accompanying factual memorandum, and sending the administrative moiety package to OR&R. As previously noted, before the agency could complete its routine collection actions, White & Case filed the December 2000 complaint in this Court, requesting a moiety award based on the same facts and entries contained in its pending claims

In order to comply with this Court's August 1, 2005 order, the agency initiated the partial processing of White & Case's moiety claim to determine whether the information provided was original, and to determine the number of cases covered by the claim and their current status. In so doing we obtained information from ICE and the five ports covered by the brake rotor investigation. In order to determine the amounts collected thus far, we relied upon the most-recent computations provided by Bruce Ingall, Chief of Collections, CBP, which is contained in the attached spreadsheet. We sent each of the five port directors covered by the investigation (Chicago, St. Louis, Boston, Los Angeles/Long Beach, and Newark/New York) a copy of the CF-4623 submitted by White & Case for potential certification. Each port director reviewed their respective copy of the CF-4623 and certified the amount of collections at their port.

With regard to the specific entries listed by White & Case in its moiety claim, the agency has not completed its collection actions. The statute of limitations to collect antidumping duties from entries subject to an antidumping order is six years and thirty days from the date the Department of Commerce liquidates those entries, thus determining the final amount of antidumping duties owed. See 19 U.S.C. §1500(b) & (d); 19 U.S.C. §1621. The last liquidation date an entry for which a bill was issued and collection action is pending is March 22, 2003, which renders April 21, 2009 as the final date by which all collections can be made within the statute of limitations. See Bonnie Boehm's affidavit and attached spreadsheet. Therefore, once all collections have been made or the statute of limitations lapses on these entries (whichever comes first), the agency will have completed its collections activities for these entries. At that time, the agency will have a concrete amount of money collected from which to award a moiety to White & Case, and the knowledge that no additional collections are possible for those entries.

In addition to the specific entries noted above, the five-port investigation triggered by the information provided by White & Case led to the Government filing a 19 U.S.C. §1592 demand in the Court of International Trade (CIT) stemming from entries made in the port of New York/Newark. Due to the continuing nature of the agency's five-port investigation and its pending case filed in the CIT, it is not yet clear what amount of money, if any, will be recovered as a result of the remaining elements of the investigation. Once the 19 U.S.C. §1592 action is completed, including any appeals and resulting collection actions, the agency will be able to ascertain the precise amount recovered as a result of this part of the investigation. Furthermore, ICE continues to proceed with other open aspects of the investigation, which may result in criminal indictments and further litigation. Once the investigation is closed, and any litigation actions or collections actions by CBP are exhausted, the agency will have a finite and known amount of recoveries from which to ascertain an appropriate percentage to award to White & Case.

It is axiomatic that the agency cannot award a moiety based on collections that have not yet occurred since any potential total collection amount is speculative. Based upon the clear language of 19 U.S.C. §1619, a moiety award can be premised only upon actual net recoveries resulting from original information. Therefore, the agency must await the completion of its investigation and all collections made from the specified entries and the five ports covered by the investigation before determining a percentage of a final collection amount to be awarded to White & Case. The percentage amount will be based upon our determination of the value of the information provided by White & Case to the investigation and the agency.

## IV. CONCLUSION

I find that White & Case provided original information to the agency involving a scheme to circumvent antidumping laws covering Chinese brake rotors that resulted in a five-port investigation. To date, this investigation remains continuing and some recoveries have already been made. Once the investigation is complete and a final

collection amount is ascertained, I will finalize my moiety recommendation by determining the value to the agency of White & Case's information and cooperation. The ascertained value of White & Case's information and cooperation will be determined as a percentage to be applied to the final collection amount stemming from the five-port investigation.

Todd J. Schneider 11/14/05

Todd J. Schneider, Esq.
Penalties Branch
Office of Regulations & Rulings
U.S. Customs and Border Protection
Department of Homeland Security

Enc.