IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WHITE & CASE LLP,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 03-2800C<br>(Judge Wolski) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A RESPONSE TO THE DECLARATIONS OF BRUCE INGALLS, JOSEPH HIRTZ, AND YVONNE HAGANS**

WHITE & CASE LLP

Lucius B. Lau
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to White & Case LLP*

April 15, 2008

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Government Does Not Contest The Court's Authority To Grant Summary Judgment *Sua Sponte* ..... 2

II. As A Matter Of Law, White & Case Is Entitled To A Moiety Award of $287,500 ..... 3

A. Based Upon This Court's Prior Ruling And The Undisputed Facts Of This Case, This Matter Is Ripe For Review ..... 3

B. Based Upon This Court's Prior Ruling And The Undisputed Facts Of This Case, White & Case Is Entitled To A Full 25 Percent Of The Government's Recoveries ..... 4

C. Based Upon This Court's Prior Ruling And The Undisputed Facts Of This Case, The Original Information Provided By White & Case Consists Of 98 Separate "Cases" Within The Meaning Of The Moiety Statute ..... 5

1. This Issue Is Governed By *Cornman v. United States* ..... 5

2. The Government's Statutory Interpretation Conflicts With Both The Statute And The Governing Caselaw ..... 7

CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**CASES** **Page**

*Cornman v. United States*,
409 F.2d 230 (Ct. Cl. 1969) .......... 5, 6, 8

*Doe v. United States*,
100 F.3d 1576 (Fed. Cir. 1996) .......... 4, 5

*Freed v. United States*,
34 Fed. Cl. 715 (1996) .......... 4

*Lacy v. United States*,
607 F.2d 951 (Ct. Cl. 1979) .......... 7, 8

*Tyson v. United States*,
32 F. Supp. 135 (Ct. Cl. 1940) .......... 7, 8

*White & Case LLP v. United States*,
67 Fed. Cl. 164 (2005) .......... 1, 2, 3, 4, 5, 6

**STATUTES**

19 U.S.C. § 1619 .......... 2, 6, 7

**OTHER AUTHORITIES**

*Decisions of the Comptroller of the Treasury*, 24 Comp. Treas. 17 (1917) .......... 5, 6

## INTRODUCTION

In our motion for leave to file a response to the declarations of Bruce Ingalls, Joseph Hirtz, and Yvonne Hagans, we demonstrated that the Court should consider our response to those declarations, afford the government an opportunity to respond to our arguments, and then grant summary judgment *sua sponte* by awarding White & Case LLP ("White & Case") a moiety award of $287,500.

Rather than limiting its response to our motion for leave, the government also has opted to respond to the provisionally filed response to the declarations. Thus, there is no reason why the Court should not accept that response for filing.

On the merits, the government simply recycles arguments it has utilized in the past, many of which have already been rejected by the Court. Contrary to the government's position, this matter is ripe for a moiety award because the 14 counts of the Complaint that relate to the $1.15 million collected in *United States v. I-Hwa Shiue*, No. 03-cr-01107 (N.D. Ill.), and *United States v. Shih-Ming Shiue*, Crim. No 05-10021-NMG (D. Mass.), are fully liquidated. Contrary to the government's position, White & Case is entitled to a full 25 percent of the government's recoveries because the government does not have a policy as to when it will award anything less than 25 percent of its recoveries as informant's compensation. Finally, contrary to the government's position, the original information provided by White & Case consists of 98 separate "cases" within the meaning of the statute.

In the past, the Court has recognized the hardship suffered by White & Case as a result of the passage of time in this case. *See White & Case LLP v. United States*, 67 Fed. Cl. 164, 174 (2005) ("The hardship that White & Case would suffer if liquidated claims are considered unripe is clear: the plaintiff will have to continue to suffer a delay of an indefinite duration while Customs determines whether to award a moiety."). The passage of time has been accompanied

by hundreds of thousands of dollars in legal fees incurred by the plaintiff. These fees have been the result of the government's (a) steadfast refusal to render a determination; as well as (b) failure to respond to issues deemed important by this Court. Specifically, in its prior decision, the Court stated that it "expects" Customs to explain how it intended "to discover all of the specific violations absent the provision of information relating to them." 67 Fed. Cl. at 176. The government has never answered this question, yet insists on defending a position of dubious validity (*i.e.*, that the moiety claims by White & Case consist of a single "case").

