# In the United States Court of Federal Claims

No. 03-2800C
(Filed July 17, 2008)

* * * * * * * * * * * * * * * * * * * * * * *
*
**WHITE & CASE LLP,** *
*
Plaintiff, *
*
v. *
*
**THE UNITED STATES,** *
*
Defendant. *
*
* * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

The Court has carefully considered the memoranda supporting and opposing plaintiff's motion for leave to file a response to the declarations of Bruce Ingalls, Joseph Hirtz, and Yvonne Hagans, and has also reviewed plaintiff's proposed response. As will be explained below, the Court believes that supplemental briefing relating to the pending dispositive motions (plaintiff's motion for partial judgment and defendant's cross-motion for judgment and renewed motion to dismiss) is warranted in light of the information contained in the most recent declarations. The proposed response submitted by plaintiff, however, seeks to raise damages issues which cannot be considered prior to resolution of the pending dispositive motions, and thus the plaintiff's motion for leave to file the response (docket no. 97) is **DENIED**.

Concerning the pending dispositive motions, plaintiff challenges the opinion of U.S. Customs and Border Protection ("Customs") that its moiety claims involve just one case subject to the $250,000 limit of 19 U.S.C. § 1619(c). As was discussed in the Court's prior opinion in this matter, this question requires the application of the Court of Claim's definition of "case" as being based on "the service of furnishing original information." *White & Case LLP v. United States*, 67 Fed. Cl. 164, 175 (2005) (quoting from *Cornman v. United States*, 187 Ct. Cl. 486, 493 (1969)). The *Cornman* holding rested on a Comptroller of the Treasury decision which considered the "concrete case" of "information given at one time by an informer." *Id.* (quoting 24 Comp. Treas. 17, 18 (1917)). The court rejected the argument that basing the definition of a case on the timing of the information provided "would encourage the provision of information on a piecemeal basis to multiply the number of 'cases' entitling one to a payment of a moiety." *Id.* The *Cornman* court found that this feared moral hazard would be checked by the separate requirement that information be "original," when the government "would in all probability discover the same violations later reported" during its investigations launched based on the

initial information. *Id.* at 176 (quoting *Cornman*, 187 Ct. Cl. at 494).

If the Court were to focus on the timing of plaintiff's provision of information, and the question of whether earlier-provided information would have led to the detection of the violations identified in subsequent provisions of information, one approach to the number of cases is as follows: One case would be composed of the first two counts of the complaint, which concern information brought to the government's attention on June 11, 1999. A second case would consist of the counts which relate to violations associated with invoices dated June 1, 1999 or later, which would have been detected under the code system implemented as of that date -- apparently counts 9-19, 21-23, 27, 31-32, 34, 62-66, 70-76, and 95. A third case would concern all of the false invoices dated from January through May 1999, which the government could have identified after receiving from plaintiff on November 8, 1999 (*see* Admin. R. 109-117) the lists detailing the actual invoice numbers corresponding to Laizhou CAPCO's and CAIEC's exports to the United States -- apparently counts 20, 24, 26, 28, 30, 33, 49-54, 56-60, 77-94 and 96-98. A fourth case would involve count 67, concerning a September 1998 violation of which plaintiff informed the government on December 13, 1999. Admin. R. at 54-55. And a final category of cases, perhaps numbering as many as seven separate cases, would consist of plaintiff's responses to requests that it identify as false the invoices that the government would not have been able to so identify based on earlier information -- either because they predated the receipt of the lists or the entries on the lists, or concerned a different client of plaintiff's. These would appear to be: (i) count 3; (ii) counts 4-6; (iii) count 7 and 8; (iv) possibly count 25;[1] (v) counts 29 and 35-48 (and maybe 33 and 34);[2] (vi) counts 55 and 61; and (vii) counts 68 and 69.

For purposes of supplemental briefing, the parties are asked to assume that the Court will find the moiety cases presented in this matter to be eleven in total, as described in the immediately-preceding paragraph. In light of that prospective determination, and considering the updated information contained in the last declarations filed by the government (as well as any related information possessed by plaintiff), the parties shall address the following issues in supplemental briefs:

---

[1] The date of this invoice has been stated to be January 9, 1998, *see* Admin. R. 66, 196, although the next invoice in that sequence (SWZ008) was stated as January 27, 19***99***. *Id.* For present purposes, the Court assumes the 1998 date is correct.

[2] Count 33 concerns invoice SWD061, which according to a Customs official was dated January 18, 1998. *See* Admin. R. 195. In the same communication, however, the Customs official noted that invoice SWD059 was dated January 11, 19***99***, and that invoice SWD066 was dated February 8, 1999. *Id.* The invoice SWD062 was allegedly dated January 21, 1999. Admin. R. 189. Count 34 concerns invoice SWZ018, which is given the date June 6 (no year) in the request and response. *See id.* at 63, 195. The invoice SWZ019, however, apparently was dated June 20, 1999. *See id.* at 196.

1. Under the prudential ripeness doctrine, *see White & Case*, 67 Fed. Cl. at 171-74, do any of the "cases" consist of fully-liquidated claims, such that the "case" is ripe for a Court determination of the award to which plaintiff is entitled?

2. Are there any published regulations or publicly-accessible policies governing the amount of time which Customs has to issue a final decision on a moiety claim, or governing how the size of awards shall be determined? Does this affect the ripeness analysis?

3. If the Court were to decide the award to which plaintiff is entitled for a particular "case," and Customs were to subsequently collect additional duties, fines, penalties, or forfeitures which may be traced back to the information provided in that "case," what would be the effect of the award determination? Would plaintiff waive the right to, or be estopped from seeking, any additional awards relating to that "case"?

4. The presumptive determination of the number of "cases" presented by plaintiff's moiety claims (and their composition) rests on primarily temporal considerations -- the code system implemented June 1, 1999 is the original information for purposes of subsequently dated invoices which are identified as violations of Customs law; for invoices dated January through May 1999, the lists of genuine invoice numbers provided on November 8, 1999 is the original information leading to the identification of violations after that date. There is the possibility, however, that other factors, such as the identity of importers, is relevant to this determination. Taking as an example the criminal matter upon which the plaintiff sought to elaborate in its proposed response to the most recent declarations of Ingalls, Hirtz and Hagans, it appears that the first false invoice of that importer that plaintiff was asked to confirm (count 9) was dated after the code system was implemented. But plaintiff was subsequently asked to confirm older invoices relating to that importer which pre-dated the code system (*i.e.*, counts 80, 82, 84). This suggests that the original information provided in the form of the code system may have led to the detection of pre-code system violations, and that all collections relating to that importer might properly be grouped under the code system "case." Would a remand be warranted, in light of the failure of Customs "to explain precisely how Customs expected to discover all of the specific violations" with analysis that was "factually supported"? *White & Case*, 67 Fed. Cl. at 176. Or are these matters that can be handled in an accounting, as authorized by the Federal Circuit? *See Doe v. United States*, 100 F.3d 1576, 1584 (Fed. Cir. 1996).

5. What, if any, federal statutes have been found to be money mandating for Tucker Act purposes, yet leave to the Executive branch discretion in determining the amount of money to be paid under them? If any such statutes can be found, have they been implemented through regulations and published policies which mandate the manner in which the amounts paid are to be calculated?

The parties shall file supplemental briefs covering the issues detailed above, as well as any other issues which are reasonably related, on or by **Thursday, July 31, 2008**. Each brief shall be no longer than thirty pages. The parties may file response briefs, no longer than twenty pages, on or by **Monday, August 11, 2008**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge