No. 03-2800C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WHITE & CASE LLP,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO THE COURT'S JULY 17, 2008 ORDER

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/Sean M. Dunn
SEAN M. DUNN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-0883
Fax: (202) 353-7988

August 13, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

DEFENDANT'S RESPONSE TO THE COURT'S JULY 17, 2008 ORDER . . . . . 1

I. This Matter Is Not Ripe For Review . . . . . 1

II. This Matter Only Consists Of One Claim . . . . . 3

III. Defendant's Responses To The Issues Presented In The Court's July 17, 2008 Order . . . . . 5

A. Only Two Of The "Cases" Consist Of "Fully-Liquidated Claims" That Resulted In Recoveries . . . . . 5

B. There Are No Published Regulations Or Publicly-Accessible Policies Governing The Time Under Which Customs Must Issue A Final Decision On A Moiety Claim . . . . . 7

C. If The Court Determines The Award To Which White & Case Is Entitled For A Particular "Case," White & Case Cannot Seek Any Additional Awards Relating To That Case . . . . . 9

D. Neither A Remand Nor An Accounting Is Appropriate . . . . . 12

E. Statutes Similar To 19 U.S.C. § 1619 Leaving Discretion To The Executive Branch . . . . . 13

CONCLUSION . . . . . 15

# TABLE OF AUTHORITIES

**CASES:** **PAGES:**

Abbott Laboratories v. Gardner,
387 U.S. 136, 148 (1967) . . . . . 1

Adams v. United States,
51 Fed. Cl. 57 (2001) . . . . . passim

Alyeska Pipeline Service Co. v. United States,
688 F.2d 765, 769 (Fed. Cir. 1982) . . . . . 11

Califano v. Sanders,
430 U.S. 99 (1977) . . . . . 1

Cornman v. United States,
409 F.2d 230 (Ct. Cl. 1969) . . . . . 3, 4

Doe v. United States,
100 F.3d 1576 (Fed. Cir. 1996) . . . . . passim

Lacy v. United States,
607 F.2d 951, 953-54 (Ct. Cl. 1979) . . . . . 3

McCarthy v. Madigan,
503 U.S. 140 (1992) . . . . . 5

McKart v. U.S.,
395 U.S. 185 (1969) . . . . . 5

Myers v. Bethlehem Shipbuilding Corp.,
303 U.S. 41 (1938) . . . . . 5

Toilet Goods Ass'n, Inc. v. Gardner,
387 U.S. 158 (1967) . . . . . 1, 9

Tyson v. United States,
32 F. Supp. 135 (Ct. Cl. 1940) . . . . . 3, 12

Volvo GM Heavy Truck Corp. v. Dep't of Labor,
118 F. 3d 205 (4th Cir. 1997) . . . . . 5

White & Case v. United States,
67 Fed. Cl. 164 (Fed. Cl. 2005) . . . . . 5

**STATUTES:**

12 U.S.C. § 4205(d) . . . . . 13

12 U.S.C. § 4205(d)(1)(A)(i) . . . . . 14

12 U.S.C. § 4205(d)(1)(A)(ii) . . . . . 14

12 U.S.C. § 4225(c) . . . . . 13, 14

19 U.S.C. 1308 . . . . . 14

19 U.S.C. § 1308(c)(5) . . . . . 13, 14

19 U.S.C. § 1592 . . . . . 3, 4

19 U.S.C. § 1619 . . . . . passim

19 U.S.C. § 1619(a) . . . . . 1, 2

21 U.S.C. § 881(e)(2)(A)(ii) . . . . . 13, 14

28 U.S.C. § 2517 . . . . . 9

28 U.S.C. § 2517(b) . . . . . 10

29 U.S.C. §§ 201-219 . . . . . 9

31 U.S.C. § 1304 . . . . . 9

**REGULATIONS:**

19 C.F.R. § 159.1 . . . . . 6

19 C.F.R. § 161.12-16 . . . . . 7

19 C.F.R. § 162.81(d) . . . . . 14

19 C.F.R. §§ 174.12, 21, 29, 31 . . . . . 8

19 C.F.R. §§ 351.202, 204, 205, 210 . . . . . 7

19 C.F.R. 351.212(b)(1) . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WHITE & CASE LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2800C |
| | ) | (Judge Wolski) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO THE COURT'S JULY 17, 2008 ORDER**

The United States, respectfully submits this supplemental brief in response to the Court's July 17, 2008 order.

## I. This Matter Is Not Ripe For Review

As we have demonstrated in prior briefing, because the agency has not completed processing White & Case's claims, White & Case improperly and prematurely asks this Court to override the agency's moiety process and order an award. One factor in determining if a claim is ripe is whether there has been "final agency action." Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 162 (1967). The inchoate claim White & Case presents here is precisely what the ripeness doctrine seeks to avoid:

> [i]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . , and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967) (emphasis added), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).

Here, because there is no final decision of Customs[1] for the Court to review, White & Case has not yet qualified for moiety. To qualify for moiety, White & Case must demonstrate that it has satisfied three legal criteria: (1) it has provided "original information;" (2) the "original information" concerned a violation of customs laws; and (3) the "original information" has lead to the recovery of a "fine, penalty, or forfeiture of property" by Customs. See 19 U.S.C. § 1619; Doe v. United States, 100 F.3d 1576, 1582 (Fed. Cir. 1996). If these three criteria are satisfied, Customs processes the moiety claim and determines the percentage of the award based on the total value of the information. See November 14, 2005 Opinion Concerning Number Of Moiety Cases Involved In White & Case's Moiety Claim at 5 ("Nov. 14, 2005 Opinion"). Until the investigation and collection effort are complete, it is simply not possible to ascertain the value of White & Case's information and cooperation. White & Case cannot know what it is challenging.