The record establishes that all elements of a moiety are met with respect to 14 counts of the Complaint. Thus, the Court should grant summary judgment *sua sponte* in favor of White & Case concerning these 14 counts and award it $287,500.

## ARGUMENT

### I. The Government Does Not Contest The Court's Authority To Grant Summary Judgment *Sua Sponte*

In our initial brief, we noted that it is the established practice under the Federal Rules of Civil Procedure and this Court's own rules to award summary judgment *sua sponte*, provided that the opposing party is put on notice and given an opportunity to respond. W&C Br. at 5-7. The government does not dispute this proposition.

Instead, the government argues that White & Case's request for summary judgment *sua sponte* is "procedurally peculiar" because "White & Case has not requested that the Court rule upon its pending motion, or filed an amended or restated motion for summary judgment." Gov't Br. at 4. But White & Case's pending motion for partial summary judgment only concerns the question whether the information it provided constitutes 98 separate "cases" within the meaning of 19 U.S.C. § 1619. That motion did not involve a request for an actual moiety award (*i.e.*, the relief that is being requested at this time). The suggestion that White & Case should have filed

an "amended" or "restated" motion for summary judgment appears to be one of semantics — there appears to be no meaningful difference between an "amended" or "restated" motion for summary judgment and a request for summary judgment *sua sponte*.

## II. As A Matter Of Law, White & Case Is Entitled To A Moiety Award of $287,500

### A. Based Upon This Court's Prior Ruling And The Undisputed Facts Of This Case, This Matter Is Ripe For Review

According to the government, this matter is not ripe for review because its investigation and collection effort is not yet complete and, until that occurs, "it is simply not possible to ascertain the value of White & Case's information and cooperation." Gov't Br. at 6. This argument, however, has already been made by the government and was rejected by the Court.

In *White & Case*, the Court understood that the existence of recoveries was key to ripeness under the moiety statute. *See* 67 Fed. Cl. at 172 ("for a moiety claim to be ripe Customs must have made recoveries on the information provided"). In the absence of recoveries, a ruling on a moiety claim would be either a declaratory judgment or an advisory opinion. Conversely, "if the plaintiff were able to demonstrate that some or all of its 'cases' — assuming the plaintiff has more than one 'case' — were fully liquidated, the Court finds the liquidated claims would be fit for this Court's review." *Id.* at 173; *see also id.* at 174 ("Given the length of time that the plaintiff has already waited — over five and one-half years — and the indefinite nature of Customs moiety determination process, if the plaintiff has fully liquidated claims that await a Customs moiety determination, the Court finds that any such case would be ripe for this Court's review."). The Court's reasoning was (and is) sound. There is no reason to reconsider this issue.

The government concedes that at least one recovery of $575,000 has occurred, but states that the recovery of the second $575,000 has not taken place. *See* Gov't Br. at 7 (noting that the declarations it provided "only indicate that Customs has collected $575,000, and that a $575,000

forfeiture is anticipated.") (citing Hirtz Decl. ¶ 5) (emphasis in original). To be sure, the Hirtz declaration does contain the statement that, "[o]n January 30, 2008, a second judicial criminal sentencing action is scheduled with $575,000 forfeiture anticipated . . . ." Hirtz Decl. ¶ 5. That statement, however, needs to be read in conjunction with the Hagans declaration. In that declaration, Ms. Hagans states that she is "aware of $575,000.00 that is related to a criminal case in Chicago. The money *is currently in a suspense account pending the entry of a final order of forfeiture from the court with jurisdiction over the matter.*" Hagans Decl. ¶ 6 (emphasis added).

The criminal case "in Chicago" is *United States v. I-Hwa Shiue*, No. 03-cr-01107 (N.D. Ill.) (the matter concerning Ms. Shiue's brother, Shih-Ming Shiue, was pending in Boston, Massachusetts). On February 28, 2008 (after Ms. Hagans signed her declaration), the Illinois district court entered a final order of forfeiture that provided that "all right, title and interest of defendant I-HWA SHIUE and any third party in funds in the amount of $575,000 is hereby forfeit to the United States for disposition according to law." Lau Decl., Ex. 10 at 2.

Thus, the $575,000 held in a "suspense account" (Hagans Decl. ¶ 5) has now been forfeited to the United States "for disposition according to law." (Lau Decl., Ex. 10 at 2).