Furthermore, the Constitution prohibits the payment of moiety until a net collections amount has been established. Article I, Clause 9, of the Constitution provides that "No money shall be drawn from the treasury, but in consequence of appropriations made by law; and a regular statement and account of receipts and expenditures of all public money shall be published from time to time." U.S. Const. art. I, § 9. Congress enacted 19 U.S.C. § 1619 as the underlying "appropriation by law" that allows for the payment of moiety from the "net amount"

---

1 The Department of Homeland Security ("DHS") was created in March, 2003. The U.S. Customs Service was transferred into DHS and renamed U.S. Customs and Border Protection ("CBP"). Customs special agents were then transferred into U.S. Immigrations and Customs Enforcement ("ICE"). ICE is the investigative branch of DHS and inherited the matters formerly handled by Customs' Office of Investigations. For purposes of consistency with court orders and previous briefs, we retain the use of the term "Customs" throughout this brief to refer to both the legacy service and CBP. Where necessary, specific references to ICE are made.

recovered from any duties withheld due to fraud, or "any fine, penalty or forfeiture of property." See 19 U.S.C. § 1619(a). Thus, Customs cannot pay a moiety award until the net recovery threshold is met.

## II. This Matter Only Consists Of One Claim

The Government respectfully disagrees with the Court's working assumption, for purposes of the July 17, 2008 order, that this case consists of eleven moiety cases in total.

Entitlement to a moiety is based upon the provision of original information that leads to the initiation of an investigation, and the information so given must lead to a recovery of the duties, or of a fine, penalty, or forfeiture. Lacy v. United States, 607 F.2d 951, 953-54 (Ct. Cl. 1979), superseded on other grounds by statute, 19 U.S.C. § 1619 (1986); Tyson v. United States, 32 F. Supp. 135, 136 (Ct. Cl. 1940), superseded on other grounds by statute, 19 U.S.C. § 1619 (1986). The informer is not entitled to a fee, however, if the information is not the first information provided concerning the fraud or violation, or if the information does not lead to a recovery of duties, or a fine, penalty, or forfeiture. Tyson, 32 F. Supp. at 136. Further, only "original information" that leads to the initiation of an investigation can trigger entitlement to a moiety. Lacy, 607 F.2d at 954.

In Cornman v. United States, 409 F.2d 230 (Ct. Cl. 1969), the court was presented with a moiety claim involving multiple fraudulent entries of 19 separate Japanese steel importers. Cornman, 409 F.2d at 231-32. The court held that the importation violations all involved the same statute, 19 U.S.C. § 1592, and ultimately treated Mr. Cornman's moiety claim as involving "one case" based upon his provision of information to Customs that led to its investigation. In so holding, the Cornman court rejected Mr. Cornman's argument that separate moiety claims were generated based upon the number of seizures effectuated by Customs. Id.

In directly rejecting Mr. Cornman's contention that each successive seizure should be treated as a separate moiety case – which is precisely what White & Case urges the Court to do here – the Court of Claims noted that Mr. Cornman's interpretation of section 1619:

> carried to its logical extreme . . . could require breaking down the violations of each company into each separate shipment, or, short of that, could allow each economic unit to be treated separately but require parent-subsidiary groups to be considered as single units for purposes of the statue.

Cornman, 409 F.2d at 234.

Here, as Customs concluded in its November 14, 2005 Opinion, White & Case's moiety claims constitute only one case "because the New York moiety claim contains each of the entries listed in the Long Beach moiety claim, and involve the same information that was provided about one ongoing scheme involving the same commodity, the same type of fraud, a small number of importers, exported from the same country, during a defined time period." Nov. 14, 2005 Opinion at 1.

Any focus upon the timing of plaintiff's provision of information is inconsistent with the court's conclusion in Cornman that informants would not be encouraged to "give out information on a piecemeal basis," Cornman, 409 F.2d at 234, which is precisely what White & Case has done here. As stated above, to avoid this result, the court in Cornman held that "the Treasury might well have ruled on plaintiff's second disclsoure and demand for compensation that since plaintiff's information involved the same thing – false invoicing practices in violation of 19 U.S.C. § 1592 – his information was no longer 'original' after the first disclosure." Cornman, 409 F.2d at 234. This is exactly what Customs determined in this case – it involves one continuing scheme in violation of 19 U.S.C. § 1592. Because it is only one scheme, White

& Case cannot be permitted to do exactly what the Court in Cornman sought to avoid – encouragement to informers to provide information upon a piecemeal basis.

## III. Defendant's Responses To The Issues Presented In The Court's July 17, 2008 Order

### A. Only Two Of The "Cases" Consist Of "Fully-Liquidated Claims" That Resulted In Recoveries

The exhaustion of administrative remedies is normally required to assure that the independent administrative process of agencies is maintained and to promote judicial efficiency. White & Case LLP v. United States, 67 Fed. Cl. 164, 170 (2005) (internal quotations omitted); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938) ("No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"). The administrative exhaustion requirement also prevents "'frequent and deliberate flouting of administrative processes that could weaken' an agency's effectiveness by 'encouraging' disregard of 'its procedures.'" Volvo GM Heavy Truck Corp. v. Dep't of Labor, 118 F.3d 205, 209 (4th Cir. 1997) (quoting McKart v. U.S., 395 U.S. 185 (1969)). Prudential exhaustion may be applied if a party's interests in immediate judicial review outweigh the Government's interests in an independent administrative process and maintaining administrative autonomy. See e.g., McCarthy v. Madigan, 503 U.S. 140, 146 (1992), superseded on other grounds by statute, Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 803, 110 Stat. 1321.