## B. Based Upon This Court's Prior Ruling And The Undisputed Facts Of This Case, White & Case Is Entitled To A Full 25 Percent Of The Government's Recoveries

The government also contends that White & Case is not "automatically" entitled to 25 percent of the government's recoveries. Gov't Br. at 7. In support of this proposition, the government argues that it is given "substantial latitude" in determining the amount of an award. *Id.* (quoting *Freed v. United States*, 34 Fed. Cl. 715, 718 (1996)). Again, this is an issue already considered and ruled upon by the Court.

In *White & Case*, this Court recognized that the government has "broad discretion" to determine the proper amount of an award. 67 Fed. Cl. at 173 (quoting *Doe v. United States*, 100

F.3d 1576, 1583 (Fed. Cir. 1996)). At the same time, the Court noted that the government's discretion is not unfettered. Rather, it must adopt a policy for awarding compensation that furthers the goals of the statute. "If no such policy exists, then the Court will follow the twenty-five percent figure in the statute." *Id.* at 174.

Since the issuance of *White & Case*, U.S. Customs and Border Protection filed an administrative determination concerning White & Case's moiety claim. Lau Decl., Ex. 12. That determination, however, did not identify any policy governing the circumstances under which the government will issue a moiety that is less than 25 percent of its recoveries. Thus, the Court should award White & Case the full 25 percent of the forfeited property (*i.e.*, 25 percent of $1.15 million, or $287,500).

### C. Based Upon This Court's Prior Ruling And The Undisputed Facts Of This Case, The Original Information Provided By White & Case Consists Of 98 Separate "Cases" Within The Meaning Of The Moiety Statute

Finally, the government continues to adhere to its position that the original information provided by White & Case only constitutes one "case" within the meaning of the statute, thus limiting any recovery by the firm to $250,000. Gov't Br. at 8-11.

#### 1. This Issue Is Governed By *Cornman v. United States*

As we have explained in our earlier briefs, this issue is governed by *Cornman v. United States*, 409 F.2d 230 (Ct. Cl. 1969), and a 1917 administrative decision issued by Walter W. Warwick, the then-Comptroller of the Treasury.

In his decision, Comptroller Warwick opined that the term "in any case" (contained in a predecessor to the current moiety statute) referred "to the information furnished, rather than to the recoveries growing out of such information." *Decisions of the Comptroller of the Treasury*, 24 Comp. Treas. 17, 18 (1917). Comptroller Warwick explained that "[t]he evident purpose of this law was to fix the compensation to be paid to the informer ***for furnishing the information***"

and that "[t]he ***service*** for which the compensation is paid is rendered ***when the information is furnished***, and it was clearly the intent of the law to fix a maximum compensation to be paid ***for any such service***." *Id.* (emphasis added). Thus, each separate "service" provided by an informant constitutes a separate "case."

Relying upon Comptroller Warwick's interpretation, the *Cornman* Court held that the term "in any case" established "an absolute limit on the amount that could be paid informers for any particular original information, regardless of the number of instances to which it was applicable." 409 F.2d at 234. In so doing, the *Cornman* Court considered whether the government's interpretation of the statute would encourage informants to leak information to the government on a piecemeal basis. Should an informant disclose information on a piecemeal basis, the government may well conclude that the second disclosure was no longer "original" within the meaning of the statute. *Id.* "Such a disposition would not frustrate the operation of the statute, for the Government, after the instigation of independent investigations on the basis of the information initially furnished, ***would in all probability discover the same violations later reported***." *Id.* (emphasis added).

Relying upon this passage from *Cornman*, this Court specifically instructed the Bureau of Customs and Border Protection ("CBP") "to explain ***precisely*** how Customs expected to discover all of the specific violations absent the specific provision of information relating to them." *White & Case*, 67 Fed. Cl. at 176 (emphasis added). In its remand determination, CBP ignored this directive. Accordingly, the Court should conclude that Customs could ***not*** uncover the fraudulent activity without the assistance of White & Case and that the 98 separate instances in which White & Case provided information concerning customs fraud constitute 98 separate "cases" within the meaning of 19 U.S.C. § 1619.

### 2. The Government's Statutory Interpretation Conflicts With Both The Statute And The Governing Caselaw

According to the government, "[e]ntitlement to a moiety is based upon the provision of original information that leads to the initiation of an investigation . . . ." Gov't Br. at 8. This position is incorrect for two reasons.

***First***, the government's position cannot be squared with the language of the statute itself. The statute makes no reference to "original information that leads to the initiation of an investigation." Rather, the statute provides that entitlement to a moiety is based upon the provision of original information that "leads to a recovery of . . . any duties withheld, or . . . any fine, penalty, or forfeiture of property incurred." 19 U.S.C. § 1619.