This Court has determined that White & Case was not required to exhaust administrative remedies based on the prejudice it would suffer if forced to wait for a decision from Customs. White & Case, 67 Fed. Cl. at 171. Without rearguing or waiving the Government's position on this point, and notwithstanding the Government's objection to the classification of this matter as

comprising more than one moiety case, the following information is provided in response to Court's July 17, 2008 order.

We provide a declaration and collections spreadsheet of the entries at issue updated as of July 25, 2008. See Bruce Ingalls' Sixth Supplemental Decl. ("Sixth Ingalls Decl.") (Ex. 1).[2] We also provide an additional declaration from an ICE Special Agent, which discusses the division of the complaint into the cases as proposed by the Court's July 17, 2008 order and how continuing investigations relate to each proposed case. See Declaration of Richard G. Wilson ("Wilson Decl.") (Ex. 2). For purposes of this brief, the Government interprets "fully-liquidated" broadly to mean that all possible collections actions have been completed and no further sums are owed or can be recovered. This is distinguishable from the definition provided by 19 C.F.R. § 159.1, which specifically references duties, but does not include penalties, forfeitures, and other potential collections.

Entries in proposed cases two, three, six, and seven relate to open ICE investigations, which are awaiting the completion of legal action with the possibility of further investigation. Wilson Decl. at ¶ 5. Thus, these cases are not fully-liquidated because it is not clear what recoveries, if any, will result. Id. To resolve these proposed cases by a specific date, ICE would have to stop investigating the matters. This is in neither the Government's nor White & Case's best interest, as the Government is concerned with enforcing the laws and White & Case has potentially a direct interest in any recoveries flowing from enforcement of those laws.

---

[2] As set forth in the complaint, there are not 98 discrete entries. In fact, of the first 98 counts, Count 27 is a reference to a letter (not linked to any entry), Count 20 duplicates Count 2, Count 59 duplicates Count 58, Count 7 is an entry number that cannot be found in the agency's systems, Count 48 duplicates Count 47, and Count 66 duplicates Count 6. Wilson Decl. at ¶ 4.

The Government's collections actions for proposed case numbers one, four, five, eight, and 11 are complete. For each of these proposed cases, however, the Government made no recovery. See Sixth Ingalls Decl.; Wilson Decl. Thus, there is no moiety to award as the statute requires both a recovery of a fine, penalty, or forfeiture, and a determination of a net recovery amount. See 19 U.S.C. § 1619; Doe, 100 F.3d at 1582.

Only proposed case nine and ten consist of both completed collections actions and recoveries. Assuming for argument's sake that White & Case is entitled to a moiety amount based on the completed collection action and that there are no agency expenses that would be deducted to obtain the net recovery, the total amounts recovered for these proposed cases are as follows. For proposed case number nine, $8,780.74 was recovered for Count 37; $51,167.88 was recovered for Count 38; and $14,586.28 was recovered for Count 41, totaling $74,534.90. See Sixth Ingalls Decl. ("Amount Paid" column of spreadsheet). Of this, White & Case could be entitled to an award up to a statutory maximum of 25 percent, or $18,633.73. For proposed case number ten, the Government recovered nothing for Count 55 and $50,000.00 for Count 61. Of this, White & Case could be entitled to an award up to $12,500.00. See id.

### B. There Are No Published Regulations Or Publicly-Accessible Policies Prescribing A Time Within Which Customs Must Issue A Final Decision On A Moiety Claim

Although Customs has implemented regulations regarding eligibility for moiety, entitlement to moiety, the limitation of the amount of moiety, and specifying how moiety claims should be filed and processed, see 19 C.F.R. § 161.12-16, the regulations do not prescribe any time within which Customs must issue a final decision or governing how the size of the awards shall be determined.

For a variety of reasons, it is impractical to implement temporal restrictions governing the amount of time in which Customs must issue a final decision upon a moiety claim. For example, the Department of Commerce ("Commerce"), not Customs, controls when a final antidumping duty rate is established. See e.g., 19 C.F.R. §§ 351.202, 204, 205, 210. After Commerce establishes the final antidumping duty rate, Customs issues a bill for any additional duties owed. See 19 C.F.R. 351.212(b)(1). Thereafter, the importers may choose to pay the bill, protest the bill through an administrative process with the agency, or protest the bill in the Court of International Trade. See 19 C.F.R. §§ 174.12, 21, 29, 31. Each of these options results in a different amount of time for collections to occur. Thus, the timing of when the moiety process will be complete cannot be pre-determined.

Similarly, Customs does not have published regulations or publicly-accessible policies governing how the size of awards shall be determined. The factors that Customs considers when determining the amount of the award are set forth in the August 17, 2005 Declaration of Todd Schneider ("Schneider Decl."), as filed with the Court. These factors include, but are not limited to: (1) the importance and ultimate role of the information in Customs' investigations; (2) the cooperation of the informant; (3) the degree to which the informant was forthcoming with the provision of information and supporting documentation; and (4) whether the informant provided testimony before a grand jury or in a criminal or civil judicial proceeding. See Schneider Decl. at ¶ 4.