***Second***, the government's position cannot be reconciled with the cases that it cites. In *Tyson v. United States*, 32 F. Supp. 135, 136 (Ct. Cl. 1940), the Court of Claims clearly held that "[i]n order to entitle an informer to the compensation provided for he must give original information of a fraud on the revenue or a violation of the customs law, and the information so given must lead to the recovery of the duties, or of a fine, penalty, or forfeiture." No mention is made about original information leading to the initiation of an investigation.

In its later decision, *Lacy v. United States*, 607 F.2d 951, 953 (Ct. Cl. 1979), the Court of Claims did opine about the opening of the investigation, but only in the context of ascertaining whether the information provided by the plaintiff was truly original. At issue in *Lacy* was the discovery of the illegal export of arms in a jet aircraft. According to the plaintiff, he provided original information about this violation on August 3, 1974. According to Customs Special Agent Joseph Charles, by July 3, 1974, he had "developed [his] investigation to a point at which [he] suspected Richardson of illegally exporting or being in the process of illegally exporting those firearms to a foreign country." *Id.* (internal quotation marks omitted). The *Lacy* Court

noted that, by the time that the plaintiff provided his information to Customs, "the investigation of Richardson's arms export was well underway." *Id.* "However helpful plaintiff's location of the aircraft may have been, it was not the original information leading to investigation and ultimately the forfeiture of the aircraft; thus the reward is not his, *see Tyson, supra.*" *Id.* Because the plaintiff provided his information ***after*** Customs had initiated its investigation and ***after*** the Customs agent suspected that Richardson was illegally exporting firearms, the *Lacy* Court properly concluded that the plaintiff had not provided original information that ultimately led to the recovery of the aircraft.

The holding in *Lacy* is consistent with *Cornman.* Because Customs' investigation in the *Lacy* case was "well underway" by the time the plaintiff provided his information, Customs "would in all probability discover the same violations later reported." *Cornman v. United States*, 409 F.2d 230, 234 (Ct. Cl. 1969). Here, in contrast, there is no indication that Customs would have uncovered the fraudulent brake rotors imports without the assistance of White & Case. From November 22, 1999 to January 3, 2000 (after Customs had formally opened its investigation), Customs specifically requested White & Case to verify 86 separate invoice numbers. *See* Statement of Facts accompanying Plaintiff's Motion For Partial Summary Judgment Regarding The Number Of Cases Involved In Its Moiety Applications, dated January 19, 2006, ¶¶ 21 – 36, 38 – 76, 78 – 108. This fact reveals that the Customs was ***unable*** to discover the fraud without the assistance of White & Case.

With respect to the 12 remaining invoices for which White & Case unilaterally provided information to Customs, CBP has provided no evidence that Customs would have uncovered the existence of these fraudulent invoices without White & Case's assistance. Contrary to CBP's views, this is not a situation where the information provided by White & Case merely "led to the

triggering of the five-port investigation." Lau Decl., Ex. 12 at 3. Had White & Case simply given a "tip" to the agency (*i.e.*, "there's fraud going on in the brake rotor industry"), then the agency's factual determination would have validity. But White & Case did much more than provide a tip to Customs. It hand-crafted a unique coding system for Customs; it identified fraudulent invoices on its own and provided that information to Customs; and it answered Customs' requests to verify specific invoices as genuine or fraudulent.

In this manner, the Court should conclude that the information provided by White & Case consists of 98 separate "cases" within the meaning of the statute. Because the $1.15 million recovered by the government in the Shiue cases concerns 14 counts of White & Case's complaint (each of which is a separate "case"), the per-entry forfeiture is $82,142.86. Thus, the $250,000 statutory cap "for any case" is not implicated.

## CONCLUSION

For these reasons and the reasons set forth in our prior briefs, the Court should enter partial summary judgment for White & Case and award it $287,500 as informant's compensation with respect to Counts 9, 15, 16, 17, 70, 71, 72, 73, 76, 79, 80, 81, 82, and 84 of the Complaint.

Dated: April 15, 2008

Respectfully submitted,

WHITE & CASE LLP

By: ______________________

Lucius B. Lau
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to White & Case LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of "PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A RESPONSE TO THE DECLARATIONS OF BRUCE INGALLS, JOSEPH HIRTZ, AND YVONNE HAGANS" was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Lucius B. Lau