Here, because White & Case's moiety claims have not yet resulted in a final net amount collected, such claims are not ripe for review. Ultimately, there will be an end to any given case, with the timing varying based on the nature of the underlying offense and other considerations, as specified above. There is an end point in collection actions – when viewed as a set of

circumstances as opposed to calendar date – as statutes of limitations, investigations, prosecutions, antidumping orders, and other applicable processes reach completion. At that point, after all recoveries have been made, the moiety claim is ripe for processing by Customs because the net recovery and the value of the information provided can be established. Here, the Court should not deem White & Case's claims ripe for review until there is a final agency action in which Customs determines the net recovery pursuant to 19 U.S.C. § 1619. See e.g., Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 162 (1967).

### C. If The Court Determines The Award To Which White & Case Is Entitled For A Particular "Case," White & Case Cannot Seek Any Additional Awards Relating To That Case

The very issue raised by the third question in the Court's July 17, 2008 order – whether White & Case has the right to collect multiple moiety awards relating to the same "case" – highlights why claims relating to such "cases" are unripe. As demonstrated earlier, until the investigation and collection efforts are complete, it is simply not possible to ascertain the amount of moiety to which White & Case is entitled.

Payments of judgments against the United States may only be made with respect to "final" judgments, partial or otherwise. 28 U.S.C. § 2517; see also 31 U.S.C. § 1304 (requiring "final judgment" for payment from Judgment Fund). Accordingly, any partial final judgment must be entered pursuant to RCFC 54(b), which governs "Judgment Upon Multiple Claims or Involving Multiple Parties." RCFC 54(b) provides that, "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay . . . ." RCFC 54(b).

In Adams v. United States, 51 Fed. Cl. 57, 59 (2001), this Court considered the standards applicable for the entry of partial final judgment pursuant to RCFC 54(b). In Adams, Federal employees brought an action for unpaid overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (1994) ("FLSA"). Because the plaintiff employees wanted to receive their backpay as soon as possible, they filed a motion for entry of partial judgment for compensatory damages. Id. at 58.

Initially, the Court discussed 28 U.S.C. § 2517(b), which states that "[p]ayment of any such judgment and of interest shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case of controversy, unless the judgment is designated a partial judgment, in which only the matters described therein shall be described." Id. The Court noted that Section 2517 does not establish a standard for entry for partial judgments separate from RCFC 54(b). Id. The Court concluded that four factors were relevant for determining whether multiple or separate claims are present, and that would thus permit entry of a partial, final judgment under RCFC 54(b):

> (1) The extent of factual overlap; (2) whether separate causes of action depend upon proof of different facts or have different burdens of proof; (3) whether the application of res judicata considerations suggest that the claims are linked; and (4) whether the multiple relief is for the same injury.

Adams, 51 Fed. Cl. at 59.

Here, all four Adams factors indicate that any award made to White & Case relating to a particular "case" would constitute a full discharge pursuant to 28 U.S.C. §2517(b), and White & Case could not collect additional awards relating to the same "case" because it relates to the same claim pursuant to RCFC 54(b).

First, the extent of factual overlap between the initial and subsequent award relating to the "case" could not be greater. Pursuant to the Court's July 17, 2008 order, assuming there were multiple awards, all would relate to the same "case" as defined by the Court. Each "case" consists of counts relating to information provided by White & Case at a specific point in time. Thus, any additional award relating to the same "case," would entirely overlap with the initial award.

The second factor identified by this Court in Adams also counsels against the recognition of a separate claim for the purposes of RCFC 54(b). Any additional request for relief regarding each "case" – after the Court has already awarded moiety relating to the same "case" – would arises from precisely the same "cause of action." Thus, final judgment should await resolution of all claims relating to the same core of operative facts of each "case," as defined by the Court.

The third Adams factor also does not support White & Case's position. Res judicata applies with respect to a request for relief if it arises "with respect to all or any part of the transaction, or a series of connected transactions, out of which [an earlier] action arose." Adams, 51 Fed. Cl. at 59-60 (quoting Alyeska Pipeline Serv. Co. v. United States, 688 F.2d 765, 769 (Fed. Cir. 1982)). Given the shared core operative facts, res judicata would not permit the litigation of the issues any subsequent award relating to a "case" after final judgment of a previous award for the very same "case."

The final factor – whether the relief is for the same injury – also weighs against holding there exists a separate claim. The same injury – the Government's alleged non-payment of moiety claims to White & Case – comprises the basis for any damages relating to each of the "cases." Thus, any subsequent award would be for the same alleged injury.

Accordingly, because White & Case cannot demonstrate that it seeks a partial judgment for a separate claim, it is not entitled to a partial judgment under RCFC 54(b), or any other rule or provision of the law.

**D. Neither A Remand Nor An Accounting Is Appropriate**

On November 14, 2005, Customs issued its decision concluding that White & Case provided original information involving one scheme to circumvent antidumping laws. Nov. 14, 2005 Opinion at 1, 5. In its decision, Customs set forth its basis for concluding that White & Case provided information on one scheme, and therefore was eligible for one moiety award. See id. Customs also provided a lengthy administrative record upon which the November 14, 2005 Opinion was based. Because Customs' decision is not arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, procedurally defective, or unsupported by evidence in the record, it should not be remanded. See Doe, 100 F.3d at 1583 (citing Tyson v. United States, 32 F. Supp. 136, 136-37 (1940)).

An accounting is also unsuitable this case. As previously stated, the circumstances are not yet ripe for Customs to make a determination concerning the percentage of any net collection amount that should be awarded to White & Case. An accounting would only result in auditors tracking what Customs has already collected, which is already before the Court. Until the moiety process is complete and a final decision is reached, neither auditors nor the Government will be able to put a fixed value on potential recoveries.

This case is distinguishable from Doe v. United States, 100 F.3d 1576 (Fed. Cir. 1996), because there has been no final agency decision here with respect to the moiety amount to be awarded to White & Case. In Doe, a final decision had been made not to pay plaintiff a moiety award. Id. at 1578. Thus, the court-ordered accounting was more suitable in Doe because the

agency had seized all of the assets at issue and it was possible to calculate "the monies allegedly recovered pursuant to original information provided by Appellant." Id. at 1584. Here, because there is no final collection amount that can be determined, an accounting would be a premature and fruitless effort.

To the extent that the Court seeks additional information concerning the methods by which Customs could have discovered the entries without White & Case's specific verification of individual entries, the Government is willing to provide one or more additional declarations, potentially under seal, to clarify the techniques by which the fraudulent entries could have been found. Any response to such a remand would, by its very nature, be speculative in the respect that it would be not be based on actual facts, but on a recreation of a series of actions which Customs believes it would have taken but for some of the information provided by White & Case.

### E. Statutes Similar To 19 U.S.C. § 1619 Leaving Discretion To The Executive Branch

Although none "have been found" by a court to be money mandating, four statutes, have provisions similar to 19 U.S.C. § 1619 in which discretion is left to the Executive branch to determine the amount of an award.[3]

These four statutes include: (1) 12 U.S.C. § 4205(d) (right to share in recovery of bank fraud in a criminal action), (2) 12 U.S.C. § 4225(c) (right to share in recovery of bank fraud in a civil action), (3) 19 U.S.C. § 1308(c)(5) (reward for information leading to "a civil penalty assessment, debarment, or forfeiture of property" for violation of statute prohibiting importation

3 Although we have included these four statutes pursuant to the Court's order as statutes similar to 19 U.S.C. § 1619, we do not concede for purposes of this or any other litigation that such are money mandating.

of dog and cat fur products), and (4) 21 U.S.C. § 881(e)(2)(A)(ii) (award "to any individual who provides original information which leads to the arrest and conviction of a person who kills or kidnaps a Federal drug law enforcement agent"). Each of the statutes provides that such individuals "shall" receive the award described when award criteria have been met. See id.; see also Doe, 100 F.3d at 1582 ("The fact that the Secretary retains some discretion to determine the amount of an award, within prescribed limits, does not preclude the statute from being money mandating."). Thus, the statutes appear to mandate that an award be made when an individual meets the award criteria.

The statutes also leave discretion to the designated Executive branch agency to determine the amount of the award. For example, 12 U.S.C. § 4205(d)(1)(A)(i) provides for a discretionary award of "20 percent to 30 percent of any recovery up to the first $1,000,000 recovered, 10 percent to 20 percent of the next $4,000,000 recovered, and 5 percent to 10 percent of the next $5,000,000 recovered." Subsection (d)(1)(A)(ii) further provides that "in calculating an award under clause (i), the Attorney General may consider the size of the overall recovery and the usefulness of the information provided by the declarant." 12 U.S.C. § 4205(d)(1)(A)(ii). Similarly, 12 U.S.C. § 4225(c) provides for a discretionary award of "20 percent to 30 percent of any recovery up to the first $1,000,000 recovered, 10 percent to 20 percent of the next $4,000,000 recovered, and five percent to 10 percent of the next $5,000,000 recovered. See also 19 U.S.C. § 1308(c)(5) (mandating a reward of "not less than $500"); 21 U.S.C. § 881(e)(2)(A)(ii) (mandating "award of up to $100,000").

None of the statutes has been implemented through regulations mandating the manner in which the amounts paid are to be calculated. Regarding 19 U.S.C. § 1308(c)(5), however, the Department of the Treasury issued a Notice of Proposed Rulemaking on August 10, 2001. 66

F.R. 42163. The proposed rules, which were never implemented, state that "[t]he Secretary of the Treasury will pay a reward of not less than $500 to any person who furnishes information that establishes or leads to a civil penalty assessment, debarment, or forfeiture of property for any violation of 19 U.S.C. 1308 or any regulation issued thereunder." Id. at 42167 (proposed rule 19 C.F.R. § 162.81(d)). Regarding 21 U.S.C. § 881(e)(2)(A)(ii), the Department of Justice issued guidelines dated January 8, 2001 relating to the use of confidential informants. See http//:www.usdoj.gov/ag/readingroom/ciguidelines.htm. The guidelines state that "[m]onies that a [Justice Law Enforcement Agency] pays to a [Confidential Informant] in the form of fees and rewards shall be commensurate with the value, as determined by the JLEA, of the information he or she provided or the assistance he or she rendered to the JLEA." Id.

## CONCLUSION

For these reasons, we respectfully request that the Court enter judgment in favor of the United States.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

s/Sean M. Dunn
SEAN DUNN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-0883
Fax: (202) 353-7988

Attorneys for Defendant

August 13, 2008

# EXHIBIT 1

## SIXTH SUPPLEMENTAL DECLARATION OF BRUCE INGALLS

I, Bruce Ingalls, do hereby declare that:

1. This declaration supplements my previous declarations in this case.

2. I am aware of the litigation involving the moiety claim filed by White and Case. As requested, I am providing this sixth supplemental declaration with an updated collections spreadsheet (attached).

3. The Office of Finance, for which I work, processes the collection of duty bills. This spreadsheet therefore includes amounts collected as duties or interest thereon, but not any amounts collected as liquidated damages, fines, penalties or forfeitures related to the listed entries.

4. The "Paid/Closed" statement in the status column of the attached spreadsheet means that the duty bills for these entries have been paid and that the duty bill is closed. This does not mean that all liquidated damages, fines, penalties, or forfeitures have been resolved, which are matters not handled by my office.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of August 2008, at Indianapolis, Indiana.

Bruce W. Ingalls

| COUNT | ENTRY NO | AMOUNT BILLED | AMOUNT PAID | Bill Number | *Bill Amount as of 4/2/04 (Prin+Int)* | *AD/CVD Amt.* | *Total Paid* | *Balance AD/CVD* | *Protest Status* | *Bill Status as of 7/25/08* |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | AW301247025 | | | No Bill | | | | | | |
| 2 | AW301247074 | | | No Bill | | | | | | |
| 3 | FY400018302 | $34,606.79 | $0.00 | 43542563000 | $38,906.87 | $28,369.83 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 4 | EK807014833 (seizure) | $6,446.45 | $6,446.45 | | | | | | | |
| 5 | 47699090271 | | | No Bill | | | | | | |
| 6 | U7900219131 | | | No Bill | | | | | | |
| 7 | Unknown | | | | | | | | | |
| 8 | EK807014320 | $7,732.68 | $0.00 | 43565951000 | $8,645.76 | $6,404.00 | $0.00 | $0.00 | None | Cancelled-Reliquidated |
| 9 | 27401089977 | $8,590.89 | $0.00 | 43589461000 | $9,551.74 | $7,090.62 | $0.00 | $0.00 | None | Cancelled W/O |
| 10 | U7900222044 | $6,341.16 | $0.00 | 43569590000 | $7,087.19 | $5,338.32 | $0.00 | $0.00 | None | Cancelled W/O |
| 11 | FS210045464 | | | No Bill | | | | | | |
| 12 | FS210046199 | | | No Bill | | | | | | |
| 13 | FS210044350 | | | No Bill | | | | | | |
| 14 | FS210045860 | | | No Bill | | | | | | |
| 15 | DO201520569 | | | No Bill | | | | | | |
| 16 | DO201526293 | | | No Bill | | | | | | |
| 17 | DO201522904 | | | No Bill | | | | | | |
| 18 | AW301253486 | | | No Bill | | | | | | |
| 19 | FS210047312 | | | No Bill | | | | | | |
| 20 | Duplicate of Count 2 | | | No Bill | | | | | | |
| 21 | 47600248919 | | | No Bill | | | | | | |
| 22 | 00207647389 | | | No Bill | | | | | | |
| 23 | 00207637133 | | | No Bill | | | | | | |
| 24 | 00207593971 | $9,419.83 | $9,419.83 | 43396914004 | $0.00 | $8,344.89 | $9,419.83 | $0.00 | Denied | PAID/Closed |
| 25 | 00207590415 | | | No Bill | | | | | | |
| 26 | 00207585308 | | | No Bill | | | | | | |
| 27 | Letter | Linda Hackett | | | | | | | | |
| 28 | FY400007685 | $10,595.54 | $0.00 | 43331327000 | $12,663.50 | $10,595.54 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 29 | FY400002975 | $16,892.52 | $0.00 | 43325885000 | $20,208.89 | $14,220.22 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 30 | FY400005523 | $35,268.84 | $0.00 | 43331325000 | $42,152.36 | $29,556.80 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 31 | FY400018153 | $98,250.49 | $0.00 | 43546117000 | $110,394.90 | $79,754.29 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 32 | FY400018310 | $55,872.35 | $0.00 | 43546118000 | $62,778.54 | $45,353.44 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 33 | FY400005960 | $17,864.23 | $0.00 | 43331324000 | $21,350.84 | $14,990.89 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 34 | EH309193272 | $8,282.50 | $0.00 | 43546120000 | $9,306.27 | $6,782.18 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 35 | EH308170628 | $31,817.38 | $0.00 | 43331326000 | $38,027.27 | $26,326.43 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 36 | EH308161171 | $22,461.06 | $0.00 | 43334541000 | $26,819.07 | $18,285.37 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 37 | W0402239085 | $8,780.74 | $8,780.74 | 43325882002 | $6,143.65 | $7,582.85 | $8,780.74 | $0.00 | Denied | PAID/Closed |
| 38 | W0402238616 | $54,214.77 | $51,167.88 | 43325884004 | $12,212.69 | $44,600.11 | $51,167.88 | $0.00 | Denied | Cancelled W/O |

* No Bill - indicates entry paid at port, no liquidation occured

| COUNT | ENTRY NO | AMOUNT BILLED | AMOUNT PAID | Bill Number | *Bill Amount as of 4/2/04 (Prin+Int)* | *AD/CVD Amt.* | *Total Paid* | *Balance AD/CVD* | *Protest Status* | *Bill Status as of 7/25/08* |
|---|---|---|---|---|---|---|---|---|---|---|
| 39 | W0402238608 | $15,938.15 | $0.00 | 43325887000 | $19,067.16 | $13,103.00 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 40 | W0402234276 | $29,534.59 | $0.00 | 43325886000 | $35,332.87 | $24,201.15 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 41 | W0402238145 | $12,590.75 | $14,586.28 | 43325883006 | $0.00 | $10,337.45 | $14,586.28 | $0.00 | Denied | PAID/Closed |
| 42 | W0402237196 | $15,653.88 | $0.00 | 43325889000 | $18,727.08 | $12,832.68 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 43 | W0402236370 | $26,329.26 | $0.00 | 43334534000 | $31,437.80 | $21,476.76 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 44 | W0402234821 | $24,228.96 | $0.00 | 43331323000 | $28,957.80 | $19,745.69 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 45 | W0402234839 | $26,863.94 | $0.00 | 43331329000 | $32,107.05 | $21,893.10 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 46 | W0402241602 | $31,620.99 | $0.00 | 43334542000 | $37,756.25 | $26,471.12 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 47 | W0402242469 | $59,297.53 | $0.00 | 43334538000 | $70,802.74 | $48,912.61 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 48 | Duplicate of Count 47 | | | | | | | | | *DUPL* |
| 49 | EH309185633 | $55,970.23 | $0.00 | 43542571000 | $62,924.84 | $44,986.95 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 50 | FY400011885 | $73,432.33 | $0.00 | 43542567000 | $82,556.70 | $59,359.66 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 51 | FY400012107 | $15,793.82 | $0.00 | 43542566000 | $17,756.29 | $12,769.87 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 52 | FY400014079 | $17,851.39 | $0.00 | 43542565000 | $20,069.52 | $14,500.07 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 53 | FY400016736 | $14,649.29 | $0.00 | 43542573000 | $16,469.54 | $11,972.35 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 54 | EH309187993 | $26,235.16 | $0.00 | 43542569000 | $29,495.02 | $21,212.07 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 55 | FY400004328 | $16,699.05 | $0.00 | 43325888000 | $19,977.44 | $14,103.26 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 56 | EH309178919 | $25,940.85 | $0.00 | 43334539000 | $30,974.02 | $21,862.30 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 57 | EH309180279 | $37,944.54 | $0.00 | 43334540000 | $45,306.73 | $30,524.57 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 58 | EH309191714 | $7,001.46 | $0.00 | 43542568000 | $7,871.43 | $5,719.54 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 59 | Duplicate of Count 58 | | | | | | | | | |
| 60 | EH309182580 | $26,968.78 | $0.00 | 43334532000 | $32,201.40 | $22,877.29 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 61 | EH309178810 | $51,889.09 | $50,000.00 | 43334533002 | $10,321.05 | $1,827.43 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 62 | EK807014338 | $7,070.45 | $0.00 | 43565950000 | $7,905.33 | $5,855.56 | $0.00 | $0.00 | Suspended | Cancelled Relquidated |
| 63 | EK807013405 | $9,773.54 | $0.00 | 43565952000 | $10,927.60 | $8,035.86 | $0.00 | $0.00 | Suspended | Cancelled Relquidated |
| 64 | U7900219933 | | | No Bill | | | | | | |
| 65 | 47603936692 | | | No Bill | | | | | | |
| 66 | U7900219131 | | | No Bill | | | | | | |
| 67 | AW301217804 | | | No Bill | | | | | | |
| 68 | 52100255885 | | | No Bill | | | | | | |
| 69 | 52100257063 | | | No Bill | | | | | | |
| 70 | DO201535831 | | | No Bill | | | | | | |
| 71 | DO201535849 | | | No Bill | | | | | | |
| 72 | DO201535468 | | | No Bill | | | | | | |
| 73 | DO201532127 | | | No Bill | | | | | | |
| 74 | 32309993072 | | | No Bill | | | | | | |
| 75 | 32309991753 | | | No Bill | | | | | | |
| 76 | 00480094853 | $7,711.25 | $0.00 | 43599905000 | $8,539.07 | $6,243.71 | $0.00 | $0.00 | None | Cancelled W/O |
| 77 | 27940240966 | | | No Bill | | | | | | |

* No Bill - indicates entry paid at port, no liquidation occured

| COUNT | ENTRY NO | AMOUNT BILLED | AMOUNT PAID | Bill Number | *Bill Amount as of 4/2/04 (Prin+Int)* | *AD/CVD Amt* | *Total Paid* | *Balance AD/CVD* | *Protest Status* | *Bill Status as of 7/25/08* |
|---|---|---|---|---|---|---|---|---|---|---|
| 78 | 27940241766 | | | No Bill | | | | | | |
| 79 | DO201488411 | | | No Bill | | | | | | |
| 80 | DO201488437 | | | No Bill | | | | | | |
| 81 | DO201489310 | | | No Bill | | | | | | |
| 82 | AL840104403 | | | No Bill | | | | | | |
| 83 | 27401043503 | $71,108.60 | $0.00 | 43589412000 | $55.289.30 | $49,727.51 | $0.00 | $49,727.51 | Denied | In Collection |
| 84 | FY400016744 | $31,568.29 | $0.00 | 43542564000 | $35,490.82 | $25,799.66 | $0.00 | $0.00 | Denied | Cancelled W/O |
| 85 | EK807010062 | $7,463.42 | $0.00 | 43565955000 | $8,344.70 | $5,988.99 | $0.00 | $0.00 | None | Cancelled W/O |
| 86 | EK807009296 | $14,840.85 | $15,893.18 | 43368447000 | $79.35 | $12,548.94 | $15,893.18 | $0.00 | None | Balance Cancelled |
| 87 | EK807009916 | $9,772.20 | $0.00 | 43565964000 | $10,926.10 | $7,827.92 | $0.00 | $0.00 | None | Cancelled W/O |
| 88 | EK807009643 | $9,021.01 | $0.00 | 43577848000 | $10,041.58 | $7,190.25 | $0.00 | $0.00 | None | Cancelled W/O |
| 89 | EK807009650 | $8,117.61 | $0.00 | 43574065000 | $9,069.14 | $6,477.64 | $0.00 | $0.00 | None | Cancelled W/O |
| 90 | EK807009544 | $8,386.02 | $0.00 | 43577850000 | $9,334.75 | $6,673.88 | $0.00 | $0.00 | None | Cancelled W/O |
| 91 | EK807011680 | $12,170.17 | $0.00 | 43565956000 | $13,607.23 | $9,882.16 | $0.00 | $0.00 | None | Cancelled W/O |
| 92 | 47603936189 | $5,454.58 | $0.00 | 43565963000 | $6,098.66 | $4,407.81 | $0.00 | $0.00 | None | Cancelled W/O |
| 93 | EK807011672 | $5,901.03 | $0.00 | 43565958000 | $6,597.83 | $4,791.63 | $0.00 | $0.00 | None | Cancelled W/O |
| 94 | 47603936320 | $4,341.39 | $4,384.42 | 43560691002 | $23.88 | $0.00 | $0.00 | $0.00 | None | Cancelled W/O |
| 95 | 47603936643 | $5,335.11 | $5,387.99 | 43560692002 | $29.35 | $0.00 | $0.00 | $0.00 | None | Cancelled W/O |
| 96 | 47603936304 | $4,660.59 | $4,706.78 | 43560690002 | $25.65 | $0.00 | $0.00 | $0.00 | None | Cancelled W/O |
| 97 | 47603935686 | $7,248.09 | $0.00 | 43565961000 | $8,103.95 | $5,798.38 | $0.00 | $0.00 | None | Cancelled W/O |
| 98 | 47603935561 | $7,748.78 | $7,825.58 | 43560689002 | $42.63 | $6,195.19 | $7,825.58 | $0.00 | None | Cancelled W/O |
| 99 | REQUEST FOR | ACCOUNTING | | | | | | | | |
| | | | | | | | | | | |
| | TOTALS | $1,283,565.24 | $178,599.13 | | $1,276,839.19 | $987,729.79 | $107,673.49 | $49,727.51 | | |

* No Bill - indicates entry paid at port, no liquidation occured

# EXHIBIT 2

# DECLARATION OF RICHARD WILSON

I, Richard G. Wilson, do herby declare that, to the best of my knowledge and belief:

1. I am currently employed as a Special Agent with the Office of Investigations, U.S. Immigration and Customs Enforcement (ICE) in the Washington, D.C. field office. I have been employed as a Special Agent/Criminal Investigator for approximately 2.3 years. Prior to this, I was an Import Specialist (Team Leader and Headquarters Program Manager) with U.S. Customs and Border Protection and its legacy agency, the United States Customs Service, for 15 years.

2. I am aware of the litigation involving the moiety claim filed by White & Case based upon information I have received during the performance of my official duties.

3. I have reviewed the Court's July 17, 2008 order. In addition, I have reviewed the complaint in this matter filed by White & Case, LLP.

4. I have reviewed all of the entries and determined that 26 relate to open ICE investigations which are awaiting the completion of legal action with the possibility of further investigation. I have also determined that four of these entries are duplicative (Counts 2 and 20, 6 and 66, 47 and 48, and 58 and 59). Of the 26 entries relating to open ICE investigations, ten relate to one ICE investigation, and the remaining 16 relate to a second ICE investigation.

5. I have compared the July 17, 2008, order with the complaint and have grouped the entries at issue in this matter in the manner suggested by the Court's order, as follows:

a. Case No. 1 (Counts 1 and 2): There are no open ICE investigations associated with these counts.

b. Case No. 2 (Counts 9-19, 21-23, 27, 31-32, 34, 62-66, 70-76, and 95): There are a total of 31 counts, of which 17 have associated open ICE investigations.

c. Case No. 3 (Counts 20, 24-26, 28, 30, 33, 49-54, 56-60, and 77-98): There are a total of 39 counts, of which 5 have associated open ICE investigations.

d. Case No. 4 (Count 67): There is no open ICE investigation associated with this count.

e. Case No. 5 (Count 3): There is no open ICE investigation associated with this count.

f. Case No. 6 (Counts 4-6): All have associated open ICE investigations.

g. Case No. 7 (Counts 7-8): There are a total of 2 counts, one of which has an associated open ICE investigation.

h. Case No. 8 (Count 25): There is no open ICE investigation associated with this count.

i. Case No. 9 (Counts 29, 35-48): There are a total of 15 counts, none of which have associated open ICE investigations.

j. Case No. 10 (Counts 55 and 61): There are no open ICE investigations associated with these counts.

k. Case No. 11 (Counts 68-69 and 99): There are no open ICE investigations associated with these counts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of August, 2008, in Arlington, Virginia.

Richard G. Wilson

**CERTIFICATE OF FILING**

I hereby certify that on this 13th day of August, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO THE COURT'S JULY 17, 2008 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Sean M. Dunn